**WALTER MARTIN, In Pro Per**
1775 E. Palm Canyon Drive H130    (Ref- FEDERAL RICO MF 7)
Palm Springs, CA 92264
XYZHP@YAHOO.COM
Telephone: 307-337-7150

PLAINTIFF

WALTER EMMANUEL MARTIN, *In Pro per*

FILED
CLERK, U.S. DISTRICT COURT

06/12/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ AP _____ DEPUTY

FEE PAID

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

I/S
NO CV30

WALTER EMMANUEL MARTIN

Plaintiff,

vs.

TAMILA JENSEN, ESQ., CHEVON ROBINSON MARTIN, ZEVETTE MITCHELL JONES, ANICA BARBOSA, ONIEL MCINNIS, CHRISTIAN ORONSAYE, ESQ., SAYRA ALVARADO, JONATHAN BANUELOS and ZHANA AIVAZI, ESQ.,

Defendants.

Does 1-20

Case No.  2:23-cv-04642-VBF(DFM)

**COMPLAINT FOR DAMAGES**

**JURY TRIAL DEMANDED**

  **COMES NOW** Plaintiff WALTER MARTIN, (hereinafter "Plaintiff" or "Mr. Martin"), complaining of the Defendants, TAMILA JENSEN ESQ., (hereinafter "Ms. Jensen"), LOS ANGELES COUNTY PROBATE DEPARTMENT, (hereinafter "LACPD"), CHEVON ROBINSON MARTIN, (hereinafter "Chevon Martin"),  ANICA BARBOSA, (hereinafter "Barbosa"), CHRISTIAN ORONSAYE, ESQ. (hereinafter "Oronsaye"), SAYRA ALVARADO, (hereinafter "Alvarado"), ZHANA AIVAZI, ESQ. (hereinafter "Aivazi"), and Does 1-20, (collectively "the Defendants") and alleges and says as follows:

**Introduction**

1. Plaintiff brings this civil action against all Defendants under the Federal Racketeer Influenced and Corrupt Organizations Act, Chapter 96 of Title 18 U.S.C. § 1961 *et seq.* (hereinafter "RICO"). Pursuant to 18 U.S.C. § 1964, Plaintiff seeks treble damages, costs and attorneys fees from all Defendants, jointly and severally.

2. Plaintiff also brings this civil action under Title 42 U.S.C. § 1983 for the violation of Plaintiff's constitutional rights under the Fifth and Fourteenth Amendments.

3. Plaintiff also brings this lawsuit against Defendants, sometimes individually and sometimes collectively, as set forth herein, for Civil Conspiracy, Fraud, Conspiracy to Defraud, Misrepresentation, Breach of Fiduciary Duty, Conversion, Unjust Enrichment, Intentional Infliction of Emotional Distress, and for Punitive Damages.

4. Defendant Jensen is the culpable "person" under the RICO statute, with the requisite *mens rea,* who advanced a scheme to defraud and illegally ran an enterprise in order to defraud the Plaintiff, causing injuries and damages to the Plaintiff as set forth herein. Defendant Jensen did so through the use of false claims and through fraudulent activities involving the Plaintiff Trust, to the detriment and injury of the Plaintiff Trust.

5. Defendant Jensen received income from the illegal enterprise, in violation of § 1962(a); she maintained an interest in and/or control of the enterprise through a pattern of racketeering activity, as set forth herein, in violation of § 1962(b).

6. The remaining Defendants engaged in the furtherance of activities carried out by the enterprise, in violation of § 1962(c), and also received income directly from the illegal activities of the enterprise, in violation of § 1962(b).

7. The remaining Defendants also conspired with Defendant Jensen to violate and did violate subsections (a), (b) and (c) of § 1962 as set forth herein by engaging in predicate acts of the enterprise as defined by § 1961 of the RICO statute. *See also Reddy v. Litton Indus., Inc.* 912 F.2d 291 (9th Cir. 1990).

8. The enterprise is the association of Defendants to this lawsuit, associated in fact, although not a legal entity. 18 U.S.C. § 1964(4). It is a continuing unit that has some type of organization as all

Defendants have worked and are still working together in furtherance of the illegal enterprise, as set forth herein.

9. All Defendants engaged in a pattern of racketeering activity, and carried out acts indictable under Title 18 of the United States Code, including, but not limited to bribery (Section 201), mail fraud, which includes e-mail fraud (Section 1341), wire fraud (Section 1343), obstruction of justice (Section 1503), interference with commerce, robbery or extortion (Section 1951) and/or racketeering (Section 1952). All Defendants engaged in at least two such incidents within the past four years.

10. Defendants Jensen, Alvarado, Aivazi and Chevon Martin, all of whom have criminal intent have all worked together by committing mail fraud, wire fraud and obstruction of justice in furtherance of the illegal enterprise in order to defraud the trust. Aivazi and Jensen assisted Chevon Martin and Alvarado in schemes to defraud the trust by making false claims against the Plaintiff, to the court; and by then helping themselves illegally, to the assets and proceeds of the trust to which none of them was entitled.

11. Defendants Alvarado and Barbosa, both of whom have criminal intent, have worked together by committing mail fraud, wire fraud and obstruction of justice in furtherance of the illegal enterprise in order to defraud the trust. Both sent identical emails to the Plaintiff trust falsely alleging that the properties held within the trust, which they rented, were not habitable, when in fact Alvarado and Barbosa, as tenants of trust properties, had violated the lease agreements each had with the Plaintiff by failing to maintain the leased properties in habitable and safe conditions. Each did so in order to defraud the trust and each did defraud the trust by illegally failing to pay rents that were due under their lease agreements.

12. Defendants Barbosa and Oronsaye, both of whom have criminal intent, have worked together by committing mail fraud, wire fraud and obstruction of justice in furtherance of the illegal enterprise in order to defraud the trust.

13. Defendants Aivazi, Jensen and Oronsaye, all of whom are attorneys, and all of whom have criminal intent, have been bribed, have bribed each other and/or have received unauthorized information, referrals and bribes from the Los Angeles County Probate Department in furtherance of the illegal activities of the enterprise - to wit, they have received leads on estates in Los Angeles County and have

helped themselves to the control, assets and proceeds thereof by getting themselves appointed as Conservators, PVP attorneys and the like, and turning around and cheating, stealing and robbing the estates of unsuspecting Los Angeles citizens, including the Plaintiff, and others as will be set forth herein.

14. The pattern of racketeering activity which Defendants engaged in consists of multiple predicate acts, as listed herein, which amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Northwest Bell Tel. Co.,* 492 U.S. 229, 239 (1989).

15. The enterprise, by way of all Defendants benefited financially from these related crimes.

16. The pattern of racketeering activity which Defendants engaged in, including wire fraud and mail fraud, bribery and others had an effect on interstate commerce.

17. These crimes occurred multiple times over a substantial period of time and also continues presently. The predicate acts which Defendants have engaged in have been continuous and are part of a long-term association that exists for criminal purposes. They are a regular way of conducting the Defendants' ongoing legitimate businesses in law and real estate, and/or are a regular way of conducting or participating in an ongoing and legitimate business.

18. The Defendants did not necessarily know about each aspect of the enterprise, but each Defendant (1) agreed to participate in at least two racketeering acts, (2) knew the general status of the conspiracy, and (3) knew that the conspiracy extended beyond his or her individual role.

19. The racketeering activity which Defendants engaged in, in furtherance of the illegal enterprise, injured and damaged Plaintiff in his business and property and therefore Plaintiff has standing to sue under § 1964.

20. Plaintiff was injured from the conduct of the affairs of the enterprise through a pattern of racketeering activity carried out by the Defendants.

21. The trust over which Plaintiff presides as trustee has been irreparably damaged and the assets of the trust have been unlawfully depleted. The Defendants conspired to and did damage the reputation, standing and status of the Plaintiff as Trustee by making false claims in disregard of their obligations to be truthful to the Court, and in other ways as will be shown at the trial of this matter. Plaintiff is

therefore entitled to recover treble damages, costs and reasonable attorneys fees from all Defendants, jointly and severally.

22. Not every RICO violator who is a part of this enterprise is listed herein as a Defendant; however the actions of each, carried out in coordination with other Defendants and the enterprise is set forth herein. Plaintiff reserves the right to add additional violators as Defendants at a later time and/or to separately bring suit against them as new facts and evidence come to light.

23. The RICO violations committed by Defendant Jensen include, but are not limited to wire fraud and embezzlement. These acts were committed over a substantial period of time, were continuous and interrelated, are ongoing, and have had and are still having an effect on interstate commerce.

24. The remaining Defendants assisted in the enterprise by: (1) working in partnership or otherwise in tandem with Defendant Jensen in advancing her illegal RICO scheme; (2) sheltering and protecting Defendant Jensen; (3) providing assistance to Defendant Jensen in furtherance of the illegal RICO scheme and by (4) otherwise working together in furtherance of a common illegal interest of the enterprise which Jensen advanced. All Defendants have thereby been unjustly enriched by the illegal scheme described herein, and all are jointly and severally liable to the Plaintiff for the damages each one has caused.

25. All Defendants have conspired and colluded together under a covert scheme to defraud the Gesner L Martin Living Trust. All Defendants have defrauded the Trust, and all Defendants have exploited the standing, duties and financial services of Plaintiff.

26. The acts and omissions of all Defendants, as described herein, have been, are and will be continuously financially damaging to the Plaintiff. In light of all of the foregoing, Plaintiff respectfully shows unto this Court as follows:

**The Parties**

27. At all times herein relevant Plaintiff WALTER EMMANUEL MARTIN, (hereinafter "Plaintiff" or "Mr. Martin" is an individual residing in Los Angeles County. Plaintiff is and has been the Trustee for the Genser L. Martin Living Trust (sometimes "GLM Trust") since March 23, 2012. No

person other than Plaintiff has ever been named, appointed, or otherwise recognized or identified in any way as the Trustee of the GLM Trust.

28.  Rex Allan Martin, Chevon Martin and Rex's descendant children are exclude, or prohibited from Trustee per the Trust document provisions (Trust section 3.01)

29. At all times relevant herein Defendant TAMILA JENSEN, ESQ., (hereinafter "Jensen") is and has been a Probate Volunteer Panel Attorney ("PVP Attorney") appointed by and servant of the Defendant Los Angeles County Probate Department.  Upon information and belief she is the principal RICO defendant who advanced a scheme to defraud the Plaintiff and the GLM Trust, and did defraud the Plaintiff and the GLM Trust, along with the other named Defendants, in varying ways as set forth herein.  Jensen was appointed by the Defendant Los Angeles County Probate Department to represent the interests of Rex Martin, now deceased.  Rex Martin was the disabled brother of the Plaintiff for whom Plaintiff had a option to create a special needs trust, but did not execute same.  Defendant Jensen is also currently a (25%) beneficiary of the GLM Trust by way of a separate legal proceedings for Rex Martin's Conservatorship brought forth by Rex Martin's adult daughter Defendant Chevon Martin. Jensen saw an opportunity, thus became a beneficiary through deceit and fraud.

30. At all relevant times herein Defendant CHEVON ROBINSON MARTIN, (hereinafter "Chevon Martin") was an individual residing in Los Angeles County, California.  She is the adult daughter of Rex Martin, and is believed to be a non-biological niece of Plaintiff Walter Martin.  Chevon Martin, a third-tier (16.6%) named beneficiary of the GLM Trust, conspired and colluded with Jensen to defraud the Plaintiff and the GLM Trust and did defraud the Plaintiff and GLM Trust.

31. At all relevant times herein Defendant ANICA BARBOSA, (hereinafter "Barbosa"), was and is an individual residing in Los Angeles County.  He is a serial estate fraudster known to have a

historical link with the Los Angeles County Probate Department, which supplies her with an unlimited

supply of leads, candidates and victims to scam and defraud.

32.  At all relevant times herein Defendant SAYRA ALVARADO, (hereinafter "Alvarado"), was

a citizen and resident of Los Angeles County.

33. At all relevant times herein, Defendant CHRISTIAN ORONSAYE, ESQ. (hereinafter

"Oronsaye"), was a citizen and resident of Los Angeles County, who represented Defendant Barbosa.

34. At all relevant times herein, ONIEL MCGINNIS (hereinafter "McGinnis") was a citizen and

resident of Los Angeles County.

35. At all relevant times herein, Defendant JOHNATHAN BANUELOS (hereinafter "Banuelos")

was a citizen and resident of Los Angeles County.

36. At all relevant times herein, Defendant ZHANA AIVAZI, ESQ. (hereinafter "Aivazi"), is an

attorney who represented Alvarado.

37. Does 1-20 are necessary parties that have yet to be identified.  The true names and capacities

of Defendants DOES 1-20 are currently unknown to Plaintiffs, who therefore sue these Defendants

under fictitious names pursuant to Code of Civil Procedure § 474.  Each Defendant is directly and/or

vicariously responsible in some manner, for the harms alleged herein.  If/when Plaintiff learns these

Defendants' true names and capacities, Plaintiffs will seek leave to amend this pleading accordingly.

38. Plaintiff is informed and believes and therefore alleges that each Defendant is jointly and

severally liable for the occurrences alleged herein and also that Plaintiff's injuries were directly and

proximately caused by the acts and omissions of Defendants.

**Jurisdiction and Venue**

36. The Court possesses jurisdiction under 28 U.S.C.§ 1331. Plaintiffs' claims present a

federal question under 18 U.S.C. §1965(a).

37. Venue is proper in the Central District of California. The Plaintiffs resides in Los Angeles, California.  Further, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Los Angeles County California and because the facts giving rise to this Complaint substantially occurred in Los Angeles County.  28 U.S.C. § 1391(a)(2)

### Statement of Facts

### I. Defrauding the Gesner L. Martin Living Trust

39. The matters arising in this Complaint pertain to the Gesner L. Martin Living Trust established by Mrs. Gesner Martin, who died on January 26, 2018.  The trust was originally settled on September 23, 2011 and restated on September 11, 2014 by Mrs. Martin.  Mrs. Martin presided over its administration as trustee until March 23, 2012, on which date she resigned as trustee, leading to the appointment of her son, Plaintiff Walter Martin, as successor trustee of the Trust.  No person other than Gesner L. Martin and her son, Plaintiff, have ever been named, appointed, or otherwise recognized or identified in any way as trustee of the Trust.

40. As set forth in the Trust, Mrs. Gesner L. Martin had three children, including Plaintiff Walter Martin and Rex Martin, (who died on August 21, 2020, the circumstances of whose declining health and death are also addressed herein).  The Trust provides explicitly for Walter Martin to serve as successor trustee following Gesner L. Martin.  The trust and provides that Rex Martin and or his children shall not be appointed trustee under any circumstances.

41. The unlawful RICO enterprise, in which all Defendants are involved, sought to defraud and has defrauded the Trust of funds to which they were never entitled, by subterfuge, taking positions of responsibility despite conflicts of interest, by deliberately breaching fiduciary duties and by outright lying to the Court.

42. The Attorney Defendants have all been involved with the Plaintiff and the Trust by way of having been appointed or referred by the Los Angeles County Probate Department (sometimes "LACPD") a governmental organization that manages the legal processes for the heirs and beneficiaries of trusts and estates of individuals in Los Angeles County after these individuals pass away.

43. The LACPD has an intimate connection with all Defendants.   The LACPD, acting in a bad faith and a biased fashion, supplies leads, candidates and victims to the attorney Defendants, Jensen,

Aivazi and Oronsaye, in this illegal RICO enterprise for purposes of defrauding legal estates of decedents of Los Angeles County.

44. The LACPD is intimately involved in the RICO enterprise to scam and defraud the GLM Trust and to exploit the Plaintiff.[1]

45. Chevon Martin is well known to the LACPD and to the attorney Defendants. Together she conspired with the LACPD, and Defendants Jensen and Aivazi in her attempt to take over as conservator for her father Rex Martin, in a blatant attempt to try to secure assets for herself from the Plaintiff, to which she is not entitled.

46. As attorneys, Aivazi and Jensen have conspired with the LACPD and Chevon Martin, and have engaged in the illegal RICO enterprise in order to secure as much legal fees and trust assets as possible from the Plaintiff Trust, but other Los Angeles County estates as well, as set forth herein.

47. Defendant Alvarado, and her attorney Defendant Aivazi, and Defendant Barbosa and her attorney Oronsaye have engaged in the illegal RICO enterprise by conspiring with the LACPD and with each other in their efforts to defraud the Trust.

48. Defendants Alvarado and Barbosa, at the direction of their respective attorneys, Defendants Aivazi and Oronsaye, each filed false Notices of Habitability reports with the Los Angeles Housing Department, (hereinafter "LAHD"), against Plaintiff on two respective properties which they had leased from Plaintiff, knowing the same to be false. Alvarado and Barbosa did so in an effort defraud the Trust by trying to avoid paying rent moneys and in so doing they have defrauded the Trust by many thousands of dollars.

49. Defendant Alvarado, at the direction of her attorney Defendant Aivazi, sent the false Notice of Abatement/Habitability to LAHD falsely accusing Plaintiff of failing to provide her with a habitable property.

---

[1] The Defendant LACPD is intimately involved in multiple other estate scams and frauds and has defrauded numerous estates under its supervision. Additional lawsuits against the LACPD on behalf of other defrauded estates and beneficiaries will be forthcoming.

50. The fraudulent Notice sent by Alvarado was worded identically to the false Notice of Habitability sent to the LAHD by Defendant Barbosa, at the direction of her attorney, Defendant Oronsaye.

51. The fraudulent Notice of a supplemental tax bill by Defendant Banuelos, at the direction of attorney, Zhana Aivazi, in an attempt to have Plaintiff pay Alvarado –Banuelos personal their property tax bill featuring address and their property tax APN at a different address.

52. In addition to the foregoing, Defendants Alvarado and Barbosa conspired to defraud the GLM Trust by sending Plaintiff identical emails using the words "harassment" and "intimidation" after receiving a Notice of Landlord to Enter and Inspect the properties from the Trust, which both Alvarado and Barbosa rented from the Plaintiff.

53. In addition to the foregoing, someone or some individuals, as part of the unlawful enterprise, conspiracy and collusion by the Defendants mentioned herein, sabotaged and damaged the two properties which Alvarado and Barbosa rented from the Plaintiff.

54. Defendants Alvarado and Barbosa, together with their respective attorneys, Aivazi and Oronsaye, conspired and deliberate planned, as predicate acts of a pattern of racketeering, to make life a "living hell" and a "nightmare" for the Plaintiff as their landlord.

55. Defendants Alvarado and Barbosa, together with their attorneys, are, covertly or overtly, all business associates for purpose of carrying out the predicate acts, as described herein, of the unlawful enterprise.

56. All of the foregoing predicates fraudulent acts were part of the unlawful RICO enterprise as set forth herein and were carried out by these Defendants and their attorneys in order to frustrate, damage and harm the Plaintiff.

57. All of the foregoing efforts by Defendants Alvarado and Barbosa, in conjunction and conspiracy with Defendants Aivazi and Oronsaye, and the subsequent failures by Alvarado and Barbosa to pay the Plaintiff rents due under the lease agreements have unlawfully depleted the assets of the Plaintiff Trust and damaged the standing of Plaintiff.

## II. The Conservatorship Proceeding
### (Collusion to Defraud the Court by Jensen and Chevon Martin)

58. This case also pertains to a petition for conservatorship filed on March 1, 2018 for Rex Martin, the son of Gesner L. Martin and the brother of Walter Martin.  The petition was filed, *in pro per* by Rex Martin's daughter, Defendant Chevon Martin, who sought to be appointed his conservator .

59. Article 9 of the Trust provides terms relevant to the special needs of the beneficiaries, but does not require the creation of any separate special needs trust.  With regard to an incapacitate beneficiary, Article 9 also provides two options from which the trustee may, in his discretion, select. The first option allows the trustee to make distributions for the beneficiary's benefit according to specific directions. The second allows the trustee to create a separate trust for the retention and administration of assets designated for the beneficiary.

60. On May 17, 2018, Defendant Chevon Martin stipulated to the appointment of Commissioner Scott Nord as Commissioner for the case.

61. Defendant Chevon Martin was represented in the Conservatorship by Defendant Jensen, who had been appointed Probate Volunteer Panel (hereinafter "PVP" attorney) by the LACPD.

62. Chevon Martin and Tamila Jensen, as part of the unlawful RICO enterprise, colluded and conspired to defraud the Court in order to obtain Plaintiff's assets to which they were not entitled, through the misrepresentation and fraud.

63. Defendant Jensen made false and misleading representations to the Court about the provisions of the Gesner L. Martin Living Trust and its provisions, with the intention of deceiving the Court and the Plaintiff.   She provided false information to Commissioner Scott Nord about the Trust, which resulted in an erroneous probate Order.

64. Jensen breached her fiduciary duty to Chevon Martin by colluding with her to defraud the Court.

65. Jensen and Chevon Martin conspired to defraud the Plaintiff by making false statements and insinuations to the Court and otherwise engaging in other unlawful conduct in furtherance of the illegal RICO enterprise.

66. Jensen's abusive and dishonest attitude towards the Plaintiff caused him needless emotional distress.

67. By engaging in fraud, as set forth herein, Jensen and Chevon Martin converted assets from the Plaintiff Trust for their own use in violation of the law, and did so in furtherance of the illegal RICO enterprise.

68. The matter came on for hearing before Commissioner Nord on August 23, 2018.  Two days prior, Defendant Jensen filed a supplemental report in which she deliberately mischaracterized the Trust and its terms.

**69.** Plaintiff attended this hearing without counsel, as an individual concerned about his brother Rex Martin's deteriorating health and medical needs.  Plaintiff provided testimony to the Court in this regard. His testimony focused solely on issues pertaining to his brother's health situation and needs.

70. After he did so, Commissioner Nord began *sua sponte* questioning Plaintiff - a person over whom the Court had no personal jurisdiction, about the proposed, nonexistent special needs trust of the GLM Trust - a matter over which the Court had no subject matter jurisdiction.

71. This was an impromptu hearing on a probate matter by the Commissioner during a conservatorship hearing.  It was without consent or authority. No summons, notice or petition for GLM, as required by statute, had been issued regarding a hearing about the GLM trust.

72. Plaintiff was unrepresented by counsel. Plaintiff had retained Attorney Mark Swatik to represent the Trust but Attorney Swatik was deliberately left out of the loop by Defendant Jensen regarding this hearing.  Despite all of this, Commissioner Nord then began intensely questioning and browbeating Plaintiff about the probate matter.

73. Commissioner Nord asked him, "Is there a reason why you are refusing to provide Ms. Jensen with a copy of the trust and the special needs trust."  To which, Plaintiff responded, "Your Honor, that's a total misrepresentation."

74. Unrepresented by counsel, and grieving health of his brother, seeking help, the plaintiff was intimidated by the Commissioner's questioning, Plaintiff continued answering the questions in the probate matter.  He informed the Court that the Trust owned five real properties with a combined total of less than $600,000.  He also informed the Court regarding the terms of the trust that pertain to a potential special needs trust for Rex Martin.

75. At the conclusion of the hearing, Commissioner Nord granted Chevon Martin the authority to move Rex Martin, and set a new hearing for December 13, 2018.

76. Also at the conclusion of this *sua sponte* hearing, Commissioner Nord announced that he was going to unilaterally assume jurisdiction over the special needs trust for Rex Martin, froze all assets within the trust and suspended Plaintiff's ability to act as Trustee until further court order.  He awarded Defendant Jensen $6,250 in attorneys fees, and then discharged her[2].  In addition to this, the Court took jurisdiction over the entire GLM Trust, without suspending Plaintiff's authority, but then decided to

> hold that in abeyance pending the outcome of you doing the following things:
> you are to provide a full accounting of the trust to Ms. Jensen.  You are
> to provide a full accounting of the special needs trust to Ms. Jensen.  You are
> provide her with a copy of both trusts. and when we come back, I will look for
> her report as to whether or not further action needs to be taken including
> appointing a professional fiduciary to take over this matter.

77. Commissioner Nord had no authority to take legal action over a matter over which he had no jurisdiction.

78. Despite Commissioner Nord hijacking the conservatorship hearing, and converting it to a probate hearing, at the end of it, Plaintiff still asked the Court, "In terms of seeing . . . is there anything we can do as far as getting medical -- to my brother?"

79. Commissioner Nord thus presided over *sua sponte* probate proceedings regarding the GLM trust and issued the COVERT order without proper foundation, knowledge or legal cause after Plaintiff had left Court without notice.

80. At the conclusion of this hearing, Commissioner Nord purported to suspend Plaintiff from trusteeship of the supposed special needs trust and threatened to suspend him from trusteeship of the Trust, based solely upon Jensen's fraudulent report.

81. In October of 2018, Plaintiff provided a copy of the Trust and a certificate of trust to Defendant Jensen.

---

[2] Despite being discharged, on October 18, 2018, Jensen submitted a fee application for an additional $11,838.80 for her "services" rendered in the conservatorship, indicating also that she believed she would need to bill another 30 hours in the future, all of this at $400 per hour. The submission of all of this time was for her fraudulent services on behalf of Rex Martin, using false–block billing. These funds were paid for from the Trust and the Trust is entitled to their return.

82. On December 10, 2018, Plaintiff filed a declaration attesting to having provided Jensen with a copy of the trust, and also stated that he had appeared at the August 2018 hearing out of concern for his brother and not as Trustee of the Trust.  He declared that he would not appear further in the Conservatorship matter.

83. The minutes from the December 13, 2018 hearing discharge Jensen, order her to be paid, (this was for her $11,800 bill from October) and direct her to "prepare the Order freezing the Trust" without further detail.  No representative of the Trust was present at the hearing.

84. On March 6, 2019, nearly 7 months after the hearing, Commissioner Nord signed and entered an Order entitled "Order After Hearing Removing Trustee and Freezing Assets of Gesner Martin Trust." The Order states that the Plaintiff "has failed to administer the Trust in good faith," and had "failed to administer the special needs trust which is within the Trust for the benefit of Rex Martin."

85. He did so, despite the fact that no special needs trust existed or exists for the benefit of Rex Martin.  Commissioner Nord was intertwining the Gesner L. Martin Living Trust with the idea of a non-existent special needs trust.  He would not allow Plaintiff to fully explain this fact.

86. The March 6, 2019 Order was covertly entered by an emotional and misinformed Commissioner Nord due to the negligent misrepresentations made by Defendant Jensen. It is currently the subject of a Motion to Vacate.

87. Attached to the Order is a proof of service form dated February 11, 2019.  It is addressed to Plaintiff, but incorrectly states his address.

88. The purported proof of service form also recites service upon undersigned counsel, however, undersigned counsel has no knowledge of his office ever receiving service of this Order. 84A. Most important the undersigned Counsel, Kenneth Gaugh, represented Monte Parrish, the proposed alternative Conservator to Chevon Martin. The Plaintiff Walter Martin, GLM Trustee was unrepresented.

89. Plaintiff was never notified of the existence of this Order, and no copy of this Order was ever sent to or otherwise provided to Plaintiff.  He was not even aware of its existence until March of 2023 when it came to light through investigation by undersigned counsel.  Undersigned counsel is now currently representing Plaintiff in a lawsuit against Defendant Barbosa, who was a tenant that defrauded

the Trust. *See Walter Martin Trustee for the Genser L. Martin Living Trust v. Anica Barbosa,* Superior Court of California, L.A. North Central District, Case No. 20CHCV00307.

90. Without knowledge of the order, and without any effort or means to contest his authority or to access Trust assets, Plaintiff has continued, interrupted, to act as trustee of the Trust and continues to do so through the present day. His tasks have included overseeing the payment of taxes and mortgage-secured related notes to the real property owned by the Trust.

91. Upon information and belief, Defendant Jensen took the position alleged by Defendant Chevon Martin, with whom she conspired and colluded to defraud the GLM Trust.

92. Defendant Jensen bullied, lied, threatened and engaged in misrepresentation, fraud and abuse of the legal process. She colluded and conspired with Defendant Chevon Martin, in furtherance of the illegal RICO enterprise, as described herein.

93. The act of hijacking the conservatorship hearing to hold an impromptu hearing in the probate case was done by Defendants Jensen and Martin solely to harm Plaintiff and commit fraud. All of this was done in furtherance of the illegal RICO enterprise.

94. Given that no successor trustee was ever appointed, the very existence of this Order, which was procured by fraudulent means, represents a threat to the Trust and its interests.

95. This Order damaged Plaintiff and the Trust, as no subsequent trustee was ever appointed to take care of the everyday responsibilities of the GLM Trust. This irrevocably damaged Plaintiff and the Trust itself financially as Plaintiff is the personal guarantor of all loans and mortgages for the benefit of the Trust.

96. As Trustee, Plaintiff paid the mortgages and Insurance on four properties with no defaults or collections. Plaintiff paid all property taxes.

97. As Trustee, Martin reduced the grantors' mortgage interest rates by refinancing them from a ten percent (10%) interest rate to 4.75 % and 5.25 %. Over a five year period, this provided a net savings to the Trust of hundreds of thousands of dollars.

98. Plaintiff did so on the back of his personal credit of 740 FICO. The net savings to the Trust over a five year period saved a total of $400,000.

99. Plaintiff also guaranteed bank and personal loans in his name for the betterment of the trust while such funds were concurrently being disgorged by the fraudulent acts and omissions of all of the Defendants.

100. Defendants Jensen and Chevon Martin exploited the Plaintiff for fees, property maintenance, repairs and construction under a rogue, latent, covert and fraudulently induced Court order.

101. Due to all Defendants clandestinely, covertly colluding and conspiring to undermine Walter Martin Trustee for the GLM trust for personal financial gain, knowing that they had undermined the trust standing without legal disclosure the Trust has been irrevocably damaged.

102. In addition to all of this, on August 23, 2018, the same date as the hearing, Chevon Martin filed for a Restraining Order against Plaintiff. This Order was not served on Plaintiff.

**III. The Kidnapping and Untimely Death of Rex Martin**

103. The most egregious thing that Defendants Jensen and Chevon Martin orchestrated, however, as part of their illegal RICO enterprise involved the abuse, neglect, kidnapping and untimely death of Rex Martin.

104. In or around August of 2018, just after Commissioner Nord granted Chevon Martin the right to move her father, Rex Martin was kidnapped by Defendant Chevon Martin and her sister Zevette Martin. Rex was removed from his home at 8407 1st Street in Phoenix, Arizona, and because of this he was separated and isolated from his four young children by Chevon Martin.

105. After he was kidnapped, approximately two years later, Rex Martin reappeared in Palmdale California in a Norwalk home. He was then moved to a home in Glendale where he died on or about August 21, 2020.

106. Once Plaintiff realized what Defendants Jensen and Chevon Martin had done -- that they had deliberately misrepresentation and abused the Court, the legal process, the Plaintiff, and Rex Martin, Plaintiff retained the services of Attorney Mark Swatik, Esq. in order to inform the Court about Jensen's fraudulent behavior.

107. Attorney Swatik was retained to represent and protect the interests of the Plaintiff Walter Martin as a Trustee. He directed Plaintiff to not further speak with Jensen, to inform Jensen to cease all direct contact and to communicate with his office instead.

108. The Plaintiff, Walter Martin, repeatedly insisted that Defendant Jensen and the Commissioner Nord communicate directly with the Trust Attorneys, both its creator: Steve Mamola and Plaintiff's attorney at that time Mark Swatik, Esq.  Despite this, Jensen persisted in creating a mess.

109. As the final days of her life neared, on or about January 28, 2018, for the grantor, Gesner L. Martin of her trust, the Gesner L. Martin Living Trust, Gesner had come a long way from her date of birth 1924 in the heart of Dixie, Birmingham, Alabama.

110. As a black woman, Gesner had survived the violence, the inequality and numerous infringements upon her Civil Rights. After settling in Los Angeles, California with her husband Major and four children, she went on to graduate from the University of California at Northridge and to work for 27 years for the California Employment Development Department.

111. In her 93 years of living, working, enduring hardship and sacrifices, it never occurred to her that at the end of her life, her equal right to decide the terms of her own Trust, and to select her Son, Walter Martin as her Trustee to administer and execute her Trust per her unique instructions would be stolen, and infringed upon by an overzealous judicial system and an ill-informed racially bias commissioner.

112. The deliberate, negligent, fraudulent misrepresentation and acts of Defendant Jensen, the Los Angeles County, PVP attorney for Conservatee, Rex Allan Martin, and the acts of Commissioner Scott Nord to commingle and misrepresent the truth about a non-existent Special Needs trust for Rex Martin with her Trust is not only void on all points of law, but it a continued blatant disregard of Mrs. Gesner's legacy and her equality as a woman, as a black human being and a posthumous infringement of her Civil Rights as an American Citizen.

113. Commissioner Nord's order on March 6, 2019 was done clandestinely, covertly and in complete violation of the law.

114. Prior to selecting Commissioner Nord, Defendant Jensen conspired with Defendant Chevon Martin for purposes of trying to divert child support payments from Rex Martin.

115. Upon information and belief on or about April of 2018, one Natalie Weingrow, a Los Angeles County child support services employee clandestinely dispatched an investigator from Los

Angeles County Child Support to interview the Plaintiff under false pretenses, in order to enjoin the Trust in violation of the Trust's explicit guidelines.

116. Upon information and belief, it appears that Defendant Jensen was already working with Los Angeles County Child Support at least as early as 2018, and the acts and omissions of Jensen, as described herein, in procuring the March 6, 2019 order were more about getting access to Rex's Martin's child support as opposed to gaining any Trust assets for Chevon Martin.

117. It is also apparent that all of these predicate acts, set forth in this Complaint, were undertaken in blatant disregard for Gesner L. Martin, her civil and legal rights and her ability to make her own competent estate planning decision. Jensen and Nord acted in haste causing the Plaintiff irreparable damages.

118. Upon information and belief, Defendant Chevon worked with Defendant Barbosa to perpetrate the false Notice of abatement in order to disgorge and damage the Trust.

119. All of the foregoing was in blatant disregard of the Trust's estate and the rights of the beneficiaries and in furtherance of the illegal RICO enterprise.

**IV. Further Predicate Acts in Furtherance of the Illegal RICO Enterprise**

120. Defendants Sayra Alvarado and Anica Barbosa were both tenants of properties owned by the Trust and managed by the Plaintiff. Both Defendants defrauded the Plaintiff by filing false claims against him as a landlord of the respective properties. These predicate acts have resulted in Plaintiff filing lawsuits against both Defendants in *Walter Martin Trustee for the Genser L. Martin Living Trust v. Anica Barbosa,* Superior Court of California, L.A. North Central District, Case No. 20CHCV00307 and *Walter Martin Trustee for the Genser L. Martin Living Trust vs. Sayra Alvarado,* Superior Court of California, L.A. North Central District, Case No. 20CHCV00303.

121. Plaintiff is in possession of a plethora of evidence showing Defendant Chevon Martin's link with Defendants Barbosa and Alvarado in these overt acts to clandestinely defraud the trust. They communicated with each other and filed identically worded false and fraudulent Notices to Abate with the Los Angeles County Health Department for the properties in which they were tenants, which were managed by the Plaintiff.

122. Defendant Barbosa is also known to have a historical link with the Defendant Los Angeles County Probate Department that Jensen serves.

123. Defendant Barbosa is a serial fraudster and appears to have an unlimited supply of leads, candidates and victims provided to her from the Defendant Los Angeles County Probate Department.

124. Barbosa is the covert colleague of Andrew Rowe.  They are the CEO (Barbosa) and Secretary (Rowe) of a corporation named Stepping Forward, Inc, that executed serial probate disgorgements.

125. Their relationship was exposed through an internal legal fight over the profits of the sale of a home for $150,000 less than market value.  At the time of the sale, Barbosa, who is not a licensed real estate agent, was serving as the conservator for a man named Edward Hill, who is a resident of Lawndale Nursing Home.

126. While serving in that capacity, she sold a property out from under the conservatee, Mr. Hills, to her **own business partner** Andrew Rowe, without disclosing the same to the Court.

127. The internal legal fight arose when Barbosa sued Rowe over the takings from Mr. Hill. Defendant Oronsaye served as Barbosa's attorney for a subsequent investigation into the matter which revealed that Mr. Hill's property was sold for at a loss of $150,000.

128. During this process, Barbosa was disgorging funds, and Rowe was billing for attorney fees. Barbosa never disclosed to the Court that she had sold the property to her business partner.

129. The Los Angeles County Probate Department is deeply involved in the illegal RICO enterprise and is continuously feeding victims and leads to the unscrupulous Defendants, as set forth in this Complaint.

130. LACPD fed Barbosa the Hill lead, as well as the lead of the Gesner L. Martin Living Trust so that she, and the remaining defendants, could enrich themselves at the expense of vulnerable Los Angeles County residents like Plaintiff, Mr. Hill and Rex Martin.  Defendants, by way of their unlawful RICO enterprise are predating on society.

131. Someone, or some individuals at the LACPD is/are feeding them leads and providing them with a plethora of victims to defraud, including Plaintiff.

132. All of these actions occurred and are continuing to occur as part of a pattern of racketeering and predicate criminal actions in furtherance of the Defendants' illegal RICO enterprise, in which the LACPD is involved.

133. Defendants Oronsaye,  Aivazi, Alvarado, and Barbosa, like Jensen are all connected with the Los Angeles County Probate and investigation Department for purposes of violating the law in furtherance of the illegal RICO enterprise by defrauding Plaintiff and the Trust, as well as innumerable Los Angeles County estates and estate beneficiaries, yet to be discovered.

134. Defendant Oronsaye is also part of the LACPD network.  He used to represent Barbosa, through which he held Plaintiff's case against Barbosa, mentioned herein, at bay for two years while disgorging landlord rents with Barbosa.  Oronsaye stopped representing Barbosa after becoming the subject of a Bar Complaint regarding his activities in the enterprise described in this Complaint.

**135.** Each and every Defendant has participated in Jensen's illegal RICO enterprise in order to defraud and humiliate the Plaintiff, to drain the assets of the trust and to enrich themselves without any legal foundation for doing so.  Defendants have harmed Plaintiff in his person and his reputation, have gone against the will of the Trust which he manages and have defrauded and harmed the Trust.

## PRELIMINARY STATEMENT OF ARGUMENT

136. "How can anyone tell how a judge would have ruled if he had not been bribed?"  *United States v. Holzer,* 816 F.2d 304, 308 (7th Cir.), vacated and remanded for reconsideration in light of *McNally v. United States*, 108 S.Ct. 53 (1987).

137. The most obvious form of judicial corruption involves the direct promise by a judge, or someone acting on his behalf, that the judge will give a specific disposition or consideration to a case (quid) in exchange for (pro) money or other things of value (quo).  As of 1988, pursuant to Operation Greylord and Operation Incubator, both judicial corruption investigations, sixty-five (65) persons had been convicted under RICO, including ten former or sitting judges. Judicial Corruption by Valukas, Anton R., United States Attorney Northern District of Illinois, and Raphaelson, Ira, Chief, Special Prosecutions Division Northern District of Illinois, p. 3

138. While Plaintiff is not bringing suit against Commissioner Nord at this time, he reserves the right to add him as a defendant as the investigation in this case progresses.

139. Under 18 U.S.C. § 1962 *et seq.*, a RICO enterprise is "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

140. The pattern of racketeering activity is most easily found in the pattern of bribery and extortion charges.  A person who conducts, through a pattern of racketeering, directly or indirectly, the affairs of an enterprise with which he is associated and which affect interstate commerce, faces RICO conviction and possible forfeiture of his ill-gotten gains and interests.

141. The "enterprise" may be the court system. *United States v. Murphy,* 768 F.2d 1518, (7th Cir. 1985), a judgeship, *United States v. Hunt,* 749 F.2d 1078 (4th Cir. 1978), a local prosecutor's office, *United States v. Yonan,* 800 F.2d 164 (7th Cir. 1986), or a law firm *United States v. Yonan,* 800 F.2d 164 (7th Cir. 1986).

142. A group of people, associated in fact, who agree to conduct the affairs of the court/enterprise through bribery of the judge can be prosecuted as a RICO conspiracy.

143. All Defendants, apart from Defendant Jensen, assisted Defendant Jensen in carrying out the illegal RICO enterprise and the RICO predicate offenses committed by all Defendants include theft wire fraud, mail fraud and obstruction of justice.

144. The remaining RICO Defendants conspired with and aided and abetted Defendant Jensen in furtherance of her fraudulent schemes, and, in so doing, proximately caused all of the Plaintiff's injuries and damages.  This aiding and abetting by the remaining RICO Defendants included the following elements: (1) knowing about the underlying Fraudulent Scheme devised by Defendant Jensen; and (2) rendering substantial assistance in the achievement and perpetuation of the Fraud committed by Defendant Jensen.

145. Defendants have all been unjustly enriched by the illegal RICO Enterprise concocted by Attorney Jensen.

146. As a direct and proximate result of all of the foregoing, Plaintiff has been damaged and will be damaged in an amount in excess of $ 5 million.

# VI. CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF
### (Violations of Federal Civil RICO—Conduct of a RICO Enterprise
### 18 U.S.C. § 1962(a) and 1964(c)by all Defendants)

147. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

148. Title 18 U.S.C. § 1962(a) provides, in part:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any partof such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

149. The elements of civil RICO are as follows: (1) conduct; (2) of an enterprise; (3) through a pattern (4) of racketeering activity, (5) resulting in injury.

150. A pattern of racketeering activity is established by specifying the "predicate acts" or violations of the underlying statute, that they were continuous, and that they violated interstate commerce. In this case the predicate acts, including mail fraud and wire fraud, as described herein were and are not only continuous, but they have every indication of continuing into the future, and they have affected interstate commerce.

151. In order for a plaintiff "to have standing to sue under §§ 1962(a) and 1964(c), he must have alleged that funds derived from the alleged racketeering activity . . . were used to injure him." *Wagh v. Metris Direct, Inc.,* 348 F.3d 1109 (9th Cir. 2003). A Plaintiff does not have to "specifically allege a distinct investment injury." *Id.* At all relevant times, each RICO Defendant was a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c). The RICO Defendants violated 18 U.S.C. § 1962(c) by the acts described in the paragraphs below.

152. At all relevant times, the illegal fraud scheme conceived and carried out by Defendant Jensen, by which she defrauded Plaintiff and the GLM Trust, constituted an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). The definition of "enterprise" encompasses both groups with a formal legal structure and those whose members merely associate in fact.

153. Defendants LACPD, Chevon Martin, Barbosa, Oronsaye, Alvarado and Aivazi directly assisted Defendants Jensen by engaging in illegal activities, as set forth herein, including fraud, and obstruction of justice, in furtherance of Jensen's illegal enterprise.

154. At all relevant times, these RICO Defendants were engaged in this illegal enterprise, within the meaning of RICO, and/or their activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all relevant times, the remaining RICO Defendants held a position in or were otherwise affiliated with the illegal enterprise described herein.

155. At all relevant times the RICO Defendants did knowingly, willfully, and unlawfully conduct or participate, directly or indirectly, in the conduct, management, or operation of the affairs of the enterprise for which Plaintiff has yet to be compensated.

156. At all relevant times the RICO Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to advance their scheme to deceive or defraud Plaintiff.

157. The RICO Defendants have engaged in multiple predicate acts, including theft, wire fraud, mail fraud and obstruction of justice.  The conduct of the RICO Defendant as described herein constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), as they are both continuous and related.  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

158. The RICO Defendants' violations of federal law as set forth herein, each of which directly and proximately injured Plaintiff, constitutes a continuous course of conduct, which was intended to defraud Plaintiff of money and property through false representations, fraud, deceit, and

other improper and unlawful means. Therefore, said violations were a part of racketeering activity as defined by 18 U.S.C. §§ 1961(1) and (5).

159. Plaintiff was injured by reason of the RICO Defendants' violation of 18 U.S.C. § 1962(c). The RICO Defendants' injuries to Plaintiff were a direct, proximate, and reasonably foreseeable result of their violation of 18 U.S.C. § 1962.

160. Plaintiff was injured by the RICO Defendants' (1) conduct; (2) of an enterprise (3) through a pattern (4) of racketeering activity. Plaintiffis the ultimate victim of the RICO Defendants' unlawful enterprises. Plaintiff has been and will continue to be injured in an amount to be determined at trial.

161. As a direct and proximate result of the foregoing, Plaintiff has been damaged and will be damaged in an amount exceeding $5 million.

162. Pursuant to 18 U.S.C. § 1962(c), Plaintiff are entitled to recover treble damages plus costs and attorneys' fees from RICO Defendants as well as any other relief authorized by statute.

### SECOND CLAIM FOR RELIEF
#### (Conspiracy to Defraud)

163. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

164. Under California law, a conspiracy to defraud occurs when two or more individuals agree to defraud another through false representation or other wrongful conduct. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal. 4th 503, 511-12 (1994).

165. Defendants Tamila Jensen conspired with Chevon Martin to defraud the court and obtain the Plaintiff Trust assets through misrepresentation and fraud. They had an agreement to deceive the Plaintiff and the Court in order to do so, and both Defendants took steps toward achieving that goal.

166. Defendants Alvarado and Barbosa, along with Aivazi and Oronsaye conspired to defraud the trust by making false claims regarding the habitability of the Trust properties which Alvarado and Barbosa rented from the Plaintiff Trust.

167. As a direct and proximate result of the foregoing acts and omissions by these Defendants Plaintiff has been damaged and will be damaged in an amount to be determined at trial.

### THIRD CLAIM FOR RELIF
### (Wire and Mail Fraud by all Defendants)

168. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

169. Under California Law, fraud is the misrepresentation of facts by an individual or institution, which leads to an undeserved benefit to the perpetrators, while the victim suffers loss or harm.  The motives for fraud are usually to get away from criminal responsibility and to gain financially.  Fraud crimes are known as white collar crimes and involve some degree of deceit or breach of trust.

170. Under California Law, the elements of fraud, which give rise to the tort action for deceit, are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity or "scienter"; (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court* 12 Ca. 4th 631, 638 (1996); *Engalla v. Permanente Medical Group, Inc.,* 15 Cal. 4th 951 (1997); *Stansfield v. Starkey*, 200 Cal. App. 4th 59 (2013).

171. Defendant Jensen made false representations to the Court about the existence of the GLM Trust and its provisions, with the intention of deceiving the Court and the Plaintiff.

172. Defendant Jensen knew that her representations were false and also knew that the Plaintiff relied upon those representations to his detriment.

173. Defendants Alvarado, Aivazi, Barbosa and Oronsaye filed false reports against the Plaintiff Trust in order to avoid paying rents which were due to the Plaintiff Trust.

174. As a direct and proximate result of the foregoing fraudulent conduct toward Plaintiff and the Court by all Defendants Plaintiff has been damaged and will be damaged in an amount exceeding $1 million.

## FOURTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty by Defendants Jensen, Aivazi and Oronsaye)

175. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

176. Under California law, a fiduciary duty arises when one person is entrusted with the property or interests of another, and that person is obligated to ac tin the best interests of the other. *City of Hope National Medical Center v. Genentech, Inc.* 43 Cal. 4th 375, 386 (2008).

177. Defendant Jensen owed a fiduciary duty to beneficiary Chevon Martin.

178. Defendant Jensen breached her fiduciary duty to the beneficiary Chevon Martin by colluding with her to defraud the Court.

179. Defendant Jensen owed a fiduciary duty to the Plaintiff.

180. Defendant Jensen breached that duty by conspiring to have him removed as Trustee.

181. Despite this breach by Jensen, Plaintiff dutifully fulfilled all obligations designated to him as Trustee and fiduciary, in spite of Jensen and all remaining RICO Defendants' efforts to make it impossible for Plaintiff to do so.

182. Jensen failed to perform her duties and obligations as a fiduciary, and has instead stolen, converted, spent or otherwise fraudulently converted Trust assets, to which she was not entitled, for her own purposes.

183. As a direct and proximate result of Defendant Jensen's breach of her fiduciary duty, Plaintiff has been damaged and will be damaged in an amount to be proven at trial.

184. Defendants Aivazi and Oronsaye also owed a fiduciary duty to the Plaintiff Trust. Both Defendants violated this duty when they conspired with their clients, Alvarado and Barbosa, to defraud the Plaintiff Trust.

185. As a direct and proximate result of such breaches Plaintiff has been damaged and will be damaged in an amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF
**(Civil Conspiracy by all Defendants)**

186. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

187. Under California law, a civil conspiracy occurs when two or more individuals agree to commit a wrongful act, and one or more of them commits an overt act in furtherance of the conspiracy, resulting in damages to the Plaintiff.

188. Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* 7 Cal 4th 503, 510-511 (1994).

189. The elements of civil conspiracy are: (1) the formation and operation of the conspiracy; (2) a wrongful act done in the furtherance of the conspiracy, and (3) the resulting damage to the plaintiff.

190. All Defendants conspired to defraud Plaintiff and the Trust and they did defraud Plaintiff and the Trust.

191. As a direct and proximate result of the foregoing breach by Defendant Jensen, Plaintiff has been damaged and will be damaged in in excess of $5 million.

### SIXTH CLAIM FOR RELIEF
**(Fraudulent Misrepresentation against Jensen and Chevon Martin)**

192. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

193. Under California law, a misrepresentation occurs when a party makes a false representation with the intent to induce another to rely upon it, and the other party justifiably relies upon the representation and suffers harm as a result. Cal. Civ. Code § 1572; *Glendale Fed. Bank v. United States,* 239 F.3d 1376 (Fed. Cir. 2001); *Ashley v. Jones,* 225 Cal. App. 4th 773 (2014); *Wyatt v. Union Mortgage Co.,* 24 Cal. App. 4th 773 (1994).

194. The elements under California Civil Code § 1710 are: (1) the defendant represented to another that a fact was true; (2) the representation was actually false; (3) the defendant knew it was false; (4) the defendant intended for the other person to rely on the statement; (5) the other person did rely on the statement; (6) the other person was harmed by the reliance; or (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing the harm suffered.

195. Defendant Jensen and Chevon Martin deliberately provided false information to Commissioner Scott Nord about the Plaintiff and the GLM trust, which resulted in an erroneous probate order and in substantial monetary damages to the Trust and its assets, and to the Plaintiff.

196. As a direct and proximate result of the acts and omissions as described herein, Plaintiff has been damaged and will be damaged in an amount in excess of $5 million.

## SEVENTH CLAIM FOR RELIEF
### (Unjust Enrichment by All Defendants)

197. Plaintiff fully incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

198. Cases dealing with unjust enrichment in California are uniform in their recognition of three elements of the claim: (1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity

and good conscience require restitution. *Peterson v. Cellco Partnership,* 80 Ca. Rptr. 3d 316 (Ct. App. 2008)

199. In reliance upon Jensen's lies and manipulation, Commissioner Nord entered an Order divesting Plaintiff as Trustee.

200. Despite this, Plaintiff faithfully remained performing all of the responsibilities and fiduciary obligations of the Trustee for the benefit of the Trust.

201. The remaining Defendants aided and abetted Jensen in this fraud, in the manner described herein.  Because of this all Defendants have been unjustly enriched at Plaintiff' expense.

**202.** As aiders and abetters to Defendant Jensen's illegal and fraudulent RICO enterprise, all Defendants have been materially enriched by defrauding the Court and the Plaintiff Trust, as set forth herein, for which Plaintiff and the Trust have received nothing of value or reimbursement for their injuries and losses.  Therefore all Defendants have been materially enriched at the Plaintiff' expense.

**203.** It is against equity and good conscience to permit the Defendants to retain what is sought to be recovered.

**204.** As a direct and proximate result of the acts and omissions of all of the Defendants, as described herein, Plaintiff has been damaged and will be damaged in an amount to be proved at trial, but reasonably believed to be in excess of $ 5 million.

### EIGHTH CAUSE OF ACTION
**(Conversion by All Defendants)**

205. Plaintiff fully incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

206. California law defines conversion as "the wrongful exercise of dominion over the property of another."  The elements of a conversion claim are: (a) the plaintiff's ownership or right to possession

of the property; (b) the defendant's conversion by a wrongful act or disposition of property rights; and (c) damages." *Welco Electronics, Inc. v. Mora,* 223 Cal. App. 4th 202, 208 (2014).

**207.** The tort of conversion is derived from the common law action of trover. The gravamen of the tort is the defendant's hostile act of dominion or control over a specific chattel to which the plaintiff has their right of immediate possession.

**208.** Defendant Jensen exercised an unauthorized dominion over the Trust to the alteration of its condition or to the exclusion of plaintiff's rights. She prevented Plaintiff from performing his fiduciary duties as Trustee.

**209.** Defendants Alvarado and Barbosa retained funds that they owed to the Plaintiff Trust by virtue of their lease Agreements, and thereby converted funds to their own use.

**210.** All Defendants converted the Plaintiff's assets for their own use by engaging in fraudulent conduct. *See Farmers Exchange v. Zerin,* 53 Cal. App. 3d 68 (1975).

**211.** As a direct and proximate result of the foregoing conversion of the Plaintiff' property by Defendant Jensen, Plaintiff has been damaged and will be damaged in an amount exceeding $5 million.

## NINTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress by All Defendants)

212. Plaintiff fully incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

213. This claim is for damages pursuant to the common law of the State of California as mandated by the California Supreme Court in the decision of *Rojo v. Kliger,* 52 Cal. 3d 65 (1990).

214. Defendants actions against the Plaintiff were extreme and outrageous with wanton and reckless disregard of the probability of causing severe emotional distress in Plaintiff.

215. To summarize their actions: Jensen and Chevon conspired to defraud and did defraud the Trust by making false statements about Plaintiff to the Court, which, by an unauthorized Order, made

false statements about the Plaintiff and deprived Plaintiff of the authority to carry out the responsibilities of a Trustee.

216. Defendants Jensen and Chevon Martin lied about and humiliated Plaintiff and caused the Court to do likewise both during the hearing and in its March 2019 Order.

217. Defendants Alvarado, Barbosa, and their accomplices Aivazi and Oronsaye humiliated the Plaintiff by filing false Notices to Abate on the properties they leased from Plaintiff when they themselves had breached their lease agreements by failing to maintain the properties in habitable order, and subsequently tried to blame their failures upon Plaintiff.

218. As a proximate result of the extreme and outrageous conduct engaged in by Defendants, Plaintiff suffered humiliation, mental anguish and extreme emotional and physical distress.

219. In a civil case not arising from the breach of a contractual obligation, the jury may award punitive damages 'where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice.' (Civ. Code, § 3294, subd. (a).) 'Malice' is defined as intentional injury or 'despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.' (*Id.*, § 3294, subd. (c)(1).) 'Oppression' is defined as 'despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.' (*Id.*, § 3294, subd. (c)(2).)" (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 712.)

220. The term "despicable" is not defined in the statute, but the Supreme Court has observed that it is applicable to "circumstances that are 'base,' 'vile,' or 'contemptible.'" (*College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 725.)

**221.** Plaintiff has clearly and convincingly shown that he is entitled to punitive damages based on the outrageous, intentional, willful and wanton acts of all of the Defendants, as described in this Complaint.

222. All Defendants named in this Cause of Action are guilty of oppression, fraud and malice, as described herein.

### TENTH CAUSE OF ACTION
### (Title 42 U.SC. § 1983 - Conspiracy to Commit Corruption by Defendants Jensen and Chevon Martin, with the LACPD and Commissioner Nord

223. Plaintiff is not suing Commissioner Nord for any judicial acts, such as his general review of their case or his decisions in their case.  Plaintiff is suing for *ultra vires* acts that are beyond his legal jurisdiction in depriving Plaintiff of his constitutional rights and privileges as well as his rights as a litigant in his courtroom, by, upon information and belief, his conspiring with Defendants Jensen.

224. Plaintiff believes and alleges that Commissioner Nord was a willful participant engaged in a conspiracy with Defendants Jensen, LACPD and Chevon Martin, in order to subvert the will of law and deprive Plaintiff's of their rights and privileges.

225. Plaintiff believes and alleges that the official act of conducting a *sua sponte* hearing in the probate case and entering an Order depriving Plaintiff and the Trust of due process, was the product of a corrupt conspiracy involving bribery of Commissioner Nord.

226. Commissioner Nord's immunity from suit does not change the character of his action nor that of his co-conspirators.  In fact, his immunity is dependent on the challenged conduct being an official judicial act within his statutory jurisdiction, broadly construed. *Stump v. Sparkman,* 435 U.S. 349, 356 (1978).

227. Private persons, such as Jensen and Chevon Martin,  jointly engaged with state officials, such as Commissioner Nord, are acting "under color" of law for purposes of § 1983 actions.  *Adickes v. S.H. Kress Co.,* 398 U.S. 144, 152 (1970).

228. At all relevant times herein, Commissioner Nord was acting under color of state law. 42 U.S.C. § 1983. His decision was corruptly issued as a result of a conspiracy between himself, Jensen, Chevon Martin and the LACPD.

229. Plaintiff Walter Martin, as Trustee, was deprived by Commissioner Nord of his rights, privileges and immunities, including his rights to Due Process under the Fifth and Fourteenth Amendment to the United States Constitution.

230. Commissioner Nord failed and refused to acknowledge and rectify fraud committed by Jensen upon the Court as set forth herein.

231. The doctrine of judicial immunity does not excuse Commissioner Nord from responding as a witness when his co-conspirators are sued, even though a charge of conspiracy and judicial corruption will be aired and decided. *Gravel v. United States,* 408 U.S. 606 (1972).

232. The United States Supreme Court stated: "[W]e agree . . . that the potential harm to the public from denying immunity to private co-conspirators is outweighed by the benefit of providing a remedy against those private persons who participate in subverting the judicial process and in so doing inflict injury upon other persons. *Dennis v. Sparks* 449 U.S. 24, 32 (1980).

233. Under *Sparks,* "a private defendant can act under color of state law if it is a willful participant in joint action with the State or its agents." Thus each and all of the other private defendants who conspired to defraud and did defraud Commissioner Nord are liable for the acts and omissions of Commissioner Nord.

234. In addition to this, the LACPD also acted under color of state law in conspiring with Jensen, Chevon Martin, Aivazi and Oronsaye to defraud the Plaintiff Trust.

235. As a direct and proximate result of all of the foregoing, Plaintiff has been damaged and will be damaged in an amount in excess of $1 million.

## ELEVENTH CAUSE OF ACTION
### (Punitive Damages under Cal. Civil Code § 3294(c) against all Defendants)

236. Plaintiff fully incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

237. The acts and omissions by all of the Defendants as set forth herein were willful and wanton and they harmed Plaintiff.

238. The acts and omissions by all Defendants were intentional and extremely reckless, malicious, oppressive and fraudulent.

239. California Civil Code 3294(c) defines "malice" "oppression" and "fraud."

240. Malice, under § 3294(c), means: "Conduct that is intended by the defendant to cause injury to the plaintiff, or despicable conduct carried on by the defendant with a willful and conscious disregard of the rights or safety of others."

241. Plaintiff has established that all Defendants acted maliciously in injuring him, as described herein.

242. Oppression, under § 3294(c), means: "Despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights."

243. Plaintiff has established that all Defendants subjected them to cruel and unjust hardship in conscious disregard of their rights, as described herein.

244. Fraud, under § 3294(c), means: "An intentional misrepresentation, deceit or concealment of a material fact known to the defendant . . . made with the intention on the part of the defendant thereby depriving a person of property or legal rights or otherwise causing injury.

245. Plaintiff has established that all Defendants made material misrepresentations to, deceived and concealed material facts known to them and to the Court, or other agencies, with the intention of depriving Plaintiff of his property or legal rights, or otherwise causing Plaintiff injury.

246. Plaintiff has established, and will establish at the trial of this matter, all of the foregoing by clear and convincing evidence.

247. As a result of all Defendants' acts and omissions, as described herein, Plaintiff is entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that the Court Order the following relief:

1.      As to the First Cause of Action, award Plaintiff money damages pursuant to 18 U.S.C. § 1962(c), as well as treble damages plus costs, and any other relief provided by the statute for the violations of the RICO statutes by all Defendants;

2.      Enter judgment against the RICO Defendant in an amount equal to three times the amount of damages to the Plaintiff has sustained because of the RICO Defendant's actions, plus a civil penalty for each violation under 18 U.S.C. § 1964 and § 1962;

3.      As to the First Cause of Action enter an award of Restitution to Plaintiff of all money, property and benefits Plaintiff were unlawfully defrauded and deprived of by the RICO Defendant and Order the RICO Defendant to cease and desist from violating 18 U.S.C. § 1964;

4.      As to the Second Cause of Action, award Plaintiff money damages caused by the conspiracy to commit fraud.

5.      As to the Third Cause of Action, award Plaintiff money damages caused by the wire and mail fraud predicate acts committed by all Defendants.

6.      As to the Fourth Cause of Action, award Plaintiff money damages for the breach of fiduciary duty by Defendants Jensen, Aivazi and Oronsaye;

7.      As to the Fifth Cause of Action, award Plaintiff money damages for the Civil Conspiracy committed by all Defendants;

8.      As to the Sixth Cause of Action, award Plaintiff money damages for the Fraudulent misrepresentation by the named Defendants.

9.      As to the Seventh Cause of Action for the unjust enrichment, enter and Order for damages for Plaintiff to be paid jointly and severally by all Defendants;

10.     As to the Eighth Cause of Action, award Plaintiff money damages for conversion of assets by the named Defendants.

11.     As to the Ninth Cause of Action, award Plaintiff money damages for the intentional infliction of emotional distress proximately caused to them by all Defendants;

12.     As to the Tenth Cause of Action, award Plaintiff money damages for violations under Title 42 U.SC. § 1983 to be paid jointly and severally by all named Defendants, as well as for declaratory relief as this Court deems appropriate and just; and

13.     As to the Eleventh Cause of Action, award Plaintiff punitive damages and costs of this action to be paid by all Defendants; and

14.     Grant to Plaintiff such other and further relief as this Court may deem just and proper.


Dated: June 9, 2023
            Indio, California


                                        *s/Walter E. Martin, in pro per*
                                        Walter E. Martin