1 | **WALTER MARTIN, In Pro Per**
1775 E. Palm Canyon Drive H130
2 | Palm Springs, CA 92264
XYZHP@YAHOO.COM
3 | Telephone: 307-337-7150

4
PLAINTIFF
5 | WALTER EMMANUEL MARTIN, in his official
capacity as Trustee of the Gesner L. Martin Living
6 | Trust, *In Pro Per*

**FILED**

July 27, 2023

CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY _Nancy Boehme_
Deputy Clerk, U.S. District Court

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| WALTER EMMANUEL MARTIN, as an individual aggrieved, AND in his official capacity as TRUSTEE of the GESNER L. MARTIN LIVING TRUST, | Case No. 2:23-cv-04642-VBF(DFM) |
| Plaintiff, | **AMENDED VERIFIED COMPLAINT** |
| vs. | **JURY TRIAL DEMANDED** |
| SAMANTHA P. JESSNER, in her official capacity as Presiding Judge of Los Angeles County, and DAVID W. SLAYTON, in his official capacity as Executive Officer/Clerk of Court of Los Angeles County; LOS ANGELES COUNTY PROBATE DEPARTMENT, (hereinafter "LACPD"), TAMILA JENSEN, ESQ., CHEVON ROBINSON MARTIN, COMMISSIONER SCOTT NORD, JUDGE STEPHEN MORGAN, JUDGE BRENDA PENNY; ZEVETTE MITCHELL JONES MARTIN, ANICA BARBOSA, ONIEL MCINNIS, CHRISTIAN ORONSAYE, ESQ., SAYRA ALVARADO, JONATHAN BANUELOS and ZHANA AIVAZI, ESQ. | |
| Defendants. | |
| Does 1-20 | |

1

**COMES NOW** Plaintiff WALTER MARTIN, (hereinafter "Plaintiff" or "Mr. Martin"), as an individual aggrieved, and in his official capacity as the former Trustee of the Gesner L. Martin Living Trust, and submits this Amended Verified Complaint, complaining of the Defendants SAMANTHA P. JESSNER, in her official capacity as Presiding Judge of Los Angeles County, and DAVID W. SLAYTON, (hereinafter "Defendant Slayton") in his official capacity as Executive Officer/Clerk of Court of Los Angeles County, LOS ANGELES COUNTY PROBATE DEPARTMENT, (hereinafter "LACPD"), TAMILA JENSEN ESQ., (hereinafter "Defendant Jensen"), CHEVON ROBINSON MARTIN, (hereinafter "Defendant Chevon"), COMMISSIONER SCOTT NORD, (hereinafter "Defendant Nord"), JUDGE STEPHEN MORGAN, (hereinafter "Defendant Morgan"), JUDGE BRENDA PENNY, (hereinafter "Defendant Penny"), ANICA BARBOSA, (hereinafter "Defendant Barbosa"), CHRISTIAN ORONSAYE, ESQ. (hereinafter "Defendant Oronsaye"), SAYRA ALVARADO, (hereinafter "Defendant Alvarado"), ZHANA AIVAZI, ESQ. (hereinafter "Defendant Aivazi"), and Does 1-20, (collectively "the Doe Defendants") and alleges and says as follows:

**Introduction**

1. The Superior Court of Los Angeles County, (sometimes "LASC") is the California Superior Court located in Los Angeles County. It is the largest single unified trial court in the United States. It is also corrupt to the core[1]. The Superior Court operates 37 courthouses throughout the county. The Presiding Judge is Defendant Samantha P. Jessner. Defendant David W. Slayton is the Executive Officer/Clerk of Court.

2. These two Defendants, Jessner and Slayton, together with 583 judicial officers and 4,800 employees operate the nearly 600 courtrooms throughout Los Angeles County. The LASC serves a population of over 10 million people and has an annual budget of over $1 billion.[2]

---

[1] www.petition2congress.com; http://www.change.org/p/jail-all-corrupt-judges-in-the-stanley-mosk-courthouse-the-black-robe-mafia; https://courtvictim.com/listen-to-blog-radio-expose-los-angeles-county-superior-court-corruption-fraud-scandal/; http://thejusticechannel.blogspot.com/2021/04/probate-court-corruption-part-ii.html; http://thejusticechannel.blogspot.com/2017/07/special-report-on-corruption-in-los-angeles.html

[2] https://www.lacourt.org/newsmedia/uploads/1420221215155922ADM MC 0046 BIENNIAL REPORT 15 FINALELECTRONICONLY.pdf

3. The Los Angeles County Superior Court Probate Division (sometimes "LACPD") has jurisdiction over decedents' estates, trust proceedings, guardianship, conservatorship proceedings, and minors compromises.

4. Defendants Jessner, Slayton, and the LACPD, as well as the LASC, will sometimes be referred to herein as the Administrative Defendants.

5. The LACPD has no stated mission that can be discerned from the 2021/2022 Biennial Report, referenced herein.  The publication states that:

> The Probate Division hears cases that involve especially vulnerable people, including the elderly and people with disabilities, along with family members who care for them.

6. The Report further states that "Probate Investigators, employed by the Court, are charged with the important work of investigating conservatorship and guardianship cases assigned to the Probate Division, and that these individuals conduct interviews with proposed conservatees and their family members.

7. In 2021/2022, the LASC's 28 Probate Investigators conducted 2,949 conservatorship petition investigations and 3,223 guardianship petition investigations.

8. The LASC also has a Probate Volunteer Panel, (sometimes "PVP") which is a panel of attorneys who register with the Los Angeles Superior Court to assist with the resolution of various probate proceedings.  The PVP Panel consists of attorneys whom LASC judges appoint in probate and family law matters, including conservatorships, guardianships and related proceedings.

9. The PVP attorney's compensation is usually paid from the conservatee's estate (if there are resources) or by the County of Los Angeles.  Probate Code section 1472(a) gives the court the authority to award fees and costs to such appointed attorneys, given that under LASC Local Rules, Rule 4.127(b)(2), such attorneys agree to request compensation at "below market" hourly rates.  In 2017 that was considered to be $250 per hour.[3]

---

[3] https://www.calattorneysfees.com/2017/02/probate–la–superior–court–pvp–attorney–properly–awarded–714893–in–attorneys–fees–and–costs.html

3

10. However, PVP attorneys are paid handsomely, and more often than not, directly bilk the estates of unsuspecting citizens of Los Angeles County, including the Plaintiff, out of millions of dollars, collectively, and with no oversight.

11. As with any attorney, a PVP attorney is required to zealously represent the interests of his or her client.

12. However, having been appointed by the LASC, the PVP attorney also has a secondary duty, which is "to assist the court in the resolution of the matter to be decided." *See* Rule 10.85, Los Angeles County Superior Court Rules.

13. The obvious conundrum in conservatorship cases is that if the allegations of the conservatorship petition are true, i.e. that the conservatee may not have the legal capacity to enter into a contract, how can the PVP attorney have an attorney-client relationship with the conservatee?  If the proposed client isn't mentally competent, then how can an attorney rely on the client to state his or her desires?  Likewise, if the conservatee is legally incompetent, is it in his or her best interest to fight the conservatorship proceeding?  It is for this reason that the LASC judges proscribe this second duty to the PVP attorney - to assist the court with the resolution of the matter.

14. It is for this reason that a PVP attorney frequently functions like an arm of the court, attempting to investigate the various allegations (especially in contested proceedings) and provide objective information about the status of the circumstances affecting the welfare of the conservatee.

15. However, an attorney who functions as an arm of the Court is treading perilously close to becoming a prosecutor.  Yet a prosecutor, whether District Attorney or Assistant District Attorney, is a public employee whose salary is paid by taxpayer dollars. District Attorneys hold public office, and they are elected by the people they serve.  They do not receive compensation from parties in the cases they handle, not from the defendants they prosecute nor from the victims of crimes whom they represent.

16. The PVP program is therefore inherently prone to corruption.  And the LASC PVP Program is corrupt to its core.

17. That corruption, and its impact upon the Plaintiff, as an individual, as a beneficiary of the Gesner L. Martin Living Trust, and as its former Trustee is the subject of this lawsuit.

**The Trust**

18. The matters arising in this Complaint pertain to the Gesner L. Martin Living Trust established by Mrs. Gesner Martin, the Mother of the Plaintiff, who died on January 26, 2018.  The trust was originally settled on September 23, 2011 and restated on September 11, 2014 by Mrs. Martin.  Mrs. Martin presided over its administration as trustee until March 23, 2012, on which date she resigned as trustee, leading to the appointment of her son, Plaintiff Walter Martin, as successor trustee of the Trust. No person other than Gesner L. Martin and her son, Plaintiff, had ever been named, appointed, or otherwise recognized or identified in any way as trustee of the Trust.

19. As set forth in the express terms of the Trust, Mrs. Gesner L. Martin had three children, including Plaintiff Water Martin and Rex Martin, (who died on August 21, 2020, the circumstances of whose declining health and death are also addressed herein).  The Trust provides explicitly for Plaintiff Walter Martin to serve as successor trustee following Gesner L. Martin.  The trust also provides that neither Rex Martin, nor any of his children, one of whom is, putatively, Defendant Chevon, shall ever be appointed trustee under any circumstances.

20. In spite of all of the foregoing, on July 21st, 2023, Defendant Chevon Martin filed a Petition to remove Plaintiff as Trustee of the Trust in Los Angeles County Superior Court in Case No: 18AVPB00069 *In re: Martin, Rex - Conservatorship*.  In so doing, she cited as grounds the Plaintiff's filing of this very Complaint against her and the remaining Defendants.

21. Plaintiff has been the acting Trustee of his Mother's Trust since March 23, 2012. On the Plaintiff, and no other person has served as Trustee nor has performed the functions of a Trustee since that time.

22. This is true in spite of the fact that on March 6th, 2019, Defendant Scott Nord, Commissioner, entered an order, unbeknownst to Plaintiff, which purported to remove Plaintiff as Trustee of the Trust, but appointed no successor Trustee.  As it was never served upon him, or his then attorney, Kenneth Gaugh, Plaintiff had no knowledge of this Order.  He continued to fulfill all of the functions and duties as Trustee of the Trust, including paying all of the mortgages, utilities, insurance and taxes on each of the Trust properties, as well as maintaining the properties.

23. Plaintiff only discovered Defendant Nord's March 2019 Order in April of this year.  In May of 2023, Plaintiff filed an *ex parte* Motion to Vacate the Order issued by Defendant Nord in the LASC Probate Division Case No: 18AVPB00069 *In re: Martin, Rex - Conservatorship.*

24. On July 3rd, 2023, Defendant Judge Morgan issued an Order, a copy of which is attached hereto as **Exhibit A,** denying with prejudice Plaintiff's Motion to Vacate.  Also in this Order, Defendant Morgan appoints Defendant Jensen to be the Probation Volunteer Panel attorney in this matter.

25. Also on July 3rd, 2023, Defendant Judge Brenda Penny entered an Order in the same case, a copy of which is attached hereto as **Exhibit B,** and file-stamped by Defendant DAVID W. SLAYTON, ordering that Defendant Jensen should be allowed to see all medical records of Rex Martin and should be compensated for her work as the Court appointed Attorney, but no less than $250 per hour.  Upon information and belief, this compensation will come from the assets of the Trust.

26. Despite the March 6, 2019 Order, no person other than Plaintiff had ever been openly and notoriously named, appointed, or otherwise recognized or identified in any way as the Trustee of the GLM Trust, nor had any person ever performed the functions as Trustee other than Plaintiff.  Since March 23, 2012 no one other than Plaintiff has in any way presided over the many necessary financial, practical and material functions as Trustee over the Trust. Only Plaintiff had done these duties.

27. On July 10th, 2023, Defendant Morgan entered a new Order, a copy of which is attached hereto as **Exhibit C,** discharging Defendant Jensen and appointing a different PVP Attorney, Candace Jones, as the PVP attorney for this case.

28. Then again on July 14th, 2023, Defendant Judge Morgan entered a third Order, a copy of which is attached hereto as **Exhibit D,** vacating its July 10th Order, discharging Candace Jones, and appointing a third PVP attorney, a man named Mario Andre Pacione, as Court Appointed Counsel.

29. The three different permutations of this Order, in quick succession, should alone give this Court pause to consider what is going on in the Los Angeles County Superior Court system.

30. The unlawful RICO enterprise in which all Defendants are involved, and in which they have, conspired to defraud, defrauded, and continue defrauding the Trust of funds to which they were never entitled, by predicate acts of subterfuge, by taking positions of responsibility despite conflicts of interest,

1  by deliberately breaching fiduciary duties and by outright lying to the Court, is the subject matter of this
2  Complaint.

3      31. The Attorney Defendants have all been involved with the Plaintiff and the Trust by way of
4  having been appointed or referred by the LACPD.

5      32. The LACPD has an intimate connection with all Defendants.  The LACPD routinely supplies
6  leads, including new candidates and new victims to the attorney Defendants, including Jensen, Aivazi
7  and Oronsaye, (and many others) in this illegal RICO enterprise, for purposes of defrauding legal estates
8  of decedents of Los Angeles County.

9      33. The LACPD is intimately involved in the RICO enterprise that has scammed and defrauded
10  the GLM Trust and to exploit the Plaintiff, as well as his late brother, Rex Martin as will be shown
11  herein.[4]

12      34. As the final days of her life neared, on or about January 28, 2018, for the grantor, Gesner L.
13  Martin of her trust, the Gesner L. Martin Living Trust, Gesner had come a long way from her date of
14  birth 1924 in the heart of Dixie, Birmingham, Alabama.

15      35. As a black woman, Gesner had survived the violence, the inequality and numerous
16  infringements upon her Civil Rights. After settling in Los Angeles, California with her husband Major
17  and four children, she went on to graduate from the University of California at Northridge and to work
18  for 27 years for the California Employment Development Department.

19      36. In her 93 years of living, working, enduring hardship and sacrifices, it never occurred to her
20  that at the end of her life, her equal right to decide the terms of her own Trust, and to select her Son,
21  Walter Martin as her Trustee to administer and execute her Trust per her unique instructions would be
22  stolen, and infringed upon by an overzealous judicial system and the actors within it.

23      37. It is also apparent that all of these predicate acts, as set forth in this Amended Verified
24  Complaint, were undertaken in blatant disregard for Gesner L. Martin, her civil and legal rights and her
25  ability to make her own competent estate planning decision.

26  ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

27  [4]The Defendant LACPD is intimately involved in multiple other estate scams and frauds and has defrauded numerous
28  estates under its supervision.  Additional lawsuits against the LACPD on behalf of other defrauded estates and
   beneficiaries will be forthcoming.

**The Nature of this Lawsuit**

38. Plaintiff brings this civil action against all Defendants under the Federal Racketeer Influenced and Corrupt Organizations Act, Chapter 96 of Title 18 U.S.C. § 1961 *et seq.* (hereinafter "RICO"). Pursuant to 18 U.S.C. § 1964, Plaintiff seeks treble damages, costs and attorneys fees from all Defendants, jointly and severally.

39. Plaintiff also brings this civil action under Title 42 U.S.C. § 1983 for the violation of Plaintiff's constitutional rights under the Fifth and Fourteenth Amendments.

40. Plaintiff also brings this lawsuit against Defendants as set forth herein, for Civil Conspiracy, Fraud, Conspiracy to Defraud, Misrepresentation, Breach of Fiduciary Duty, Conversion, Unjust Enrichment, Intentional Infliction of Emotional Distress, and for Punitive Damages for their acts and omissions against the Plaintiff.

41. Defendants Samantha P. Jessner and David W. Slayton, (sometimes "the Administrator Defendants") oversee, in a broad sense, the LASC and the LACPD.

42. Defendants Commissioner Scott Nord, Judge Stephen Morgan and Judge Brenda Penny, (sometimes "the Judicial Defendants") are and have been complicit actors within the LASC and the LACPD RICO enterprise, and by their *ultra vires* actions have violated Plaintiff's rights under Title 42, Section 1983, as set forth herein. These three will be referred to herein sometimes collectively as "the Defendant Judges".

43. Defendant Jensen, who was appointed by the LACPD, who became a beneficiary of the Trust at issue in this case by fraudulent means, and who has bilked and will continue to bilk the Trust of thousands upon thousands of dollars, for no purpose other than to line her own pockets, has been and is being maintained in that scam artist role by the Defendant Judges.

44. Defendant Jensen is the main culpable "person" under the RICO statute, with the requisite *mens rea,* who is intimately involved with every other Defendant, advanced an illegal RICO enterprise that is sanctioned by the Defendants LASC, LACPD, Jessner and Slayton in order to defraud the Plaintiff, causing injuries and damages to the Plaintiff as set forth herein. Defendant Jensen did and does so through the use of false claims and through fraudulent activities involving the Plaintiff Trust, to the detriment and injury of the Plaintiff.

8

45. Defendant Jensen has received and continues to receive income from the illegal RICO enterprise, in violation of § 1962(a).

46. Defendant Jensen has maintained an interest in and/or control of the illegal RICO enterprise through a pattern of racketeering activity, as set forth herein, in violation of § 1962(b).

47. The remaining Defendants in this lawsuit engaged in the furtherance of activities carried out by the enterprise, in violation of § 1962(c), and have also received income directly from the illegal activities of the RICO enterprise, in violation of § 1962(b).

48. The remaining Defendants conspired with Defendant Jensen to violate and did violate subsections (a), (b) and (c) of § 1962 as set forth herein by engaging in predicate acts of the enterprise as defined by § 1961 of the RICO statute.  *See also Reddy v. Litton Indus., Inc.* 912 F.2d 291 (9th Cir. 1990).

49. The enterprise is the association of all of the Defendants to this lawsuit, who are associated in fact, although the enterprise is not a legal entity.  It is a continuing unit that has some type of organization as all Defendants have worked and are still working together in furtherance of the illegal enterprise, as set forth herein. 18 U.S.C. § 1964(4).

50. All Defendants have engaged in a pattern of racketeering activity, and carried out acts that are indictable under Title 18 of the United States Code, including, but not limited to bribery (Section 201), mail fraud, which includes e-mail fraud (Section 1341), wire fraud (Section 1343), obstruction of justice (Section 1503), interference with commerce, robbery or extortion (Section 1951) and/or racketeering (Section 1952).  All Defendants engaged in at least two such incidents within the past four years.

51. Defendant Attorney Jensen, and her client, Defendant Chevon, both of whom have criminal intent, worked together by committing mail fraud, wire fraud and obstruction of justice in furtherance of the illegal enterprise in order to disgorge the maximum funds from the Trust, by defraud the Plaintiff and the Court.  Defendant Attorneys Aivazi and Jensen assisted their clients, Defendants Chevon and Alvarado in schemes to defraud the trust by making false claims against the Plaintiff, and to the court; and by fraudulent conduct getting themselves appointed as PVP Attorney and Conservator, respectively, and then helping themselves to the assets and proceeds of the trust with impunity.

52. Defendant Attorney Aivazi, and her client, Defendant Alvarado, as well as Defendant Attorney Oronsaye and his client Defendant Barbosa, all of whom have criminal intent, worked together by committing mail fraud, wire fraud and obstruction of justice in furtherance of the illegal enterprise in order to defraud the trust.

53. Defendants Alvardo and Barbosa, at the direction of Aivazi and Oronsaye sent identical emails to the Plaintiff trust falsely alleging that the properties held within the trust, which they rented, were not habitable, when in fact Alvarado and Barbosa, as tenants of trust properties, violated the lease agreements each had with the Plaintiff by failing to maintain the leased properties in habitable and safe conditions.  They filed these false notices in order to defraud the trust and each did defraud the trust by illegally failing to pay rents that were due to the Trust under their lease agreements.

54. Defendant Oronsaye and his client, Defendant Barbosa both of whom have criminal intent, have worked together by committing mail fraud, wire fraud and obstruction of justice in furtherance of the illegal enterprise in order to defraud the trust.

55. Defendants Aivazi, Jensen and Oronsaye, all of whom are attorneys, and all of whom have criminal intent, have been bribed, have bribed each other and/or have received unauthorized information, referrals and bribes from the LACPD in furtherance of the illegal activities of the enterprise.

56. In addition to the harm perpetrated upon the Plaintiff, the aforementioned Defendants have received leads on estates in Los Angeles County and have helped themselves to the control, assets and proceeds thereof by getting themselves appointed as Conservators, PVP attorneys and the like, and turning around and cheating, stealing and robbing the estates of unsuspecting Los Angeles citizens, including the Plaintiff, and others as will be set forth herein.

57. The pattern of racketeering activity in which Defendants have engaged in consists of multiple predicate acts, as listed herein, which amount to or pose a threat of continued criminal activity.  *H.J. Inc. v. Northwest Bell Tel. Co.,* 492 U.S. 229, 239 (1989).

58. The enterprise, by way of all Defendants benefited financially from these related crimes.

59. The pattern of racketeering activity which Defendants engaged in, including wire fraud and mail fraud, bribery and others had an effect on interstate commerce.

60. These crimes occurred multiple times over a substantial period of time and also continues presently.  The predicate acts in which Defendants have engaged in have been continuous and are part of a long-term association that exists for criminal purposes.  They are a regular way of conducting the Defendants' ongoing legitimate businesses in law and real estate, and/or are a regular way of conducting or participating in an ongoing and legitimate business.

61. Each Defendant did not necessarily know about each aspect of the enterprise, but each Defendant (1) agreed to participate in at least two racketeering acts, (2) knew the general status of the conspiracy, and (3) knew that the conspiracy extended beyond his or her individual role.

62. The racketeering activity in which Defendants engaged, in furtherance of the illegal RICO enterprise, injured and damaged Plaintiff personally, in his business and property, as a beneficiary of the Trust, and as the Trustee of the Trust.

63. A plaintiff must have both standing under Article III in order to bring a lawsuit. He must have (1) a concrete and particularized injury that (2) is caused by the challenged conduct and (3) is likely redressable by a favorable judicial decision.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs (TOC), Inc.,* 528 U.S. 167, 180-81 (2000); *Jewel v. NSA,* 637 F.3d 902, 908 (9th Cir. 2011).  A plaintiff need only establish a genuine dispute as to these requirements in order to survive a motion to dismiss or for summary judgment.  *See Cent. Delta Water Agency v. United States,* 306 F.3d 938, 947 (9th Cir. 2002).

64. Therefore Plaintiff has standing to sue under 18 U.S.C. § 1964.  He brings this lawsuit in his individual capacity as well as in his official capacity as the former Trustee if the Trust.

65. Plaintiff was injured from the conduct of the affairs of the enterprise through a pattern of racketeering activity carried out by the Defendants.

66. The GLM Trust over which Plaintiff has presided as Trustee has also been irreparably damaged as the assets of the trust have been and are continuing to be unlawfully depleted.

67. The Defendants conspired to and did damage the reputation, standing and status of the Plaintiff as Trustee by making false claims in disregard of their obligations to be truthful to the Court, and in other ways as will be shown at the trial of this matter.

68. Plaintiff is therefore entitled to recover treble damages, costs and reasonable attorneys fees from all Defendants, jointly and severally.

69. Not every RICO violator who is a part of this enterprise is listed herein as a Defendant; however the actions of each, carried out in coordination with other Defendants and the enterprise is set forth herein.  Plaintiff reserves the right to add additional violators as Defendants at a later time and/or to separately bring suit against them as new facts and evidence come to light.

70. The RICO violations committed by all Defendants, including Defendant Jensen include, but are not limited to wire fraud, mail fraud and obstruction of justice. These violations were committed over a substantial period of time, were continuous and interrelated, are ongoing, and have had and are still having an effect on interstate commerce.

71. The remaining Defendants assisted in the enterprise by: (1) working in partnership or otherwise in tandem with the LACPD and/or Defendant Jensen in advancing her illegal RICO scheme; (2) sheltering and protecting Defendant Jensen; (3) providing assistance to Defendant Jensen in furtherance of the illegal RICO scheme and by (4) otherwise working together in furtherance of a common illegal interest of the enterprise which Jensen advanced.  All Defendants have thereby been unjustly enriched by the illegal scheme described herein, and all are jointly and severally liable to the Plaintiff for the damages each one has caused.

72. All Defendants have conspired and colluded together under a covert scheme to defraud the Gesner L Martin Living Trust.  All Defendants have been unjustly enriched by defrauding the Plaintiff and disgorging funds from the Trust, and all Defendants have exploited the standing, duties and financial services of Plaintiff.

73. The acts and omissions of all Defendants, as described herein, have been, are and will be continuously financially damaging to the Plaintiff.  In light of all of the foregoing, Plaintiff respectfully shows unto this Court as follows:

**The Parties**

*74.* At all times herein relevant Plaintiff WALTER EMMANUEL MARTIN, (hereinafter "Plaintiff" or "Mr. Martin")  is an individual residing in Los Angeles County.  Plaintiff is and has been the acting Trustee in fact for the Gesner L. Martin  Living  Trust (sometimes "GLM  Trust")  since

March 23, 2012 up through and including July 3rd, 2023.

75. Defendant SAMANTHA P. JESSNER, (hereinafter "Defendant Jessner") is the Presiding Judge of Los Angeles County.  She presides over the LACPD and all members of its staff, over the PVP Panel and all attorneys appointed under it, as well as over all judges, jurors, commissioners, prosecutors, defense, attorneys, clerks, bailiffs and court reporters.  She assigns cases to departments and judges to departments.  *See* Los Angeles Superior Court Local Rules § 2.1  and  Los Angeles Superior Court Local Rules § 2.1. Defendant Jessner is sued in her official capacity.  Whenever the LOS ANGELES COUNTY PROBATE DEPARTMENT, or LACPD is mentioned in this lawsuit, it is also mentioned as a euphemism for Defendant Jessner, since she controls it and is responsible for its acts and omissions.

76. Defendant DAVID W. SLAYTON, (hereinafter "Defendant Slayton") is the Executive Officer/Clerk of Court of Los Angeles County.  He is sued in his official capacity. Whenever the LACPD is mentioned in this lawsuit, it is also mentioned as a euphemism for both Defendants Jessner and Defendant Slayton, since they control it and are responsible for its acts and omissions.

77. At all times relevant herein, Defendant LOS ANGELES COUNTY PROBATE DEPARTMENT, a governmental arm of the Los Angeles County Superior Court has been a government organization, which has no stated purpose, but which routinely robs and loots the citizens of Los Angeles County who have the misfortune to come under its auspices.

78. At all times relevant herein Defendant TAMILA JENSEN, ESQ., (hereinafter "Defendant Jensen") is and has been a Probate Volunteer Panel Attorney (sometimes "PVP Attorney") appointed by and servant of the Los Angeles County Probate Department.  She was appointed as Conservator for Rex Martin, the deceased brother of the Plaintiff, by the LACPD.  Defendant Jensen became a 25% beneficiary of the GLM Trust through deceit and fraud by way of a separate Conservatorship proceeding

for Rex Martin. Defendant Jensen is intimately connected with the LACPD and with each of the remaining defendants.

79. Defendant Jensen is the principal RICO Defendant who advanced a scheme to defraud the Plaintiff and to disgorge as much money as possible from the GLM Trust, and did defraud the Plaintiff and the GLM Trust, along with the other named Defendants, in varying ways as set forth herein.

80. At all relevant times herein Defendant CHEVON ROBINSON MARTIN, (hereinafter "Defendant Chevon") was an individual residing in Los Angeles County, California. She is the adult daughter of Rex Martin, and is believed to be his non-biological daughter, and therefore the non-biological niece of Plaintiff Walter Martin. Defendant Chevon, a third-tier (16.6%) named beneficiary of the GLM Trust, conspired and colluded with Jensen to defraud the Plaintiff and the GLM Trust and did defraud the Plaintiff and GLM Trust.

81. Defendant COMMISSIONER SCOTT NORD, (hereinafter "Defendant Nord") is a LASC Commissioner who has acted outside of the law as a part of this illegal RICO enterprise. He is the judge who conspired with Defendants JENSEN and CHEVON to unlawfully remove Plaintiff as Trustee of his Mother's Trust. In so doing he has deprived Plaintiff of his Civil Rights under Title 42 § 1983.

82. Defendant JUDGE STEPHEN MORGAN, (hereinafter "Defendant Morgan") is a LASC Judge who has acted outside of the law as a part of this illegal RICO enterprise. He is the Judge who, upon being told during a hearing on July 3rd, 2023 that Plaintiff had filed the original Complaint in this matter, became upset and reacted by entering an Order upholding Defendant Nord's wrongful decision and re-appointing Defendant JENSEN, the main RICO defendant, with the requisite *mens rea* as the Court attorney in the matter. In so doing he is depriving Plaintiff of his Civil Rights under Title 42 § 1983.

83. Defendant JUDGE BRENDA PENNY, (hereinafter "Defendant Penny") is a LASC Judge who has acted outside of the law as a part of this illegal RICO enterprise as a part of this illegal RICO enterprise.  She entered an Order on July 3rd, 2023 awarding Defendant JENSEN the right to collect further funds while serving as the Court appointed attorney, funds which, upon information and belief, will come from further disgorgements from the Trust.

84. At all relevant times herein Defendant ANICA BARBOSA, (hereinafter "Defendant Barbosa"), was and is an individual residing in Los Angeles County.  She is a serial estate fraudster known to have a historical link with the LACPD, which supplies her with an unlimited supply of leads, candidates and victims to scam and defraud. She was a tenant of the one of the Trust's properties, who rented the same from the Plaintiff.  Defendant Barbosa conspired with her attorney, Defendant Oronsaye to defraud the Plaintiff.

85.  At all relevant times herein Defendant SAYRA ALVARADO, (hereinafter "Defendant Alvarado"), is a citizen and resident of Los Angeles County. She was a tenant of one of the Trust's properties, who rented the same from Plaintiff.  Defendant Alvarado conspired with her attorney, defendant Zhana Aivazi, to defraud the Plaintiff.

86. At all relevant times herein, Defendant Attorney CHRISTIAN ORONSAYE, ESQ. (hereinafter "Defendant Oronsaye"), is an attorney who represented and/or represents Defendant Barbosa.

87. At all relevant times herein, Defendant Attorney ZHANA AIVAZI, ESQ. (hereinafter "Defendant Aivazi"), is an attorney who represented, and/or represents Defendant Alvarado.

88. At all times relevant herein, Defendant ONIEL MCGINNIS, (hereinafter "Defendant McGinnis"), was a citizen and resident of Los Angeles County.  He was or is the common law or legal

husband of Defendant Anica Barbosa and is and was involved in her mutual schemes and conspiracies, along with Defendant Oronsaye, to defraud the Trust.

89. At all times relevant herein, Defendant JONATHAN BANUELOS (hereinafter "Defendant Banuelos") was a citizen and resident of Los Angeles County.  He is the common law husband of Defendant Alvarado and is and was involved in her mutual schemes and conspiracies, along with Defendant Aivazi, to defraud the Trust.

90. Defendant Aivazi deliberately exploited the trust, knowing since at least March 6, 2019 that the Trust was temporarily vulnerable due to a misinformed Los Angeles County Commissioner, Scott Nord who, believing the lies told by Defendant Jensen during a conservatorship proceeding regarding Rex Martin, entered an Order removing Plaintiff as Trustee in or around March 6th, 2019, in a judicial Order that Plaintiff was never served with and was unaware of the existence of until April of this year..

91. Defendant Aivazi was noticed and informed by Defendant Oronsaye regarding the vulnerability of the trust, but said and did nothing to correct this.  Defendant Oronsaye and/or other LACPD network participants recruited Aivazi to exploit and defraud the Trust using manufactured false claims.

92. Does 1-20 are necessary parties that have yet to be identified.  The true names and capacities of Defendants DOES 1-20 are currently unknown to Plaintiff, who therefore sues these Defendants under fictitious names pursuant to Code of Civil Procedure § 474.  Each Defendant is directly and/or vicariously responsible in some manner, for the harms alleged herein.  If/when Plaintiff learns these Defendants' true names and capacities, Plaintiffs will seek leave to amend this pleading accordingly.

93. Plaintiff is informed and believes and therefore alleges that each Defendant is jointly and severally liable for the occurrences alleged herein and also that Plaintiff's injuries were directly and proximately caused by the acts and omissions of Defendants.

**Jurisdiction and Venue**

36. The Court possesses jurisdiction under 28 U.S.C.§ 1331. Plaintiffs' claims present a

federal question under 18 U.S.C. §1965(a), and also under 42 U.S.C. § 1983.

37. Venue is proper in the Central District of California. The Plaintiffs resides in Los Angeles,

California.  Further, a substantial part of the events or omissions giving rise to Plaintiffs' claims

occurred in Los Angeles County California and because the facts giving rise to this Complaint

substantially occurred in Los Angeles County.  28 U.S.C. § 1391(a)(2).

**Statement of Relevant Facts**

**I. Defrauding the Trust**
**(By Defendants Jensen, Aivazi, Oronsaye, Alvarado & Barbosa**
**with the Blessing of the LASC, LACPD, Administrative and Judicial Defendants)**

94. Defendant Chevon is well known to the LACPD and to the attorney Defendants.  Together

she conspired with the LACPD, Defendant Jensen, and other defendants in her attempt to take over as

conservator for her father Rex Martin, in a blatant attempt to try to secure assets for herself from the

Plaintiff, to which she is not entitled.

95. As attorneys, Aivazi, Oronsaye and Jensen have conspired with the LACPD and Defendant

Chevon, and have engaged in the illegal RICO enterprise solely in order to secure as much money in

legal fees and as many trust assets as possible from the Plaintiff Trust.

96. Defendant Alvarado, and her attorney Defendant Aivazi, and Defendant Barbosa and her

attorney Oronsaye have engaged in the illegal RICO enterprise by conspiring with the LACPD and with

each other in their efforts to defraud the Trust.

97. Defendants Alvarado and Barbosa, at the direction of their respective attorneys, Defendants

Aivazi and Oronsaye, each filed false Notices of Habitability reports with the Los Angeles Housing

Department, (hereinafter "LAHD"), against Plaintiff on two respective properties which they had leased

from Plaintiff, knowing the same to be false.  Alvarado and Barbosa did so in an effort defraud the Trust

1   by trying to avoid paying rent moneys and in so doing they have defrauded the Trust by many thousands

2   of dollars.

3        98. Defendants Aivazi and Oronsaye, actively maintained a clandestine, covert relationship of

4   communication, collusion via, phone, text, and email with each other both prior and after March 6, 2019

5   and March 20, 2021 as it relates to  multiple State Cases with the Plaintiff and or a prior relation with the

6   Los Angeles County Probation Department.

7        99. Defendant Alvarado, at the direction of her attorney Defendant Aivazi, sent the false Notice

8   of Abatement/Habitability to LAHD falsely accusing Plaintiff of failing to provide her with a habitable

9   property.

10       100. The fraudulent Notice sent by Alvarado was worded identically to the false Notice of

11  Habitability sent to the LAHD by Defendant Barbosa, at the direction of her attorney, Defendant

12  Oronsaye.  Defendant Alvarado, at the direction of her attorney, Defendant Aivazi, also attempted to get

13  the Plaintiff to pay a tax bill on her  own property by disguising it to the tax office.

14       101. In addition to the foregoing, Defendants Alvarado and Barbosa conspired to defraud the

15  Plaintiff Trust by sending Plaintiff identical emails using the words "harassment" and "intimidation"

16  after receiving a Notice of Landlord to Enter and Inspect the properties from the Trust, which both

17  Alvarado and Barbosa rented from the Plaintiff.

18       102. In addition to the foregoing, someone or some individuals, as part of the unlawful enterprise,

19  conspiracy and collusion by the Defendants mentioned herein, sabotaged and damaged the two

20  properties which Alvarado and Barbosa rented from the Plaintiff.

21       103. Defendants Alvarado and Barbosa, together with their respective attorneys, Aivazi and

22  Oronsaye, conspired and deliberate planned, as predicate acts of a pattern of racketeering, to make life a

23  "living hell" and a "nightmare" for the Plaintiff as their landlord.

24       104. Defendants Alvarado and Barbosa, together with their attorneys, are, covertly or overtly, all

25  business associates for purpose of carrying out the predicate acts, as described herein, of the unlawful

26  enterprise. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

27

28

105. All of the foregoing predicates fraudulent acts were part of the unlawful RICO enterprise as set forth herein and were carried out by these Defendants and their attorneys in order to frustrate, damage and harm the Plaintiff.

106. All of the foregoing efforts by Defendants Alvarado and Barbosa, in conjunction and conspiracy with Defendants Aivazi and Oronsaye, and the subsequent failures by Alvarado and Barbosa to pay the Plaintiff rents due under the lease agreements have unlawfully depleted the assets of the Plaintiff Trust and damaged the standing of Plaintiff.

107. Defendants Aivazi and Oronsaye paired up with their two tenants, Defendants Alvarado and Barbosa, respectively, in carrying out fraudulent scheme to defraud the trust, which included aiding and abetting their clients in filing identical fraudulent Notices to Abate the properties which they rented from Plaintiff's trust.

108. Defendant Aivazi also directed her clients, Defendants Alvarado and Banuelos, to usurp and appropriate Plaintiff's rental property trust monies and use them as personal escrow down payment monies for their separate property acquisition of a house in San Fernando, California on or about July 1, 2021.

109. Aivazi also directed her clients, Defendant Alvarado and Banuelos, direct the tax office to send Alvarado's tax on her escrow closing to Plaintiff for Plaintiff to pay.  She thought Plaintiff would not notice and pay it and that that the tax office would not notice since the address on the property belonged to the Trust, while the APN (Assessor's Parcel Number) showed it to be Alvarado's property.

110. To this day, Defendant Aivazi continues to deflect, conceal and hide her current and historical professional, business and private relationship with Defendant Attorney Oronsaye.

111. Defendant Aivazi continues to deflect, conceal and hide her current, historical, business client lead and referral relationship with Defendant Attorney Oronsaye.

112. Defendant Aivazi continues to deflect, conceal and hide her law firm, Metis Law's current and historical business client lead relationship and referral relationship with Defendant Attorney Oronsaye.

113. Defendant Aivazi continues to deflect, conceal and hide her current and historical, professional and business relationship with Defendant Barbosa, the former client of Defendant Oronsaye

and source of business leads involving the Los Angeles County Probation Department and or network of PVP attorneys.

114. Defendants Aivazi and Oronsaye colluded and conspired to illegally profit from the GLM Trust, beginning on or around May of 2020, via the aforementioned landlord tenant exploitation plots wherein the tenants - Defendants Barbosa and Alvarado - would fabricate frivolous and wildly creative false habitability cross complaints against not only Plaintiff but other unsuspecting and law-abiding landlords, in order to profit thereby.

115. Defendant Aivazi was unjustly enriched from a for-profit internal client referral relationship with Defendant Oronsaye, in order for the both of them to exploit landlords during the COVID-19 pandemic, when landlords were made more vulnerable, and to disgorge monies from them.

116. Due to the enormous population size of Los Angeles County, it is not uncommon for attorneys to supplement their income by performing contract services for the Los Angeles County Probate Department, acting as a Probate Volunteer Panel Attorney (hereinafter "PVP Attorney") for hire

117. It is in this area that Defendant Aivazi works in synchronization with Defendant Oronsaye and others to hunt vulnerable cases and estates of the citizens of Los Angeles County and to exploit them by using block billing and false claims to gain control of lower income families during their most vulnerable moments - after the death of a loved one.

118. Aivazi and Oronsaye are both PVP predators, predating upon the vulnerable populations of Los Angeles County, as described herein.  The LACPD is the organization that employs them and knowingly facilitates their predation.

119. The predatory acts of Oronsaye and his former client, Defendant Barbosa have been revealed in the public record in the probate of the estate of Edward Hill, of Los Angeles County Defendants Oronsaye and Barbosa disgorged the estate by hundreds of thousands of dollars.

120. Then the clandestine conspirator Attorney Aivazi joined Oronsaye, by networking and plotting attacks against Plaintiff, and other unsuspecting citizens, and cemented a close wolf-like attack network to systematically prey upon as many unsuspecting estate victims, including Plaintiff, as possible. Their victims will be named in an upcoming Class Action lawsuit to be filed against many of the same Defendants named in this lawsuit.

121. Aivazi regularly communicates with Oronsaye via email, telephone, text, and US mail and have transferred or otherwise wired the shared funds which they have manipulated out of so many victims of Los Angeles County.

122. These Defendants have done all of the foregoing while working covertly on a regular basis to conceal and misrepresent the reality of their actions to the public.

123. Aivazi and Oronsaye constantly plotted in furtherance of the RICO enterprise, as described herein, by cheating estate victims, purporting to be fiduciary representatives, while concurrently working covertly to conceal and misrepresent their true actions - cheating and robbing as many estate victims as possible, with the blessing of and at the direction of the LACPD.

124. For purposes of this lawsuit, these Defendants conspired together to defraud and did defraud the GLM Living Trust, which injured Plaintiff, as described herein.

## II. The Conservatorship Proceeding
### (Collusion to Defraud and Defrauding the Court and the Trust by Defendants Jensen, Chevon and Nord)

125. This case also pertains to a petition for conservatorship filed on March 1, 2018 for Rex Martin, the son of Gesner L. Martin and the brother of Walter Martin.  The petition was filed, *in pro per*, by Rex Martin's putative daughter, Defendant Chevon, who sought to be appointed his conservator, solely to gain as much of the Trust assets for herself as possible.

126. Article 9 of the Trust provides terms relevant to the special needs of the beneficiaries, but does not require the creation of any separate special needs trust.  With regard to an incapacitate beneficiary, Article 9 also provides two options from which the trustee may, in his discretion, select. The first option allows the trustee to make distributions for the beneficiary's benefit according to specific directions. The second allows the trustee to create a separate trust for the retention and administration of assets designated for the beneficiary.

127. On May 17, 2018, Defendant Chevon stipulated to the appointment of Commissioner Scott Nord as Commissioner for the case.

128. Defendant Chevon was represented in the Conservatorship by Defendant Jensen, who had been appointed Probate Volunteer Panel (hereinafter "PVP" attorney) by the LACPD.

129. Defendants Chevon and Jensen, as part of the unlawful RICO enterprise, colluded and conspired to defraud the Court in order to obtain Plaintiff's assets to which they were not entitled, through the misrepresentation and fraud.

130. Defendant Jensen made false and misleading representations to the Court about the provisions of the Gesner L. Martin Living Trust and its provisions, with the intention of deceiving the Court and the Plaintiff.   She provided false information to Commissioner Scott Nord about the Trust, which resulted in an erroneous probate Order.

131. Defendant Jensen breached her fiduciary duty to Defendant Chevon by colluding with her to defraud the Court.

132. Defendant Jensen and Defendant Chevon conspired to defraud the Plaintiff by making false statements and insinuations to the Court and otherwise engaging in other unlawful conduct in furtherance of the illegal RICO enterprise.

133. Defendant Jensen's abusive and dishonest attitude towards the Plaintiff caused him needless emotional distress.

134. By engaging in fraud, as set forth herein, Defendant Jensen and Defendant Chevon converted assets from the Plaintiff Trust for their own use in violation of the law, and did so in furtherance of the illegal RICO enterprise.

135. The matter came on for hearing before Defendant Nord on August 23, 2018.  Two days prior, Defendant Jensen filed a supplemental report in which she deliberately mischaracterized the Trust and its terms.

**136.** Plaintiff attended this hearing without counsel, as an individual concerned about his brother Rex Martin's deteriorating health and medical needs.  Plaintiff provided testimony to the Court in this regard  His testimony focused solely on issues pertaining to his brother's health situation and needs.

137. After he did so, Defendant Nord began *sua sponte* questioning Plaintiff - a person over whom the Court had no personal jurisdiction, about the proposed, non-existent special needs trust of the GLM Trust - a matter over which the Court had no subject matter jurisdiction.

138. This was an impromptu probate hearing by the Commissioner during a conservatorship hearing.  It was without consent or authority. No Summons, notice or petition regarding the GLM Trust had issued regarding any hearing about the GLM Trust.

139.  Plaintiff was unrepresented by counsel. Plaintiff had retained Attorney Mark Swatik, Esq., to represent the interests of the Trust, but Swatik was intentionally left out of the communication loop by Defendant Jensen. Despite all of this, Defendant Nord then began intensely questioning Plaintiff about the probate matter.

140. Defendant Nord asked him, "Is there a reason why you are refusing to provide Ms. Jensen with a copy of the trust and the special needs trust."  To which, Plaintiff responded, "Your Honor, that's a total misrepresentation."

141. Unrepresented by counsel, and grieving the declining health of his brother, seeking the Court's help, the Plaintiff was intimidated by the Commissioner's questioning, Plaintiff continued answering the questions in the probate matter.  He informed the Court that the Trust owned five real properties with a combined total of less than $600,000.  He also informed the Court regarding the terms of the trust that pertain to a <u>potential</u> special needs trust for Rex Martin.

142. At the conclusion of the hearing, Defendant Nord granted Defendant Chevon the authority to move Rex Martin, and set a new hearing for December 13, 2018.

143. Also at the conclusion of this *sua sponte* hearing, Defendant Nord announced that he was going to unilaterally assume jurisdiction over the special needs trust for Rex Martin, froze all assets within the trust and suspended Plaintiff's ability to act as Trustee until further court order.  He awarded Defendant Jensen $6,250 in attorneys fees, and then discharged her[5].  In addition to this, the Court took jurisdiction over the entire GLM Trust, without suspending Plaintiff's authority, but then decided to

> hold that in abeyance pending the outcome of you doing the following things:
> you are to provide a full accounting of the trust to Ms. Jensen.  You are
> to provide a full accounting of the special needs trust to Ms. Jensen.  You are to
> provide her with a copy of both trusts. and when we come back, I will look for

[5] Despite being discharged, on October 18, 2018, Jensen submitted a fee application for an additional $11,838.80 for her "services" rendered in the conservatorship, indicating also that she believed she would need to bill another 30 hours in the future, all of this at $400 per hour. The submission of all of this time was for her fraudulent services on behalf of Rex Martin, using false–block billing. These funds were paid for from the Trust and the Trust is entitled to their return.

her report as to whether or not further action needs to be taken including appointing a professional fiduciary to take over this matter.

144. Despite Defendant Nord hijacking the hearing, and converting it to a probate hearing, at the end of it, Plaintiff asked the Court, "In terms of seeing . . . is there anything we can do as far as getting medical -- to my brother?"

145. Defendant Nord thus presided over *sua sponte* probate proceedings regarding the GLM trust and issued the COVERT order without proper foundation, knowledge or legal cause.  He did so also after Plaintiff had departed from the Courtroom and thus had no notice of same.

146. At the conclusion of this hearing, Defendant Nord purported to suspend Plaintiff from trusteeship of the supposed special needs trust and threatened to suspend him from trusteeship of the Trust, based solely upon Jensen's fraudulent report.

147. In October of 2018, Plaintiff provided a copy of the Trust and a certificate of trust to Defendant Jensen.

148. On December 10, 2018, Plaintiff filed a declaration attesting to having provided Defendant Jensen with a copy of the trust, and also stated that he had appeared at the August 2018 hearing out of concern for his brother and not as Trustee of the Trust.  He declared that he would not appear further in the Conservatorship matter.

149. The minutes from the December 13, 2018 hearing discharge Defendant Jensen, order her to be paid, (an  $11,800 bill from October) and direct her to "prepare the Order freezing the Trust" without further detail.  No representative of the Trust was called to, noticed for or present at this hearing.

150. On March 6, 2019, nearly 7 months after the hearing, Defendant Nord signed and entered an Order entitled "Order After Hearing Removing Trustee and Freezing Assets of Gesner Martin Trust." The Order states that the Plaintiff "has failed to administer the Trust in good faith," and had "failed to administer the special needs trust which is within the Trust for the benefit of Rex Martin."

151. The March 6, 2019 Order was covertly entered by an emotional and misinformed Defendant Nord due to the negligent misrepresentations made by Defendant Jensen. It is currently the subject of a Motion to Vacate.

152. Attached to the Order is a proof of service form dated February 11, 2019.  It is addressed to Plaintiff, but incorrectly states his address.

153. The purported proof of service form also recites service upon Plaintiff's then-counsel, Kenneth Gaugh, however, Mr. Gaugh has testified that he has no knowledge of his office ever receiving service of this Order.  Most importantly, at that time, Mr. Gaugh represented a man named Monte Parrish, who was the proposed alternative conservator to Defendant Chevon.  Both the Plaintiff and the Trust were unrepresented.

154. Plaintiff was never notified of the existence of this Order, and no copy of this Order was ever sent to or otherwise provided to Plaintiff.  He was not even aware of its existence until March of 2023 when it came to light through investigation by undersigned counsel.  Undersigned counsel is currently representing Plaintiff in a lawsuit against Defendant Barbosa, who was a tenant that defrauded the Trust.  *See Walter Martin Trustee for the Gesner L. Martin Living Trust v. Anica Barbosa,* Superior Court of California, L.A. North Central District, Case No. 20CHCV00307.

155. Without knowledge of the order, and without any effort or means to contest his authority or to access Trust assets, Plaintiff has continued, interrupted, to act as trustee of the Trust and continues to do so through the present day.  His tasks have included overseeing the payment of taxes and mortgage-secured related notes to the real property owned by the Trust.

156. Upon information and belief, Defendant Jensen took the position alleged by Defendant Chevon, with whom she conspired and colluded to defraud the GLM Trust.

157. Defendant Jensen bullied, lied, threatened and engaged in misrepresentation, fraud and abuse of the legal process. She colluded and conspired with Defendant Chevon, in furtherance of the illegal RICO enterprise, as described herein.

158. The act of hijacking the conservatorship hearing to hold an impromptu hearing in the probate case was done by Defendants Jensen and Martin solely to harm Plaintiff and commit fraud.  All of this was done in furtherance of the illegal RICO enterprise.

159. Given that no successor trustee was ever appointed, the very existence of this Order, which was procured by fraudulent means, has created a threat to the Trust and its interests.

160. This Order damaged Plaintiff and the Trust, as no subsequent trustee was ever appointed to take care of the everyday responsibilities of the GLM Trust.  This act has irrevocably damaged both Plaintiff and the Trust financially because it has allowed for the depletion of trust assets, and because Plaintiff is the personal guarantor of all loans for the benefit of the Trust.

161. As Trustee, Plaintiff paid the mortgages and insurance on four properties with no defaults or collections.  Plaintiff also paid all property taxes.

162. As Trustee, Plaintiff reduced the grantor's mortgage interest rates by refinancing them from a ten percent (10%) interest rate to 4.75 % and 5.25 %.  Over a five year period, this provided a net savings to the Trust of hundreds of thousands of dollars.

163. Plaintiff did so on the back of his personal credit of 740 FICO.  The net savings to the Trust over a five year period saved a total of $400,000.

164. Plaintiff also guaranteed bank and personal loans in his name for the betterment of the trust while such funds were concurrently being disgorged by the fraudulent acts and omissions of all of the Defendants.

165. Defendant Jensen and Defendant Chevon exploited the Plaintiff for fees, property maintenance, repairs and construction under a rogue, latent, covert and fraudulently induced Court order.

166. Due to these Defendants clandestinely and covertly colluding and conspiring to undermine the Plaintiff, as Trustee for the GLM trust, for personal financial gain, knowing that they had undermined the trust standing without legal disclosure the Trust has been irrevocably damaged.

167. In addition to all of this, on August 23, 2018, the same date as the hearing, Defendant Chevon filed for a Restraining Order against Plaintiff.  This Order was never served on Plaintiff. Defendants  Jensen and Nord acted in haste causing the Plaintiff irreparable damages.

168. In her 93 years of living, working, enduring hardship and sacrifices, it never occurred to her that at the end of her life, her equal right to decide the terms of her own Trust, and to select her Son, Walter Martin as her Trustee to administer and execute her Trust per her unique instructions would be stolen, and infringed upon by an overzealous judicial system and an ill-informed racially biased commissioner.

**169.** It is apparent that the foregoing, as well as all of the predicate acts, set forth in this Amended Verified Complaint, were undertaken in blatant disregard for Gesner L. Martin, her civil and legal rights and her ability to make her own competent estate planning decision.

## III. <u>The Kidnapping and Untimely Death of Rex Martin</u>

170. Perhaps the most egregious thing that Defendants did to Plaintiff as part of the illegal RICO enterprise unquestionably involved the abuse, neglect, kidnapping and untimely death of Plaintiff's brother, Rex Martin.

171. In or around August of 2018, just after Defendant Nord granted Defendant Chevon the right to move her father, Rex Martin was kidnapped by Defendant Chevon and her sister Defendant Zevette Martin Jones.  Rex was removed from his home at 8407 1st Street in Phoenix, Arizona, and because of this he was separated and isolated from his four young children by Defendant Chevon.

172. After he was kidnapped, approximately two years later, Rex Martin reappeared in Palmdale California in a Norwalk home.  He was then moved to a home in Glendale where he died on or about August 21, 2020.

173. Once Plaintiff realized what Defendant Jensen and Defendant Chevon had done -- that they had deliberately misrepresentation and abused the Court, the legal process, the Plaintiff, and Rex Martin, Plaintiff  retained the services of Attorney Mark Swatik, Esq. in order to inform the Court about Jensen's fraudulent behavior.

174. Attorney Swatik was retained to represent and protect the interests of the Plaintiff Walter Martin as a Trustee.  In this role, he directed Plaintiff to not further speak with Jensen, to inform Jensen to cease all direct contact and to communicate with his office instead.

175. Plaintiff Walter Martin repeatedly insisted that Defendant Jensen and the Defendant Nord communicate directly with the Trust Attorneys, both its creator: Steve Mamola and Plaintiff's attorney at that time Mark Swatik, Esq.  Despite this, Jensen persisted in creating a mess.

176. The deliberate, negligent, fraudulent misrepresentation and acts of Defendant Jensen, the Los Angeles County, PVP attorney for Conservatee, Rex Allan Martin, and the acts of Commissioner Scott Nord to commingle and misrepresent the truth about a non-existent Special Needs trust for Rex

Martin with her Trust is not only void on all points of law but it a continued blatant disregard of Mrs. Gesner's legacy and her equality as a woman, as a black human being and a posthumous infringement of her Civil Rights as an American Citizen.

177. Defendant Nord's order on March 6, 2019 was entered clandestinely, covertly and in complete violation of the law.

178. Prior to selecting Defendant Nord, Defendant Jensen conspired with Defendant Chevon for purposes of trying to divert child support payments from Rex Martin.

179. Upon information and belief on or about April of 2018, one Natalie Weingrow, a Los Angeles County child support services employee clandestinely dispatched an investigator from Los Angeles County Child Support to interview the Plaintiff under false pretenses, in order to enjoin the Trust in violation of the Trust's explicit guidelines.

180. Upon information and belief, it appears that Defendant Jensen was already working with Los Angeles County Child Support at least as early as 2018, and the acts and omissions of Jensen, as described herein, in procuring the March 6, 2019 order were more about getting access to Rex Martin's retroactive child support arrearages for Defendant Chevon as opposed to gaining any Trust assets for Defendant Chevon.

181. Upon information and belief, Defendant Chevon worked with Defendant Barbosa to perpetrate the false Notice of abatement in order to disgorge and damage the Trust.

182. All of the foregoing was in blatant disregard of the Trust's estate and the rights of the beneficiaries and in furtherance of the illegal RICO enterprise.

183. Rex Martin's kidnapping, unnecessary suffering and untimely death, which were promulgated by the Administrative and Judicial Defendants, as well as Defendants Jensen, Chevon and Zevette, has had a devastating impact upon Plaintiff as the brother of Rex Martin.

### IV. Further Predicate Acts in Furtherance of the Illegal RICO Enterprise
### (Defendants Alvarado, Barbosa, Aivazi and Oronsaye)

184. Defendants Sayra Alvarado and Anica Barbosa were both tenants of properties owned by the Trust while it was managed by the Plaintiff.  Both Defendants defrauded the Plaintiff by filing false

claims against him as the landlord of the respective properties.  These false claims are included among the predicate acts of the illegal RICO enterprise which have resulted in Plaintiff filing lawsuits against both Defendants in *Walter Martin Trustee for the Gesner L. Martin Living Trust v. Anica Barbosa,* Superior Court of California, L.A. North Central District, Case No. 20CHCV00307 and *Walter Martin Trustee for the Gesner L. Martin Living Trust vs. Sayra Alvarado,* Superior Court of California, L.A. North Central District, Case No. 20CHCV00303.

185. Plaintiff is in possession of a plethora of evidence showing Defendant Chevon's link with Defendants Barbosa and Alvarado in these overt acts to clandestinely defraud the trust.  They communicated with each other and filed identically worded false and fraudulent Notices to Abate with the Los Angeles County Health Department for the properties in which they were tenants, which were managed by the Plaintiff.

186. Defendant Barbosa is also known to have a historical link with the Defendant Los Angeles County Probate Department that Jensen serves.

187. Defendant Barbosa is a serial fraudster and appears to have an unlimited supply of leads, candidates and victims provided to her from the Defendant Los Angeles County Probate Department.

188. Defendant Barbosa is also the covert colleague of Attorney Andrew Rowe.  They are the CEO (Barbosa) and Secretary (Rowe) of a corporation named Stepping Forward, Inc., that executed serial probate disgorgements.

189. Their relationship was exposed through an internal legal fight over the profits of the sale of a home for $150,000 less than market value.  At the time of the sale, Barbosa, who is not a licensed real estate agent, was serving as the conservator for a man named Edward Hill, who is a resident of Lawndale Nursing Home.

190. While serving in that capacity, she sold a property out from under the conservatee, Mr. Hill, to her **own business partner** Andrew Rowe, without disclosing the same to the Court.

191. The internal legal fight arose when Defendant Barbosa sued Attorney Rowe over the takings from Mr. Hill.  Defendant Oronsaye served as Barbosa's attorney for a subsequent investigation into the matter which revealed that Mr. Hill's property was sold for at a loss of $150,000.

192. During this process, Defendant Barbosa was disgorging funds, and Rowe was billing for attorney fees. Barbosa never disclosed to the Court that she had sold the property to her business partner.

193. The LACPD is deeply involved in the illegal RICO enterprise described in this Complaint and is continuously feeding victims and leads to the unscrupulous Defendants, as set forth in this Complaint.

194. LACPD fed Barbosa the Hill lead, as well as the lead of the Gesner L. Martin Living Trust so that she, and the remaining defendants, could enrich themselves at the expense of vulnerable Los Angeles County residents like Plaintiff, Mr. Hill and Rex Martin. Defendants, by way of their unlawful RICO enterprise are predating on society.

195. Someone, or some individuals at the LACPD is/are feeding them leads and providing them with a plethora of victims to defraud, including Plaintiff.

196. All of these actions occurred and are continuing to occur as part of a pattern of racketeering and predicate criminal actions in furtherance of the Defendants' illegal RICO enterprise, in which the LACPD is involved.

197. Defendants Oronsaye, Aivazi, Alvarado, and Barbosa, like Jensen are all connected with the Los Angeles County Probate and investigation Department for purposes of violating the law in furtherance of the illegal RICO enterprise by defrauding Plaintiff and the Trust, as well as innumerable Los Angeles County estates and estate beneficiaries, yet to be discovered.

198. Defendant Oronsaye is also part of the LACPD network. He used to represent Barbosa, through which he held Plaintiff's case against Barbosa, mentioned herein, at bay for two years while disgorging landlord rents with Barbosa. Oronsaye stopped representing Barbosa after becoming the subject of a Bar Complaint regarding his activities in the enterprise described in this Complaint.

199. Each and every Defendant named in this lawsuit has participated in the illegal RICO enterprise in order to defraud and humiliate the Plaintiff, to drain the assets of the trust and to enrich themselves without any legal foundation for doing so. Defendants have harmed Plaintiff in his person and his reputation, have gone against the will of the Trust which he managed, and have defrauded and harmed the Trust.

**PRELIMINARY STATEMENT OF ARGUMENT**

200. Under 18 U.S.C. § 1962 *et seq.*, a RICO enterprise is "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

201. The pattern of racketeering activity is most easily found in the pattern of bribery and extortion charges.  A person who conducts, through a pattern of racketeering, directly or indirectly, the affairs of an enterprise with which he is associated and which affect interstate commerce, faces RICO conviction and possible forfeiture of his ill-gotten gains and interests.

202. The "enterprise" may be the court system. *United States v. Murphy,* 768 F.2d 1518, (7th Cir. 1985), a judgeship, *United States v. Hunt,* 749 F.2d 1078 (4th Cir. 1978), a local prosecutor's office, *United States v. Yonan,* 800 F.2d 164 (7th Cir. 1986), or a law firm *United States v. Yonan,* 800 F.2d 164 (7th Cir. 1986).

203. A group of people, associated in fact, who agree to conduct the affairs of the court/enterprise through bribery of the judge can be prosecuted as a RICO conspiracy.

204. All Defendants have assisted in carrying out the predicate acts of the illegal RICO enterprise and the RICO predicate offenses committed by all Defendants include theft wire fraud, mail fraud and obstruction of justice.

205. All Defendants have conspired with and aided and abetted other defendants in furtherance of fraudulent schemes which proximately caused Plaintiff's injuries and damages, as described herein. This aiding and abetting by the remaining RICO Defendants includes the following elements: (1) knowing about the underlying illegal RICO enterprise; and (2) rendering substantial assistance in the achievement and perpetuation of the illegal RICO enterprise.

206. Defendants have all been unjustly enriched by the illegal RICO Enterprise promulgated by the LACS, LACPD, the Administrative and Judicial Defendants, Defendant Jensen and the others.

207. As a direct and proximate result of all of the foregoing, Plaintiff has been damaged and will be damaged in an amount in excess of $5 million.

# V. <u>CAUSES OF ACTION</u>

### <u>FIRST CLAIM FOR RELIEF</u>
**(Violations of Federal Civil RICO—Conduct of a RICO Enterprise
18 U.S.C. § 1962(a) and 1964(c)by all Defendants)**

208. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

209. Title 18 U.S.C. § 1962(a) provides, in part:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

210. The elements of civil RICO are as follows: (1) conduct; (2) of an enterprise; (3) through a pattern (4) of racketeering activity, (5) resulting in injury.

211. A pattern of racketeering activity is established by specifying the "predicate acts" or violations of the underlying statute, that they were continuous, and that they violated interstate commerce. In this case the predicate acts, including mail fraud and wire fraud, as described herein were and are not only continuous, but they have every indication of continuing into the future, and they have affected interstate commerce.

212. In order for a plaintiff "to have standing to sue under §§ 1962(a) and 1964(c), he must have alleged that funds derived from the alleged racketeering activity . . . were used to injure him." *Wagh v. Metris Direct, Inc.,* 348 F.3d 1109 (9th Cir. 2003). A Plaintiff does not have to "specifically allege a distinct investment injury." *Id.* At all relevant times, each RICO Defendant was a "person" within the

1    meaning of 18 U.S.C. §§ 1961(3) and 1962(c). The RICO Defendants violated 18 U.S.C. § 1962(c) by

2    the acts described in the paragraphs below.

3           213. At all relevant times, the illegal fraud scheme conceived and carried out by Defendant

4    Jensen, by which she defrauded Plaintiff and the GLM Trust, constituted an "Enterprise" within the

5    meaning of 18 U.S.C. §§ 1961(4) and 1962(c). The definition of "enterprise" encompasses both groups

6    with a formal legal structure and those whose members merely associate in fact.

7           214. The RICO Defendants, including Jessner, Slayton, the LACPD, and Defendants Chevon,

8    Barbosa, Oronsaye, Alvarado and Aivazi directly assisted Defendants Jensen by engaging in illegal

9    activities, as set forth herein, including fraud, and obstruction of justice, in furtherance of the illegal

10   RICO enterprise.

11          215. At all relevant times, these RICO Defendants were engaged in this illegal enterprise, within

12   the meaning of RICO, and/or their activities affected, interstate commerce and/or foreign commerce

13   within the meaning of 18 U.S.C. § 1962(c). At all relevant times, the remaining RICO Defendants held a

14   position in or were otherwise affiliated with the illegal enterprise described herein.

15          216. At all relevant times the RICO Defendants did knowingly, willfully, and unlawfully conduct

16   or participate, directly or indirectly, in the conduct, management, or operation of the affairs of the

17   enterprise for which Plaintiff has yet to be compensated.

18          217. At all relevant times the RICO Defendants participated in the scheme or artifice knowingly,

19   willfully, and with the specific intent to advance their scheme to deceive or defraud Plaintiff.

20          218. The RICO Defendants have engaged in multiple predicate acts, including theft, wire fraud,

21   mail fraud and obstruction of justice.   The conduct of the RICO Defendant as described herein

22   constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), as they are both

23   continuous and related.  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

219. The RICO Defendants' violations of federal law as set forth herein, each of which directly and proximately injured Plaintiff, constitutes a continuous course of conduct, which was intended to defraud Plaintiff of money and property through false representations, fraud, deceit, and other improper and unlawful means. Therefore, said violations were a part of racketeering activity as defined by 18 U.S.C. §§ 1961(1) and (5).

220. Plaintiff was injured by reason of the RICO Defendants' violation of 18 U.S.C. § 1962(c). The RICO Defendants' injuries to Plaintiff were a direct, proximate, and reasonably foreseeable result of their violation of 18 U.S.C. § 1962.

221. Plaintiff was injured by the RICO Defendants' (1) conduct; (2) of an enterprise (3) through a pattern (4) of racketeering activity.  Plaintiff is the ultimate victim of the RICO Defendants' unlawful enterprises. Plaintiff has been and will continue to be injured in an amount to be determined at trial.

222. The Administrative and Judicial Defendants continue to promulgate, support, and encourage the illegal RICO enterprise and the fraudulent predicate acts of all of the other Defendants, as described herein.

223. As a direct and proximate result of the foregoing, Plaintiff has been damaged and will be damaged in an amount exceeding $5 million.

224. Pursuant to 18 U.S.C. § 1962(c), Plaintiff is entitled to recover treble damages plus costs and attorneys' fees from RICO Defendants as well as any other relief authorized by statute.

### SECOND CLAIM FOR RELIEF
### (Conspiracy to Defraud by All Defendants)

225. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

226. Under California law, a conspiracy to  defraud  occurs  when  two  or  more  individuals

agree to defraud another through false representation or other wrongful conduct. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal. 4th 503, 511-12 (1994).

227. Defendant LACPD and Defendant Jensen conspired with Defendant Chevon to defraud the court and the trust and to obtain the Plaintiff Trust assets through misrepresentation and fraud. They had an agreement to deceive the Plaintiff and the Court in order to do so, and these defendants took steps toward achieving that goal.

228. Defendant Jensen and Defendant Chevon deliberately misrepresented the nature of the Trust and its documentation to Defendant Nord in order to position themselves to become unlawful beneficiaries of the Trust. They did this by collusion, conspiracy and deliberate deceit.

229. Defendants Aivazi and Oronsaye colluded and conspired to illegally profit through deception and fraud against the GLM Trust on or about May of 2020 via two landlord exploitation plots wherein their two clients, the Plaintiff's trust's tenants Alvarado and Barbosa, would wildly claim and then file frivolous and false habitability cross-complaints against unsuspecting and complaint landlords, including the Plaintiff.

230. Defendants Alvarado and Barbosa, along with Aivazi and Oronsaye conspired to defraud the trust by making false claims regarding the habitability of the Trust properties which Alvarado and Barbosa rented from the Plaintiff Trust, in furtherance of the RICO extortion plots, as set forth herein.

231. Defendants Alvarado and Barbosa along with Aivazi and Oronsaye, all of whom have criminal intent, have worked together by committing mail fraud, wire fraud and obstruction of justice in furtherance of the illegal enterprise in order to defraud the trust.

232. Defendants Aivazi and Oronsaye unjustly enriched themselves in a for profit internal client referral relationship along with the LACPD to exploit landlords during the COVID-19 pandemic, by disgorging money from the pockets of unsuspecting estate beneficiaries.

233. Defendants Aivazi and Oronsaye are engaged in a hunting scheme to exploit vulnerable populations that include probate exposed family members of Los Angeles County.  They use block billing for excessive and expensive hours as PVP attorneys or conservators appointed by the LACPD in order to rob the estates of unsuspecting estate beneficiary victims.

234. Aivazi and Oronsaye constantly plot using wire and e-mail fraud, as prohibited under RICO, in order to conceal and misrepresent the true nature of their conduct -- robbing the citizens, including Plaintiff.

235. Defendants Aivazi, Jensen and Oronsaye, all of whom are attorneys, and all of whom have criminal intent, have been bribed, have bribed each other and/or have received unauthorized information, referrals and bribes from the Defendant LACPD in furtherance of the illegal activities of the enterprise -- to wit, they have received leads on estates in Los Angeles County and have helped themselves to the control, assets and proceeds thereof by getting themselves appointed as Conservators, PVP attorneys and the like, and turning around and cheating, stealing and robbing the estates of unsuspecting Los Angeles citizens, including the Plaintiff, and others as will be set forth herein.

236. All of the foregoing predicate acts were sanctioned and encouraged by the Administrative and Judicial Defendants.

237. The pattern of racketeering activity which all of these Defendants engaged in consists of multiple predicate acts, as listed herein, which amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Northwest Bell Tel. Co.,* 492 U.S. 229, 239 (1989).

238. The enterprise, by way of all Defendants benefited financially from these related crimes.

239. The pattern of racketeering activity which Defendants engaged in, including wire fraud and mail fraud, bribery and others had an effect on interstate commerce.

240. The Administrative and Judicial Defendants continue to promulgate, support, and encourage the illegal RICO enterprise and the fraudulent predicate acts of all of the other Defendants, as described herein.

241. As a direct and proximate result of the foregoing acts and omissions by these Defendants Plaintiff has been damaged and will be damaged in an amount to be determined at trial.

### THIRD CLAIM FOR RELIF
**(Wire and Mail Fraud by all Defendants)**

242. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

243. Under California Law, fraud is the misrepresentation of facts by an individual or institution, which leads to an undeserved benefit to the perpetrators, while the victim suffers loss or harm.  The motives for fraud are usually to get away from criminal responsibility and to gain financially.  Fraud crimes are known as white collar crimes and involve some degree of deceit or breach of trust.

244. Under California Law, the elements of fraud, which give rise to the tort action for deceit, are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity or "scienter"; (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court* 12 Ca. 4th 631, 638 (1996); *Engalla v. Permanente Medical Group, Inc.,* 15 Cal. 4th 951 (1997); *Stansfield v. Starkey*, 200 Cal. App. 4th 59 (2013).

245. Defendant Defendant Jensen made false representations to the Court about the existence of the GLM Trust and its provisions, with the intention of deceiving the Court and the Plaintiff.

246. Defendant Jensen knew that her representations were false and also knew that the Plaintiff relied upon those representations to his detriment.

247. Defendants Alvarado, Aivazi, Barbosa and Oronsaye filed false reports against the Plaintiff Trust in order to avoid paying rents which were   due to the Plaintiff Trust.

248. Defendants LACPD, Jensen, Defendant Chevon, Aivazi, Oronsaye, Barbosa and Alvarado constantly plot using wire and e-mail fraud, as prohibited under RICO, in order to conceal and misrepresent the true nature of their conduct -- robbing the citizens of Los Angeles County, including Plaintiff.

249. The Administrative and Judicial Defendants continue to promulgate, support, and encourage the illegal RICO enterprise and the fraudulent predicate acts of all of the other Defendants, as described herein.

250. As a direct and proximate result of the foregoing fraudulent conduct toward Plaintiff and the Court by all Defendants, Plaintiff has been damaged and will be damaged in an amount exceeding $5 million.

### FOURTH CLAIM FOR RELIEF
**(Breach of Fiduciary Duty by the Administrative and Judicial Defendants
as well as Defendants Jensen, Aivazi and Oronsaye)**

251. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

252. Under California law, a fiduciary duty arises when one person is entrusted with the property or interests of another, and that person is obligated to ac t in the best interests of the other. *City of Hope National Medical Center v. Genentech, Inc.* 43 Cal. 4th 375, 386 (2008).

253. The Administrative and Judicial Defendants, including Defendant LACPD owe a fiduciary duty to all citizens of Los Angeles County, especially those who have, whether by legitimate or illegitimate means, come under its purview, including Plaintiff.

254. The Administrative and Judicial Defendants breached that duty to Plaintiff by promulgating a corrupt system that unlawfully removed Plaintiff, the legitimate Trustee of his Mother's Living Trust,

appointed a corrupt PVP both as conservator to his brother Rex Martin's estate and later as Trustee of the GLM Trust, which breaches have directly and proximately injured the Plaintiff.

255. Defendant Jensen owed and/or owes a fiduciary duty to the Plaintiff.

256. Defendant Jensen breached that duty by conspiring to have Plaintiff removed as Trustee.

257. Despite this breach by Jensen, Plaintiff dutifully fulfilled all obligations designated to him as Trustee and fiduciary, in spite of Jensen and all remaining RICO Defendants' efforts to make it impossible for Plaintiff to do so.

258. Defendant Jensen failed to perform her duties and obligations as a fiduciary, and has instead stolen, converted, spent or otherwise fraudulently converted Trust assets to herself, to which she was not entitled, for her own purposes.

259. As a direct and proximate result of Defendant Jensen's breach of her fiduciary duty, Plaintiff has been damaged and will be damaged in an amount to be proven at trial.

260. Defendants Aivazi and Oronsaye also owe a fiduciary duty to the Plaintiff Trust.  Both Defendants violated this duty when they conspired with their clients, Alvarado and Barbosa, to defraud the Plaintiff Trust.

261. The Administrative and Judicial Defendants continue to promulgate, support, and encourage the illegal RICO enterprise and the fraudulent predicate acts of all of the other Defendants, as described herein.

262. As a direct and proximate result of such breaches of fiduciary duty Plaintiff has been damaged and will be damaged in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (Civil Conspiracy by all Defendants)

263. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

264. Under California law, a civil conspiracy occurs when two or more individuals agree to commit a wrongful act, and one or more of them commits an overt act in furtherance of the conspiracy, resulting in damages to the Plaintiff.

265. Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* 7 Cal 4th 503, 510-511 (1994).

266. The elements of civil conspiracy are: (1) the formation and operation of the conspiracy; (2) a wrongful act done in the furtherance of the conspiracy, and (3) the resulting damage to the plaintiff.

267. All Defendants conspired to defraud Plaintiff and the Trust and they did defraud Plaintiff and the Trust, as set forth herein.

268. The Administrative and Judicial Defendants continue to promulgate, support, and encourage the illegal RICO enterprise and the fraudulent predicate acts of all of the other Defendants, as described herein.

269. As a direct and proximate result of the foregoing breach by all Defendants, Plaintiff has been damaged and will be damaged in excess of $5 million.

### SIXTH CLAIM FOR RELIEF
**(Fraudulent Misrepresentation by the Administrative Defendants, the Judicial Defendants
and Defendants Jensen, Chevon, Aivazi, Alvarado, Oronsaye and Barbosa)**

270. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

271. Under California law, a misrepresentation occurs when a party makes a false representation with the intent to induce another to rely upon it, and the other party justifiably relies upon the representation and suffers harm as a result.  Cal. Civ. Code § 1572; *Glendale Fed. Bank v. United States,*

239 F.3d 1376 (Fed. Cir. 2001); *Ashley v. Jones,* 225 Cal. App. 4th 773 (2014); *Wyatt v. Union Mortgage Co.,* 24 Cal. App. 4th 773 (1994).

272. The elements under California Civil Code § 1710 are: (1) the defendant represented to another that a fact was true; (2) the representation was actually false; (3) the defendant knew it was false; (4) the defendant intended for the other person to rely on the statement; (5) the other person did rely on the statement; (6) the other person was harmed by the reliance; or (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing the harm suffered.

273. Defendant Jensen and Defendant Chevon deliberately provided false information Defendant Nord about the Plaintiff and the GLM trust, which resulted in an erroneous probate order and in substantial monetary damages to the Trust and its assets, and to the Plaintiff.

274. Defendants Aivazi and Alvarado, Oronsaye and Barbosa, provided false information to the Los Angeles Housing Department with regard to their false Claims of Habitability against Plaintiff as their landlord.

275. The Administrative and Judicial Defendants continue to promulgate, support, and encourage the illegal RICO enterprise and the fraudulent predicate acts of all of the other Defendants, as described herein.

276. As a direct and proximate result of the acts and omissions as described herein, Plaintiff has been damaged and will be damaged in an amount in excess of $5 million.

**SEVENTH CLAIM FOR RELIEF**
**(Unjust Enrichment by All Defendants)**

277. Plaintiff fully incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

278. Cases dealing with unjust enrichment in California are uniform in their recognition of three elements of the claim: (1) that the defendant benefited; (2) at the plaintiff's expense; and (3)

that equity and good conscience require restitution. *Peterson v. Cellco Partnership,* 80 Ca. Rptr. 3d 316 (Ct. App. 2008)

279. In reliance upon Defendant Jensen's lies and manipulation, Defendant Nord entered an Order divesting Plaintiff as Trustee.

280. Despite this, Plaintiff faithfully remained performing all of the responsibilities and fiduciary obligations of the Trustee for the benefit of the Trust.

281. The remaining Defendants aided and abetted Jensen in this fraud, in the manner described herein.  Because of this all Defendants have been unjustly enriched at Plaintiff' expense.

282. The Administrative and Judicial Defendants continue to promulgate, support, and encourage the illegal RICO enterprise and the fraudulent predicate acts of all of the other Defendants, as described herein.

**283.** As aiders and abetters to Defendant Jensen's illegal and fraudulent RICO enterprise, all Defendants have been materially enriched by defrauding the Court and the Plaintiff Trust, as set forth herein, for which Plaintiff and the Trust have received nothing of value or reimbursement for their injuries and losses.  Therefore all Defendants have been materially enriched at the Plaintiff' expense.

**284.** It is against equity and good conscience to permit the Defendants to retain what is sought to be recovered.

**285.** As a direct and proximate result of the acts and omissions of all of the Defendants, as described herein, Plaintiff has been damaged and will be damaged in an amount to be proved at trial, but reasonably believed to be in excess of $5 million.

**EIGHTH CAUSE OF ACTION**
**(Conversion by All Defendants)**

286. Plaintiff fully incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

287. California law defines conversion as "the wrongful exercise of dominion over the property of another."  The elements of a conversion claim are: (a) the plaintiff's ownership or right to possession of the property; (b) the defendant's conversion by a wrongful act or disposition of property rights; and (c) damages." *Welco Electronics, Inc. v. Mora,* 223 Cal. App. 4th 202, 208 (2014).

**288.** The tort of conversion is derived from the common law action of trover. The gravamen of the tort is the defendant's hostile act of dominion or control over a specific chattel to which the plaintiff has their right of immediate possession.

**289.** Defendant LACPD exercised an unauthorized dominion of the Plaintiff as Trustee, and over the Trust itself to the alteration or to the exclusion of Plaintiff's rights. It has prevented Plaintiff from performing his fiduciary duty as Trustee.

**290.** Defendant Jensen and Defendant Chevon exercised an unauthorized dominion over the Trust to the alteration of its condition or to the exclusion of Plaintiff's rights.  They prevented Plaintiff from performing his fiduciary duties as Trustee.

**291.** Defendants Alvarado and Barbosa exercised unauthorized dominion over the Trust to the alteration of its condition or to the exclusion of plaintiff's rights.  They retained funds that they owed to the Plaintiff Trust by virtue of their lease Agreements, and thereby converted funds to their own use.

**292.** All Defendants converted the Plaintiff's assets for their own use by engaging in fraudulent and/or unlawful conduct in furtherance of the predicate acts of the illegal RICO enterprise, as described herein. *See Farmers Exchange v. Zerin,* 53 Cal. App. 3d 68 (1975).

**293.** The Administrative and Judicial Defendants continue to promulgate, support, and encourage the illegal RICO enterprise and the fraudulent predicate acts of all of the other Defendants, as described herein.

**294.**  As a direct and proximate result of the foregoing conversion of the Plaintiff' property by all Defendants Jensen, Plaintiff has been damaged and will be damaged in an amount exceeding $5 million.

### NINTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress by All Defendants)

295. Plaintiff fully incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

296. This claim is for damages pursuant to the common law of the State of California as mandated by the California Supreme Court in the decision of *Rojo v. Kliger,* 52 Cal. 3d 65 (1990).

297. Defendants' actions against the Plaintiff were extreme and outrageous with wanton and reckless disregard of the probability of causing severe emotional distress in Plaintiff.

298. To summarize their actions:  The Administrative Defendants, including the LACPD are in charge of the entire RICO racket described herein, by which they appoint corrupt PVP attorneys such as Defendants Jensen, Aivazi and Oronsaye to ruin the lives of conservatees like Rex Martin and to bilk the estates of citizens like the Plaintiff.

299. The Judicial Defendants rubber stamp the actions of the court-appointed PVP attorneys, collude and conspire with them, and also receive remuneration from the estates of unsuspecting citizens of Los Angeles County, including Plaintiff.

300. Defendants Jensen, Chevon, Nord and Jones are complicit in the scam under the illegal RICO enterprise that removed Plaintiff's brother Rex Martin from his home with his family and placed him under the care of Chevon, after which Defendants Chevon and Jones orchestrated his kidnapping which led to untold suffering for him and Plaintiff, and which led to Rex Martin's untimely death.

301. The kidnapping, suffering and untimely death of Rex Martin had a devastating impact upon the Plaintiff.

302. In addition to this, Defendants Jensen   and Chevon conspired to defraud and did defraud

the Trust by making false statements about Plaintiff and the Trust to the Court, which, by an unlawful Order, deprived Plaintiff of his duty, responsibility and authority to carry out the responsibilities of a Trustee, which duty was granted to him by his late Mother, and by the express terms of the Trust she created.

303. Defendants Jensen and Defendant Chevon lied about and humiliated Plaintiff and caused the Court to do likewise both during the hearing and in its March 2019 Order, as set forth herein.

304. Defendants Alvarado, Barbosa, and their accomplices Defendants Aivazi and Oronsaye humiliated the Plaintiff by filing false Notices to Abate on the properties they leased from Plaintiff when they themselves had breached their lease agreements by failing to maintain the properties in habitable order, and subsequently tried to blame their failures upon Plaintiff.

305. Their emails also falsely accused him of "harassment" and the like, knowing the same to be false.

306. These false Abatement cases, which Plaintiff was forced to defend, dragged on through the Courts, costing Plaintiff unnecessary time, energy, expense and emotional drain and harm.

307. As a proximate result of the extreme and outrageous conduct engaged in by Defendants, Plaintiff suffered humiliation, mental anguish and extreme emotional and physical distress.

308. In a civil case not arising from the breach of a contractual obligation, the jury may award punitive damages 'where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice.' (Civ. Code, § 3294, subd. (a).) 'Malice' is defined as intentional injury or 'despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.' (*Id.*, § 3294, subd. (c)(1).) 'Oppression' is defined as 'despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.' (*Id.*, § 3294, subd. (c)(2).)" (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 712.)

45

309. The term "despicable" is not defined in the statute, but the Supreme Court has observed that it is applicable to "circumstances that are 'base,' 'vile,' or 'contemptible.'" (*College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 725.)

**310.** Plaintiff has clearly and convincingly shown that he is entitled to punitive damages based on the outrageous, intentional, willful and wanton acts of all of the Defendants, as described in this Complaint.

311. All Defendants named in this Cause of Action are guilty of oppression, fraud and malice, as described herein.

312. The Administrative and Judicial Defendants continue to promulgate, support, and encourage the illegal RICO enterprise and the fraudulent predicate acts of all of the other Defendants, as described herein.

### TENTH CAUSE OF ACTION
#### (Title 42 U.SC. § 1983 - Deprivation of Rights
#### by Defendants Jessner, Slayton, Nord, Morgan, Penny and the LACPD)

313. Plaintiff fully incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

314. "How can anyone tell how a judge would have ruled if he had not been bribed?" *United States v. Holzer,* 816 F.2d 304, 308 (7th Cir.), vacated and remanded for reconsideration in light of *McNally v. United States*, 108 S.Ct. 53 (1987).

315. The most obvious form of judicial corruption involves the direct promise by a judge, or someone acting on his behalf, that the judge will give a specific disposition or consideration to a case (quid) in exchange for (pro) money or other things of value (quo).  As of 1988, pursuant to Operation Greylord and Operation Incubator, both judicial corruption investigations, sixty-five (65) persons had been convicted under RICO, including ten former or sitting judges. Judicial Corruption by Valukas,

Anton R., United States Attorney Northern District of Illinois, and Raphaelson, Ira, Chief, Special Prosecutions Division Northern District of Illinois, p. 3.

316. Plaintiff believes and alleges that Defendants Jessner and Slayton are willful participants in the illegal RICO Enterprise which has injured the Plaintiff.

317. Plaintiff believes and alleges that the Defendant Judges are willful participants in the illegal RICO Enterprise which has injured the Plaintiff.

318. Plaintiff is not suing the Defendant Judges for any judicial acts, such as their general review of or for their decisions in the case.  Plaintiff is suing the Defendant Judges for *ultra vires* acts that go beyond their legal jurisdiction in depriving Plaintiff of his constitutional rights and privileges as well as his rights as a litigant in his courtroom,

319. Plaintiff believes and alleges that Defendant Nord was a willful participant engaged in a conspiracy with Defendants Jensen, LACPD and Defendant Chevon, in order to subvert the will of law and to injure and deprive Plaintiff of his rights.

320. Plaintiff believes and alleges that the official act of conducting a *sua sponte* hearing in the probate case and entering an Order depriving Plaintiff and the Trust of due process, was the product of a corrupt conspiracy involving bribery of Defendant Nord.

321. Plaintiff believes and alleges that all three Defendant Judges, as well as all of the Administrative Defendants are part of the illegal RICO enterprise which has injured him in his property and his person.

322. Any immunity from suit which any of the Defendant Judges or Administrative Defendants may argue does not change the character of their actions nor that of their co-conspirators.  In fact, their immunity is dependent on the challenged conduct being an official judicial act within his statutory jurisdiction, broadly construed. *Stump v. Sparkman,* 435 U.S. 349, 356 (1978).

323. Private persons, such as Jensen and Defendant Chevon, jointly engaged with state officials, such as Defendant Nord, and others, are acting "under color" of law for purposes of § 1983 actions. *Adickes v. S.H. Kress Co.,* 398 U.S. 144, 152 (1970).

324. At all relevant times herein, the Defendant Judges were acting under color of state law. 42 U.S.C. § 1983. Their decisions were the product of system-wide corruption of the LACPD, and were corruptly issued as a result of their willing participation in the illegal RICO Enterprise in which Defendants Jessner, Slayton, the LACPD, Jensen, Chevon and the remaining Defendants were and are willfully engaged.

325. Plaintiff Walter Martin, as Trustee, is being and has been deprived of his rights, privileges and immunities, including his rights to Due Process under the Fifth and Fourteenth Amendment to the United States Constitution by the acts and omissions of the three Defendant Judges, as described herein.

326. Defendant Nord failed and refused to acknowledge and rectify fraud committed by Defendant Jensen upon the Court as set forth herein. Defendants Morgan and Penny have only perpetuated the fraud committed by the Administrative Defendants, and Defendants Nord, Jensen and Chevon.

327. The doctrine of judicial immunity does not excuse the Defendant Judges from responding as a witness when his co-conspirators are sued, even though a charge of conspiracy and judicial corruption will be aired and decided. *Gravel v. United States,* 408 U.S. 606 (1972).

328. The United States Supreme Court stated: "[W]e agree . . . that the potential harm to the public from denying immunity to private co-conspirators is outweighed by the benefit of providing a remedy against those private persons who participate in subverting the judicial process and in so doing inflict injury upon other persons. *Dennis v. Sparks* 449 U.S. 24, 32 (1980).

48

329. Under *Sparks,* "a private defendant can act under color of state law if it is a willful participant in joint action with the State or its agents."  Thus each and all of the other private defendants who conspired to defraud and did defraud Defendant Nord are liable for the acts and omissions of Defendant Nord.

330. In addition to this, the LACPD, including Defendants Jessner and Slayton acted and are continuing to act under color of state law in their willful engagement in the illegal RICO enterprise along with Jensen, Defendant Chevon, Aivazi and Oronsaye to defraud the Plaintiff Trust.

331. All of these Defendants' running of the illegal RICO enterprise, and their unconstitutional policy, practice and customs directly and proximately deprived Plaintiff of his rights under the 5th and 14th Amendments to the United States Constitution.

332. The Administrative and Judicial Defendants continue to promulgate, support, and encourage the illegal RICO enterprise and the fraudulent predicate acts of all of the other Defendants, as described herein.

333. As a direct and proximate result of all of the foregoing, Plaintiff has been damaged and will be damaged in an amount in excess of $5 million.

## ELEVENTH CAUSE OF ACTION
### (Punitive Damages under Cal. Civil Code § 3294(c) against all Defendants)

334. Plaintiff fully incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

335. The acts and omissions by all of the Defendants as set forth herein were willful and wanton and they harmed Plaintiff.

336. The acts and omissions by all Defendants were intentional and extremely reckless, malicious, oppressive and fraudulent.

337. California Civil Code 3294(c) defines  "malice" "oppression" and "fraud."

338. Malice, under § 3294(c), means: "Conduct that is intended by the defendant to cause injury to the plaintiff, or despicable conduct carried on by the defendant with a willful and conscious disregard of the rights or safety of others."

339. Plaintiff has established that all Defendants acted maliciously in injuring him, as described herein.

340. Oppression, under § 3294(c), means: "Despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights."

341. Plaintiff has established that all Defendants subjected them to cruel and unjust hardship in conscious disregard of their rights, as described herein.

342. Fraud, under § 3294(c), means: "An intentional misrepresentation, deceit or concealment of a material fact known to the defendant . . . made with the intention on the part of the defendant thereby depriving a person of property or legal rights or otherwise causing injury.

343. Plaintiff has established that all Defendants made material misrepresentations to, deceived and concealed material facts known to them and to the Court, or other agencies, with the intention of depriving Plaintiff of his property or legal rights, or otherwise causing Plaintiff injury.

344. Plaintiff has established, and will establish at the trial of this matter, all of the foregoing by clear and convincing evidence.

345. The Administrative and Judicial Defendants continue to promulgate, support, and encourage the illegal RICO enterprise and the fraudulent predicate acts of all of the other Defendants, as described herein.

346. As a result of all Defendants' acts and omissions, as described herein, Plaintiff is entitled to an award of punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that the Court Order the following relief:

1.     As to the First Cause of Action, award Plaintiff money damages pursuant to 18 U.S.C. § 1962(c), as well as treble damages plus costs, and any other relief provided by the statute for the violations of the RICO statutes by all Defendants;

2.     Enter judgment against each of the RICO Defendants, jointly and severally, in an amount equal to three times the amount of damages to the Plaintiff has sustained because of the RICO Defendant's actions, plus a civil penalty for each violation under 18 U.S.C. § 1964 and § 1962;

3.     As to the First Cause of Action enter an award against all Defendants of Restitution to Plaintiff of all money, property and benefits Plaintiff were unlawfully defrauded and deprived of by the RICO Defendant and Order the RICO Defendant to cease and desist from violating 18 U.S.C. § 1964;

4.     As to the Second Cause of Action, award Plaintiff money damages caused by the conspiracy to commit fraud.

5.     As to the Third Cause of Action, award Plaintiff money damages caused by the wire and mail fraud predicate acts committed by all Defendants.

6.     As to the Fourth Cause of Action, award Plaintiff money damages for the breach of fiduciary duty by the Administrative Defendants, the Judicial Defendants and Defendants Jensen, Aivazi and Oronsaye;

7.     As to the Fifth Cause of Action, award Plaintiff money damages for the Civil Conspiracy committed by all Defendants;

8.     As to the Sixth Cause of Action, award Plaintiff money damages for the Fraudulent misrepresentation by the named Defendants to this Cause of Action.

**9.**      As to the Seventh Cause of Action for the unjust enrichment, enter and Order for damages for Plaintiff to be paid jointly and severally by all Defendants;

10.      As to the Eighth Cause of Action, award Plaintiff money damages for conversion of assets by the Administrative Defendants, the Judicial Defendants and Defendants Jensen, Chevon, Aivazi, Alvarado and Barbosa.

11.      As to the Ninth Cause of Action, award Plaintiff money damages for the intentional infliction of emotional distress proximately caused to them by all Defendants;

12.      As to the Tenth Cause of Action, award Plaintiff money damages for violations under Title 42 U.SC. § 1983 to be paid jointly and severally by all named Defendants, as well as for declaratory relief as this Court deems appropriate and just; and

13.      As to the Eleventh Cause of Action, award Plaintiff punitive damages and costs of this action to be paid by all Defendants; and

14.      Grant to Plaintiff such other and further relief as this Court may deem just and proper.

Dated: July 24th, 2023
          Torrance, California

                                    _____*s/Walter Emmanuel Martin*____
                                    Walter Emmanuel Martin,
                                    Plaintiff in Pro Per

1
2
                            **<u>VERIFICATION OF PLAINTIFF</u>**
3
4       I, Walter Emmanuel Martin, being duly sworn, hereby depose and say:
5
6       I am the Plaintiff in the above-entitled action. I have read the foregoing Amended Verified
7       Complaint and know the contents thereof. The same are true to my knowledge, except as to
8       matters therein stated to be alleged on information and belief and as to that matter, I believe
9       them to be true.
10
11      To the best of my knowledge, information, and belief, formed after an inquiry reasonable
12      under the circumstances, the presentation of these papers or the contentions therein are true.
13
14
15
16                                          Walter Emmanuel Martin, in Pro Per
17
18
19      Sworn and subscribed before me this the 27th day of July, 2023
20
21
22      Notary Public:
23      My commission expires: Oct 27, 2026
24
25
26
27
28

DAVID ACEVEDO-RAMIREZ
Notary Public - California
Riverside County
Commission # 2423628
My Comm. Expires Oct 27, 2026

EXHIBIT 48

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Probate Division
## Michael D. Antonovich Antelope Valley Dept. - A14

**18AVPB00069**
**In re: Martin, Rex - Conservatorship**

**July 3, 2023**
**1:30 PM**

Honorable Stephen Morgan, Judge

Danette Dill, Judicial Assistant                    Shawnda Dorn (#11387), Court Reporter

---

**NATURE OF PROCEEDINGS:** Ex Parte - Application to Vacate Court Order filed on May 18, 2023 by Kenneth Ray Gaugh.

The following parties are present for the aforementioned proceeding:

      Chevon  Robinson, Petitioner
      Zevette Jones
      Walter Martin, Interested Party
      Emanuel Thomas, Attorney for Petitioner
      Kenneth Ray Gaugh, Attorney for Petitioner

The matter is called for hearing.

The Court has read and considered the moving papers.

The Court inquires of the parties and counsel.

The Court hears oral argument.

The Court finds that insufficient evidence has been provided to grant the matter on calendar this date based upon the reading of the moving papers and consideration of all presented evidence.

The Ex Parte - Applicatio n to Vacate Court Order filed on 5/18/2023 by Petitioner Kenneth Ray Gaugh is denied with prejudice.

The previous Court order of August 23, 2018 remains in full force and effect.

Future hearing date of August 31, 2023, will remain on calendar as previously scheduled.

Attorney Thomas may use the August 31st hearing date to file his Petition to appoint a temporary trustee.

The parties stipulate to attend a Mandatory Settlement Conference.

The Court appoints Tamila Jensen as the Court Appointed Counsel.

The Court sets a Mandatory Settlement Conference regarding (to be heard in A6) on July 31, 2023 at 9:00 AM.

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Probate Division
## Michael D. Antonovich Antelope Valley Dept. - A14

**18AVPB00069**
**In re: Martin, Rex - Conservatorship**

**July 3, 2023**
**1:30 PM**

The Court has ordered a Settlement Conference in this case to be held on July 31, 2023 at 9:00 am before Commissioner Alan Z. Yudkowsky in Department A06 of the Michael D. Antonovich Courthouse.

Counsel are provided with copies of Commissioner Yudkowsky's rules for Mandatory Settlement Conferences in open court.

The Court advises the parties that all appearances must be via LA CourtConnect on the July 31st hearing date.

EXHIBIT B

<table>
<tr><td></td><td>

**FILED**
Superior Court of California
County of Los Angeles

**JUL 03 2023**

David W. Slayton, Executive Officer/Clerk of Court

By: D. Dill, Deputy
</td></tr>
</table>

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| In the Matter of:<br><br>**Martin, Rex - Conservatorship** | CASE NUMBER<br><br>**18AVPB00069**<br><br>**ORDER APPOINTING COUNSEL** |
|---|---|

The Court on its own motion appoints **Tamila Chris Jensen** to act as counsel for **Rex Martin**.

Pursuant to Civil Code Section 56.10(b)(1) and 45 C.F.R. § 164.512(e)(1)(i) [the Health Insurance Portability and Accountability Act of 1996 (HIPAA) regulation], the Court orders that counsel appointed herein shall have access to and authority to review and copy the medical records of **Rex Martin.**

Attorney's fees, if any, will be determined by the Court. Pursuant to Los Angeles County Superior Court Rules, Rule 4.127(b), court-appointed counsel will be awarded compensation at reduced hourly rates. By accepting this appointment, the attorney agrees that, on cases in which the Court has determined that the adult client or the client's estate, or a minor client's parent(s) or the minor's estate, has no ability to pay appointed counsel and the County of Los Angeles is ordered to pay for such services, appointed attorneys shall be compensated through the Professional Appointee Court Expense program (the "PACE" program). Compensation shall not exceed $150 per hour.

The hourly rate for cases in which the Court determines that the adult client or the client's estate, or minor client's parent(s) or the minor's estate, has sufficient assets to pay, shall not exceed $250 per hour except in cases involving unusual problems requiring extraordinary expertise.

7/3/2023

Date

Judge Brenda Penny, Judicial Officer

**ORDER APPOINTING COUNSEL**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Probate Division
### Michael D. Antonovich Antelope Valley Dept. - A14

**18AVPB00069**
**In re: Martin, Rex - Conservatorship**

**July 10, 3032**
**9:20 AM**

Honorable Stephen Morgan, Judge

Danette Dill, Judicial Assistant

---

**NATURE OF PROCEEDINGS:**  Non-Appearance Case Review

The following parties are present for the aforementioned proceeding:

No appearances.

Out of the presence of the court reporter, the Court makes the following findings and orders:

The Court finds that there is a conflict with previously Court Appointed Counsel Tamila Jensen.

Attorney Jensen is discharged.

The Court appoints Candace Jones as the Court Appointed Counsel.

Future hearing dates of July 31, 2023, and August 31, 2023 will remain on calendar as previously scheduled.

The Court orders the Clerk to give notice.

## CLERK'S CERTIFICATE OF MAILING/
## NOTICE OF ENTRY OF ORDER

I, DAVID W. SLAYTON, Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Entry of the above minute order of July 10, 2023 upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States Mail at the courthouse in Lancaster, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.

Dated: July 10, 2023

By:  /s/ Danette Dill

Danette Dill, Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Probate Division
## Michael D. Antonovich Antelope Valley Dept. - A14

**18AVPB00069**

**In re: Martin, Rex - Conservatorship**

**July 10, 3032**
**9:20 AM**

LAW OFFICE OF TAMILA C. JENSEN
15455 SAN FERNANDO MISSION BLVD.
SUITE 202
MISSION HILLS, CA 91345

Kenneth Gaugh, Esq.
1963 W. Carson Street
Torrance, CA  90501

Chevon Martin
1615 Amargosa Drive
Palmdale, CA  93551

CANDACE JONES
43535 17TH ST W
STE 403
LANCASTER, CA 93534-5984

EXHIBIT D

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

## Probate Division

### Michael D. Antonovich Antelope Valley Dept. - A14

**18AVPB00069**
**In re: Martin, Rex - Conservatorship**

July 14, 3032
9:20 AM

Honorable Stephen Morgan, Judge

Danette Dill, Judicial Assistant

---

**NATURE OF PROCEEDINGS:** Non-Appearance Case Review

The following parties are present for the aforementioned proceeding:

        No appearances.

Out of the presence of the court reporter, the Court makes the following findings and orders:

The Court vacates it's order of July 10, 2023 appointing Candace Jones as Appointed Counsel.

Attorney Jones is discharged.

The Court appoints Pacione, Mario Andre, bar number 236363, as the Court Appointed Counsel.

The 07/31/2023 Mandatory Settlement Conference is advanced to this date and is continued to 08/04/23 at 01:30 p.m. in department A06.

Future hearing date of August 31, 2023 will remain on calendar as previously set.

The Court orders the Clerk to give notice.

## CLERK'S CERTIFICATE OF MAILING/
## NOTICE OF ENTRY OF ORDER

I, DAVID W. SLAYTON, Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Entry of the above minute order of July 14, 2023 upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States Mail at the courthouse in Lancaster, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.

Dated: July 14, 2023 _____          By:   /s/ Danette Dill
                                                          Danette Dill, Deputy Clerk

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

## Probate Division

## Michael D. Antonovich Antelope Valley Dept. - A14

**18AVPB00069**

**In re: Martin, Rex - Conservatorship**

**July 14, 3032**
**9:20 AM**

Kenneth Gaugh, Esq.
1963 W. Carson Street
Torrance, CA  90501


Chevon Martin
1615 Amargosa Drive
Palmdale, CA  93551


CANDACE JONES
43535 17TH ST W
STE 403
LANCASTER, CA 93534-5984


Mario Andre Pacione
Pacione Law Firm
38700 5th St. W
Bldg B Ste F
Palmdale, CA 93551-3996