# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| WALTER EMANNUEL MARTIN,<br><br>Plaintiff,<br><br>v.<br><br>TAMILA JENSEN, Esq. et al.,<br><br>Defendants. | No. CV 23-04642-VBF (DFM)<br><br>ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |

Plaintiff Walter Emmanuel Martin filed a pro se civil rights action under 42 U.S.C. § 1983, alleging that Defendants violated state and federal law in connection with a state probate matter. See Dkt. 20, First Amended Complaint ("FAC").

Before the Court are Defendants motions to dismiss and strike the FAC. See Dkts. 24 ("Jensen MTS"), 25 ("Jensen MTD"), 26 ("Aivazi MTD"), 27 ("Aivazi MTS"), 45 ("Judicial MTD"), 48 ("Barbosa MTD"). Plaintiff filed oppositions. See Dkts. 42 ("Jensen Opp'n"), 44 ("Aivazi Opp'n"), 55 ("Judicial Opp'n"), 56 ("Barbosa Opp'n"). Two Defendants filed replies. See Dkts. 47 ("Jensen Reply"), 57 ("Judicial Reply").

For the reasons set forth below, the FAC is dismissed with leave to amend.

## I. BACKGROUND

This lawsuit arises out of a conservatorship action filed on behalf of Plaintiff's brother, Rex Martin ("Rex"), in the Superior Court of California, County of Los Angeles, Case No. 18AVPB00069 ("the Probate Action").[1]

The Probate Action concerns the Gesner L. Martin Living Trust ("the Trust"). See FAC ¶ 18. Gesner Martin, who was Plaintiff's mother, had three children, including Rex. See id. ¶ 19. Rex died on August 21, 2020. See id. The Trust provides that Plaintiff would serve as successor trustee following Gesner Martin, and that neither Rex nor any of his children, including Chevon Martin ("Chevon"), should ever be appointed trustee. See id. Gesner Martin presided over the Trust until March 23, 2013, after which Plaintiff was appointed as successor trustee. See id. ¶ 18.

On March 6, 2019, the Honorable Scott Nord, Commissioner of the Superior Court ("Commissioner Nord"), entered an order in the Probate Action removing Plaintiff as trustee but appointed no successor trustee. See id. ¶ 22. Plaintiff had no knowledge of that order until April 2023. See id. ¶ 23. In May 2023, Plaintiff filed an ex parte motion to vacate Commissioner Nord's order. See id. On July 3, the Honorable Stephen Morgan, Judge of the Superior Court ("Judge Morgan"), denied Plaintiff's motion to vacate with prejudice and appointed attorney Tamila Jensen ("Jensen") to act as counsel

---

[1] The docket in the Probate Action is accessible online by case number from the Superior Court's webpage. See https://www.lacourt.org/casesummary/ui/casesummary.aspx?casetype=probate (search for "18AVPB00069"). There is also a related case on a competing petition to appoint a conservator for Rex filed by petitioner Parish Monte that was also filed in the Superior Court. See https://www.lacourt.org/casesummary/ui/casesummary.aspx?casetype=probate (search for "18STPB05243").

for Rex. See id. ¶ 24 & Ex. A.

Also on July 3, 2023, the Honorable Brenda Penny, Judge of the Superior Court ("Judge Penny"), entered an order, file stamped by David W. Slayton, Court Executive Officer ("Slayton"), ordering that Jensen be authorized to see Rex's medical records and be compensated by the Trust at a rate no less than $250 per hour. See id. ¶ 25 & Ex. B.[2] On July 10, Judge Morgan discharged Jensen due to a conflict and appointed attorney Candance Jones on behalf of Rex. See id. ¶ 27 & Ex. C.  On July 14, Judge Morgan vacated the order appointing Jones and instead appointed attorney Mario Andre Pacione. See id. ¶ 28 & Ex. D. On July 21, Chevon filed a petition to remove Plaintiff as trustee. See id. ¶ 20.

Plaintiff alleges that Defendants engaged in various nefarious acts, including, but not limited to, defrauding the Trust, defrauding the court in the Probate Action, filing false claims, and kidnapping and causing the untimely death of Rex. See id. ¶¶ 94-199. Based on that conduct, Plaintiff brings claims for violation of RICO, 18 U.S.C. §§ 1962(a) and 1964(c); conspiracy to defraud; wire and mail fraud; breach of fiduciary duty; civil conspiracy; fraudulent misrepresentation; unjust enrichment, conversion, intentional infliction of emotional distress, deprivation of rights under 42 U.S.C. § 1983, and punitive damages under Cal. Civ. Code § 3294(c). See FAC ¶¶ 208-346.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted

---

[2] Plaintiff also names as Defendants the Honorable Samantha P. Jessner, Presiding Judge of the Superior Court, and the Los Angeles County Probate Department. See FAC ¶¶ 3, 4. The Court refers to those Defendants, along with Commissioner Nord, Slayton, and Judges Morgan and Penny, as the "Judicial Defendants."

in a complaint. See Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "'short and plain statement' of the grounds for jurisdiction and the claim, as well as a demand for relief sought." Knapp v. Hogan, 738 F.3d 1106, 1109 (9th Cir. 2013) (quoting Fed. R. Civ. P. 8(a)). This standard is a liberal one that does not require the plaintiff to set forth all the factual details of his claim; rather, it requires only that the plaintiff give the defendant fair notice of the claim and the grounds for making that claim. Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit, 507 U.S. 163, 168 (1993) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)).

While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Instead, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In resolving a Rule 12(b)(6) motion, courts must interpret the facts alleged in the complaint in the light most favorable to the plaintiff, while also accepting all well-pleaded factual allegations as true. See Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000). Courts need not, however, accept legal conclusions as true. See Iqbal, 556 U.S. at 678. Indeed, the Supreme Court has explicitly stated that complaints consisting only of "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do." Twombly, 550 U.S., at 555; see also Iqbal, 556 U.S. at 678. Nor will a complaint suffice if it presents nothing more than "naked assertions"

without "further factual enhancement." Twombly, 550 U.S. at 557.

A pro se plaintiff's pleadings are liberally construed to afford the plaintiff "the benefit of any doubt." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation omitted). This is especially true in civil rights cases. See id. Courts do not, however, serve as advocates on behalf of pro se litigants in attempting to decipher a complaint or read in claims that do not exist. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987). Furthermore, although pro se litigants are held to less stringent standards than a lawyer, they are not excused from following basic pleading requirements. See Woods v. Carey, 525 F.3d 886, 889-90 (9th Cir. 2008).

## III. DISCUSSION

Defendants filed several motions, including two motions to strike and four motions to dismiss. The Court has organized this Order in a way that promotes efficiency. Ultimately, the Court finds that Plaintiff's FAC is deficient in various respects and dismisses it with leave to amend.

### A. Standing

All Defendants argue that Plaintiff lacks standing. See Jensen MTD at 14-15; Aivazi MTD at 9-10; Judicial MTD at 10 n.1; Barbosa MTD at 8. Plaintiff contends that he has standing as a former trustee, "de facto trustee," or as a beneficiary. See Jensen Opp'n at 5-8.

"To demonstrate Article III standing, a plaintiff must satisfy three 'irreducible constitutional minimum' requirements: (1) he or she suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." Washington Envtl. Council v. Bellon, 732 F.3d 1131, 1139-40 (9th Cir. 2013) (quoting Lujan v. Def. of Wildlife, 504 U.S. 555, 561 (1992)).

A standing inquiry accordingly focuses on whether the plaintiff is the proper party to bring the lawsuit. See Raines v. Byrd, 521 U.S. 811, 818 (1997). Under Federal Rule of Civil Procedure 17(a), "[a]n action must be prosecuted in the name of the real party in interest," such as the trustee of an express trust. "In general, it is the person holding title to the claim or property involved" who is the real party in interest. U-Haul Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034, 1038 (9th Cir. 1986).

Plaintiff's role, his allegations, and the remedies sought are keys to answering the threshold question of standing. Plaintiff alleges that he became successor trustee in 2012, after his mother resigned. See FAC ¶ 18. Plaintiff was removed as trustee per Commissioner Nord's August 23, 2019 order in the Probate Action. See id. ¶ 22. Plaintiff moved to vacate that order in April 2023, but was unsuccessful. See id. ¶ 23. Plaintiff has thus not been a trustee since August 2019, more than four years ago. Nevertheless, Plaintiff's FAC alleges that Defendants have acted and interfered in ways that have damaged the Trust, not solely Plaintiff as an individual. See, e.g., id. ¶¶ 30 ("Defendants . . . have conspired to defraud, defrauded, and continue defrauding the Trust of funds."), 33 ("The LACPD is intimately involved in the RICO enterprise that has scammed and defrauded the GLM Trust."), 94-124 (alleging acts Defendants took to defraud the Trust). And although Plaintiff seeks monetary damages, they are predominantly for actions Defendants took that are connected to the administration and maintenance of the Trust.

This is a problem. "As a general rule, the trustee is the real party in interest with standing to sue and defend on the trust's behalf," although a trust beneficiary "can bring a proceeding against a trustee for breach of trust." Estate of Bowles, 169 Cal. App. 4th 684, 691 (2008); see also Moeller v. Superior Court (1997) 16 Cal. 4th 1124, 1132 n.3 (1997) (explaining that under California law, the "trust is not an entity separate from the trustees," and "the

6

trustee, rather than the trust, is the real party in interest in litigation involving trust property."). Additionally, a non-attorney has no authority to appear as an attorney on behalf of a trust. See C.E. Pope Equity Trust v. US, 818 F.2d 696, 967-98 (9th Cir. 1987) ("Although a non-attorney may appear in propria persona in his own behalf, that privilege is personal to him.").

In short, because Plaintiff is no longer a trustee and is proceeding pro se, he is not permitted to sue on behalf of the Trust. He may, however, bring claims on behalf of himself. Ultimately, it is not clear from the FAC what Plaintiff seeks to accomplish as a former trustee, or how. If Plaintiff decides to amend, his claims and remedies sought should be connected to his role as a beneficiary and individual, not to his former position as trustee.

**B.     Litigation Privilege**

Jensen and Aivazi both assert an affirmative defense of immunity from Plaintiff's state law claims based on California's litigation privilege, Cal. Civil Code § 47(b). See Jensen MTD at 10-13; Aivazi MTD at 17.

The privilege applies to any communication "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action." Mansell v. Otto, 108 Cal. App. 4th 265 (2003). "The California courts have applied the privilege quite expansively." Rodriguez v. Panayiotou, 314 F.3d 979, 988 (9th Cir. 2002)

The privilege "immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception of causes of action for malicious prosecution." Olsen v. Harbison, 191 Cal. App. 4th 325 (2010). It does not apply to federal claims, including RICO. See Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 367 n.10 (9th Cir. 1992); Oei v. N Star Capital Acquisitions, LLC, 486 F. Supp. 2d 1089, 1098 (C.D. Cal. 2006) (noting that is "well settled" that the privilege "does not apply to federal causes of action").

7

Here, there is no question that the privilege applies. On March 8, 2018, the Superior Court appointed Jensen to act as counsel for Rex, the proposed conservatee. See Dkt. 25-2, Request for Judicial Notice ("RJN"), Ex. A. On December 18, Jensen was discharged from her position at the conclusion of her legal services for Rex. See id., Ex. D. Plaintiff's claims against Jensen concern her participation in the Probation Action as counsel for Rex and her purported representations and statements to the court in that proceeding. See FAC ¶¶ 32, 51, 55, 78, 83, 90, 94, 95, 128-32, 135, 139-40, 143, 146, 149, 151, 156-58, 165, 167, 173, 176, 208, 225, 227-28, 242, 245, 251, 263, 270, 273, 277, 279, 283, 286, 295, 302-03, 313, 319, 326, 334. Similarly, Plaintiff alleges that Aivazi defrauded the Trust and made false statements in a separate habitability lawsuit. See FAC ¶¶ 51-53, 85, 87, 89-91, 95-100, 107, 114-115, 120.

Plaintiff argues that the privilege does not apply because Defendants' fraud goes "far deeper" than any statements made in judicial proceedings. Whatever that might mean, the broad nature of the privilege extends to non-communicative acts that are related to the communicative act at issue. See Rusheen v. Cohen, 37 Cal. 4th 1048, 1062 (2006) (holding that where the gravamen of the complaint is a "privileged communication, the privilege extends to necessarily related acts"); Komarova v. Nat'l Credit Acceptance, Inc., 175 Cal. App. 4th 324, 336 (2009) ("[T]he litigation privilege is absolute and applies regardless of malice."). The FAC does not allege any acts that Jensen or Aivazi took that were unrelated to litigation.

As such, Plaintiff's state law claims against Jensen and Aivazi are barred by the privilege.

**C.** **Statute of Limitations**

Jensen contends that Plaintiff's claims are barred by Cal. Civ. Proc. Code § 340.6(a), which imposes a one-year statute of limitations and applies to

misconduct within the scope of an attorney's "performance of professional services." See Jensen MTD at 13-14.

In Lee v. Hanley, the California Supreme Court concluded that "section 340.6(a)'s time bar applies to claims whose merits necessarily depend on proof that an attorney violated a professional obligation in the course of providing professional services." 61 Cal. 4th 1225 (2015). The relevant question is "whether the claim, in order to succeed, necessarily depends on proof that an attorney violated a professional obligation as opposed to some generally applicable nonprofessional obligation." Id.

Here, Plaintiff's claims do not appear to be subject to section 340.6, even though the alleged misconduct occurred during Jensen's legal representation of Rex in the Probate Action. Plaintiff's claims that Jensen was part of a deep conspiracy to defraud the Trust do not "necessarily depend" on Jensen having violated a professional obligation. The Court will not dismiss Plaintiff's claims on statute of limitations grounds.

### D. Judicial Defendants MTD

Among other things, the Judicial Defendants argue that the Court lacks subject matter jurisdiction pursuant to the Younger abstention doctrine, and that the FAC is barred by the Eleventh Amendment and absolute judicial immunity. See Dkt. 45.

#### 1. Younger Abstention

Under Younger and its progeny, the Supreme Court broadened the abstention doctrine to protect principles of federalism and comity by preventing the federal courts from interfering substantially with certain ongoing state judicial proceedings. See Younger v. Harris, 401 U.S. 37 (1971). Younger abstention "is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important

state interest, and (4) allow litigants to raise federal challenges." Cook v. Harding, 879 F.3d 1035, 1038-39 (9th Cir. 2018) (citations omitted).

Here, all four criteria appear to be met. First, the docket in the Probate Action indicates that the case is ongoing. See Dkt. 46, RJN Ex. 1. On August 3, 2023, Plaintiff filed a notice of appeal regarding the state court's denial of his motion to vacate the March 6, 2019 order. See id., RJN Ex. 4. Second, this case involves the state's interest in enforcing the judgment issued in the Probate Action and the pending appeal. See Penzoil Co. v. Texaco, Inc., 481 U.S. 1, 12-13 (1987) ("States have important interests in administering certain aspects of their judicial systems."). Third, the enforcement of orders and judgments, such as those issued in the Probate Action and the pending appeal, constitute important state interests. See id. at 13-14. Fourth and finally, Plaintiff has an adequate opportunity to litigate any federal claims by way of the current appeal of the orders issued in the Probate Action or by writ petition.

Plaintiff asserts that the Younger abstention doctrine does not apply for two reasons. First, Plaintiff argues that Younger "applies only to criminal prosecutions." Judicial Opp'n at 12. Younger applies if the federal action involves ongoing: (1) "state criminal prosecutions"; (2) "civil proceedings that are akin to criminal prosecutions"; or (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 73 (2013). Plaintiff's lawsuit challenges various orders issued by judicial officers in the Probate Action, which falls within the third category. See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 368 (1989) (holding that under Younger abstention, federal courts should not enjoin pending civil proceedings involving "orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions").

Second, Plaintiff argues that that Younger does not apply because the state court cannot be trusted. See Judicial Opp'n at 15-16. Younger abstention is not appropriate in the "extraordinary circumstance that the state tribunal is incompetent by reason of bias." Gibson v. Berryhill, 411 U.S. 564, 577-78 (1973). However, one alleging bias must offer "actual evidence to overcome the presumption of honesty and integrity in those serving as adjudicators." Canatella v. California, 404 F.3d 1106, 1112 (9th Cir. 2005) (citation omitted). Here, Plaintiff's conclusory allegations of bias are insufficient to warrant this exception to the Younger doctrine. The fact that Plaintiff disagrees with decisions made in the Probate Action does not come close to the required showing that there is an institutional bias that hinders the presentment or resolution of Plaintiff's claims.

### 2. Eleventh Amendment

The Judicial Defendants contend that the Eleventh Amendment bars this action because they have been sued in their official capacity. See Judicial MTD at 15-16.

"The Eleventh Amendment bars individuals from bringing lawsuits against a state for money damages or other retrospective relief." Arizona Students' Ass'n v. Arizona Bd. of Regents, 824 F.3d 858, 864 (9th Cir. 2016) (cleaned up). State officials sued in their official capacities are generally entitled to Eleventh Amendment immunity. See Flint v. Dennison, 488 F.3d 816, 825 (9th Cir. 2007); see also Brown v. California Dep't of Corr., 554 F.3d 747, 752 (9th Cir. 2009) ("California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court.").

Plaintiff argues that the Eleventh Amendment "does not bar lawsuits against individuals, such as the moving Defendants, who are sued in their official capacity." Judicial Opp'n at 17. That is not correct. The Eleventh Amendment plainly applies to the Judicial Defendants, who serve as judicial

officers or employees and are being sued in their official capacity. See Simmons v. Sacramento Cnty. Superior Ct., 318 F.3d 1156, 1161 (9th Cir. 2003) ("Plaintiff cannot state a claim against the Sacramento County Superior Court (or its employees), because such suits are barred by the Eleventh Amendment."); see also Greater L.A. Council on Deafness, Inc. v. Zolin, 812 F.2d 1103, 1110 (9th Cir. 1987) (holding that state courts are arms of the state for Eleventh Amendment purposes); Vierria v. Cal. Highway Patrol, 644 F.Supp.2d 1219, 1232 (E.D. Cal. 2009) (concluding that pursuant to the Eleventh Amendment, state employees sued in official capacity could not be held liable under RICO).

### 3. Absolute Judicial Immunity

The Judicial Defendants argue that they are entitled to absolute judicial and quasi-judicial immunity from liability in this lawsuit. See Judicial MTD at 16-19.

"[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam). It "is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." Id. There are two situations in which judges are not absolutely immune from liability arising out of official conduct. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. at 11-12.

Plaintiff contends that he is not suing the Judicial Defendants for their judicial decisions, but for their "acts that go beyond their legal jurisdiction in depriving Plaintiff of his constitutional rights and privileges as well as his rights as a litigant in his courtroom." Judicial Opp'n at 18. But Plaintiff's allegations plainly concern the Judicial Defendants' actions taken in the Probate Action.

See e.g., FAC ¶ 145 ("Defendant Nord . . . issued the COVERT order without proper foundation, knowledge or legal cause."). Otherwise, Plaintiff offers the conclusory allegation that the entire Superior Court probate division is "deeply involved in the illegal RICO enterprise." Id. ¶ 193. The Court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir.1994). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

### 4. Finding

Plaintiff's claims against the Judicial Defendants appear barred by the Younger abstention doctrine, the Eleventh Amendment, and judicial immunity. The Court encourages Plaintiff not to include the Judicial Defendants in an amended complaint unless he can offer non-conclusory allegations that support an exception to the various doctrines set forth above.

### E. Civil RICO

All Defendants argue that Plaintiff has failed to state a claim for civil RICO. See Jensen MTD at 15-18; Aivazi MTD at 10-13; Judicial MTD at 22-25; Barbosa MTD at 5-7.

"The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't, AFL-CIO, 770 F.3d 834, 837 (9th Cir. 2014) (citation omitted). "A 'pattern of racketeering activity' requires at least two predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1), within a period of ten years." Canyon Cnty. v. Syngenta Seeds, Inc., 519 F.3d 969, 972 (9th Cir. 2008)

13

(quoting 18 U.S.C. § 1961(5)). As is relevant here, mail fraud and wire fraud qualify as two predicate acts under RICO. See 18 U.S.C. §§ 1341, 1343. Rule 9(b) requires a plaintiff to plead mail and wire fraud with particularity; the plaintiff must set forth the time, place, and contents of the alleged false representation. See California Pharmacy Mgmt., LLC v. Zenith Ins. Co., 669 F. Supp. 2d 1152, 1159 (C.D. Cal. 2009).

Here, Plaintiff has failed to allege facts which could reasonably be construed as any racketeering activity by any of the Defendants, let alone a pattern of racketeering activity. Instead, Plaintiff's FAC jumbles Defendants together and offers conclusory allegations that are without support. For example, Plaintiff alleges that Defendants caused the "abuse, neglect, kidnapping and untimely death of Plaintiff's brother, Rex Martin." FAC ¶ 170. How any individual Defendant did that, however, is never explained.

Plaintiff does not point to a single paragraph of the FAC that, in detail, sets forth the time, place or contents of a predicate act. Instead, Plaintiff's Opposition states that the FAC "presents a detailed recitation of Plaintiff's allegations that more than satisfies the pleading requirements." See, e.g., Jensen Opp'n at 10-11. The Court will not wade through Plaintiff's 346 paragraphs of allegations to piece together the facts needed to establish the elements of his RICO claim. See Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) ("[J]udges are not like pigs, hunting for truffles." (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).

Plaintiff has failed to state a claim for civil RICO.

**F.    State Law Claims**

Plaintiff alleges a host of state law claims, including conspiracy to defraud, breach of fiduciary duty, fraudulent misrepresentation, unjust enrichment, conversion, and intentional infliction of emotional distress. However, as stated above, the Court finds that Plaintiff's federal claims fail to

state a claim and are likely barred by the Younger abstention doctrine, the Eleventh Amendment, and absolute judicial immunity. Additionally, Plaintiff's state law claims against Jensen and Aivazi are likely barred by the litigation privilege.

If the Court dismisses all claims over which it has original jurisdiction, the Court may decline to exercise supplemental jurisdiction over any pendant state claims. See 28 U.S.C. § 1367(c)(3). The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and thus dismisses those claims without prejudice. If Plaintiff elects to file an amended complaint addressing the FAC's deficiencies, Plaintiff may reassert his state claims as well.

### G. Anti-SLAPP

Jensen and Aivazi each move to strike Plaintiff's FAC pursuant to California's Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute, Cal. Civ. Proc. Code § 425.16. See Dkts. 24, 27. Both seek mandatory attorneys' fees as well. See id.

The anti-SLAPP statute deters lawsuits "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech." Cal. Civ. Proc. Code § 425.16(a). Anti-SLAPP motions can be raised in federal court to target state law claims. See DC Comics v. Pac. Pictures Corp., 706 F.3d 1009, 1013 n.5 (9th Cir. 2013) ("We have held that [an anti-SLAPP] motion is available against state law claims brought in federal court.").

The Ninth Circuit has held that "granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment." Verizon Del., Inc. v. Covad Commc'ns Co., 377 F.3d 1081, 1091 (9th Cir. 2004). Although Plaintiff has already amended his complaint, this is the first time that the Court has been asked to adjudicate the

15

sufficiency of its pleading. Striking Plaintiff's state law claims without leave to amend would thus "directly collide" with Rule 15's liberal amendment policy. See id.

In light of the above, the Court denies Jensen and Aivazi's anti-SLAPP motions to strike and requests for fees and costs without prejudice at this time. Defendants may renew their motions if Plaintiff includes amended state law claims in his amended complaint. See id. at 1091 ("If the offending claims remain in the first amended complaint, the anti-SLAPP remedies remain available to defendants."); Version2 Tech., Inc. v. NeilMed Pharms., Inc., No. 16-04720, 2016 WL 6611015, at *8 (N.D. Cal. Nov. 9, 2016) (denying anti-SLAPP motion without prejudice to renewing it or to raise a new anti-SLAPP motion, depending on the content of the amended complaint); Wynn v. Chanos, 75 F. Supp. 3d 1228, 1231 n.1 (N.D. Cal. 2014) (declining to address merits of defendant's anti-SLAPP motion because complaint was dismissed with leave to amend, but permitting defendant to re-raise the motion after time for pleadings passed or if he otherwise prevailed).

**H.   Leave to Amend**

Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." (citing Noll, 809 F.2d at 1448)).

Here, the Court has concerns about Plaintiff's ability to fix the deficiencies identified in this Order. Nevertheless, the Court will afford

16

Plaintiff an opportunity to amend.

## IV.   CONCLUSION

IT IS ORDERED THAT:

1. The Clerk shall send Plaintiff a blank civil rights complaint form and a Notice of Election form. The Notice of Election form has three options. Plaintiff may choose ONE option and return the form to the Court within thirty-five (35) days of the date of this Order. The options are:

   a. **Option One.** Voluntarily dismiss this lawsuit pursuant to Federal Rule of Civil Procedure 41(a)(1)(A).

   b. **Option Two.** Elect to stand on the First Amended Complaint, understanding that the Court may recommend that the District Judge issue an order dismissing Plaintiff's claims with prejudice.

   c. **Option Three.** If Plaintiff believes that true additional factual allegations would state a claim, he may file an amended complaint curing the deficiencies identified by the Court in this Order within thirty-five (35) days. The amended complaint should bear the docket number assigned to this case, be labeled "Second Amended Complaint," and be complete in and of itself without reference to the Complaint or any other documents (except any documents that are attached to the Second Amended Complaint as exhibits).

2. If Plaintiff fails to act within thirty-five (35) days, the Court will recommend that this case be dismissed for failure to prosecute.

Date: November 17, 2023

DOUGLAS F. McCORMICK  
United States Magistrate Judge