# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| WALTER EMANNUEL MARTIN, | No. CV 23-04642-VBF (DFM) |
| Plaintiff, | Report and Recommendation of United States Magistrate Judge |
| v. | |
| TAMILA JENSEN et al., | |
| Defendants. | |

     This Report and Recommendation is submitted to the Honorable Valerie Baker Fairbank, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.   INTRODUCTION

     Plaintiff Walter Emmanuel Martin filed a pro se civil rights action under 42 U.S.C. § 1983, alleging that Defendants violated state and federal law in connection with a state probate matter.

     Before the Court are Defendants' motions to dismiss the Second Amended Complaint. The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons set forth below, the Court recommends that Defendants' motions be GRANTED, and this case be dismissed with prejudice.

## II.    BACKGROUND

### A.    The Parties

This action is brought by Walter Emmanuel Martin. See Dkt. 65, Second Amended Complaint ("SAC") ¶ 25. The SAC names the following Defendants: Samantha P. Jessner, the Los Angeles County Probate Department, Stephen Morgan, Scott Nord, Tamila Jensen, Chevon Robinson Martin, and Emanuel Thomas. See id. ¶¶ 26-35.

### B.    Plaintiff's Allegations

This lawsuit arises out of an ongoing state probate action, In re Martin, Rex – Conservatorship, Los Angeles Superior Court case no. 18AVPB00069 ("the Probate Action"). See SAC ¶ 36.[1]

The Probate Action concerns the Gesner L. Martin Living Trust ("the Trust"). See id. ¶ 37. The Trust was established by Gesner Martin, Plaintiff's mother, who died on January 26, 2018. See id. Gesner Martin had three children who were named beneficiaries of the Trust, including Rex Martin ("Rex"), who died on August 21, 2020. See id. ¶ 38. Plaintiff alleges the Trust provides that he would serve as successor trustee following Gesner Martin, and that neither Rex nor any of his children, including Chevon Martin ("Chevon"), should ever be appointed trustee. See id. ¶ 39. Gesner Martin presided over the Trust until March 23, 2013, after which Plaintiff was appointed as successor trustee. See id. ¶ 40.

In August 2018, Scott J. Nord, a Los Angeles County Superior Court Commissioner, held a hearing regarding Chevon's petition to appoint a

---

[1] The docket in the Probate Action is accessible online by case number from the Superior Court's webpage. There is also a related case on a competing petition to appoint a conservator for Rex filed by petitioner Parish Monte, which was consolidated with the Probate Action.

conservator for the person and estate of Rex. See id. ¶ 61. In advance of the hearing, Rex's court appointed attorney, Tamila Jensen ("Jensen"), filed a report that that there may be funds available for Rex's care in a trust and that Plaintiff had described the Trust as a "special needs trust." See id. ¶¶ 61-63 & Ex. B.

At the hearing, Commissioner Nord announced that the court would assume jurisdiction over the Trust, freeze all assets, and suspend Plaintiff's ability to act as trustee. See id. ¶ 70. On March 6, 2019, Commissioner Nord entered an order to remove Plaintiff as trustee, finding that he failed to account for Trust assets, administer the Trust in good faith, administer the special needs trust for the benefit of Rex, and identify Trust assets to the court, and finding that he violated his fiduciary duties to the beneficiaries of the Trust. See id. ¶ 81 & Ex. G. Commissioner Nord ordered that the court assume jurisdiction over the Trust, suspended Plaintiff's powers as successor trustee, and freeze all Trust assets. See id. Plaintiff alleges that was not served with and had no knowledge of that order until April 2023. See id. ¶ 44.

In May 2023, Plaintiff filed an ex parte motion to vacate Commissioner Nord's March 6, 2019 order. See id. ¶ 45. On July 3, 2023, Judge Stephen Morgan denied Plaintiff's motion to vacate with prejudice and appointed Jensen to act as counsel for Rex. See id. ¶ 46. On July 10, 2023, Judge Morgan discharged Jensen due to a conflict of interest and appointed attorney Candance Jones on behalf of Rex. See id. ¶ 47. On July 14, 2023, Judge Morgan vacated the order appointing Jones and appointed attorney Mario Andre Pacione. See id. ¶ 48.

On July 21, 2023, Chevon filed a petition to remove Plaintiff as trustee. See id. ¶ 102. Plaintiff opposed the petition and filed his own ex parte application to have Chevon disqualified from serving as trustee. See id. ¶ 103.

On November 9, 2023, Judge Morgan granted Chevon's petition to remove Plaintiff as trustee, appointed Chevon as trustee, and denied Plaintiff's application. See id. ¶¶ 129-31.

Based upon these facts, Plaintiff alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), a RICO conspiracy, mail fraud and obstruction of justice under RICO, deprivation of civil rights under § 1983, intentional infliction of emotional distress, and a request for punitive damages. See FAC ¶¶ 218-90.

## C.  Procedural History

On November 17, 2023, the Court dismissed Plaintiff's First Amended Complaint with leave to amend. See Dkt. 60. On December 20, 2023, Plaintiff filed the SAC. See Dkt. 65.

Defendants have filed five separate motions to dismiss. Jensen, Thomas, Aivazi, and Chevon each move to dismiss under Federal Rules of Civil Procedure 9(b) and 12(b)(6). See Dkts. 66-2 ("Jensen MTD"); 69 ("Thomas MTD"); 70-1 ("Aivazi MTD"); 75 ("Chevon MTD"). Judge Jessner, Judge Morgan, Commissioner Nord, and the Superior Court of California ("the Judicial Defendants") move to dismiss under Rules 12(b)(1) and (12)(b)(6). See Dkt. 67 ("Judicial MTD").[2]

Plaintiff opposed each motion. See Dkts. 76 ("Thomas Opp'n"), 77 ("Jensen Opp'n"), 78 ("Judicial Opp'n"), 81 ("Aivazi Opp'n"), 82 ("Chevon Opp'n"). Jensen, the Judicial Defendants, and Aivazi filed replies. See

---

[2] The Judicial Defendants also filed a Request for Judicial Notice. See Dkt. 68 ("Judicial RJN"). The Judicial RJN is GRANTED because it concerns matters of public record in which the facts are not subject to reasonable dispute. See Fed. R. Evid. 201(b); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

Dkts. 79 ("Jensen Reply"), 80 ("Judicial Reply"), 83 ("Aivazi Reply").[3]

## III.    LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted
in a complaint. See Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in
conjunction with Rule 8(a), which requires a "'short and plain statement' of
the grounds for jurisdiction and the claim, as well as a demand for relief
sought." Knapp v. Hogan, 738 F.3d 1106, 1109 (9th Cir. 2013) (quoting Fed.
R. Civ. P. 8(a)). This standard is a liberal one that does not require the plaintiff
to set forth all the factual details of his claim; rather, it requires only that the
plaintiff give the defendant fair notice of the claim and the grounds for making
that claim. Leatherman v. Tarrant Cnty. Narcotics Intell. & Coord. Unit, 507
U.S. 163, 168 (1993) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)).

While Rule 8 does not demand detailed factual allegations, "it demands
more than an unadorned, the-defendant-unlawfully-harmed-me accusation."
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the
elements of a cause of action, supported by mere conclusory statements, do not
suffice." Id. Instead, a complaint "must contain sufficient factual matter,
accepted as true, to state a claim to relief that is plausible on its face." Id.
(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is
plausible "when the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for the misconduct
alleged." Id. (citing Twombly, 550 U.S. at 556).

In resolving a Rule 12(b)(6) motion, courts must interpret the facts

---

[3] Plaintiff filed the Aivazi Opp'n and Chevon Opp'n after the Court's
filing deadline. He then filed a motion acknowledging that the Aivazi Opp'n
was filed after the deadline but asking the Court to deem it timely filed. See
Dkt. 84. In light of Plaintiff's pro se status, the Court will consider each of
Plaintiff's opposition filings for purposes of this Report and Recommendation.

alleged in the complaint in the light most favorable to the plaintiff, while also accepting all well-pleaded factual allegations as true. See Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000). Courts need not, however, accept legal conclusions as true. See Iqbal, 556 U.S. at 678. Indeed, the Supreme Court has explicitly stated that complaints consisting only of "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do." Twombly, 550 U.S., at 555; see also Iqbal, 556 U.S. at 678. Nor will a complaint suffice if it presents nothing more than "naked assertions" without "further factual enhancement." Twombly, 550 U.S. at 557.

A pro se plaintiff's pleadings are liberally construed to afford the plaintiff "the benefit of any doubt." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation omitted). This is especially true in civil rights cases. See id. Courts do not, however, serve as advocates on behalf of pro se litigants in attempting to decipher a complaint or read in claims that do not exist. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987). Furthermore, although pro se litigants are held to less stringent standards than a lawyer, they are not excused from following basic pleading requirements. See Woods v. Carey, 525 F.3d 886, 889-90 (9th Cir. 2008).

## IV.    DISCUSSION

Five sets of Defendants have moved to dismiss the SAC on numerous grounds.[4] As the motions largely overlap, the Court has organized this Order

---

[4] As part of their respective motions, attorneys Jensen and Thomas move to dismiss under California's anti-SLAPP law and seek mandatory attorneys' fees. See Jensen MTD at 9-11; Thomas MTD at 16-22. As Defendants failed to file a special motion to strike, they are not entitled to recover fees. See Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria v. Ceiba Legal, LLP, 230 F. Supp. 3d 1146, 1152-54 (N.D. Cal. 2017) ("The cursory mentions of California's anti-SLAPP law in defendants' Rule 12 motion did not adequately set forth a separate special motion to strike, so defendants

in a way that promotes clarity and judicial efficiency. Ultimately, the Court finds that Plaintiff's SAC is deficient in various respects and recommends that it be dismissed without leave to amend.

**A.** <u>**Standing**</u>

As a threshold matter, Defendants argue that Plaintiff lacks standing because he was removed as trustee in August 2018. <u>See</u> Jensen MTD at 11-12; Judicial MTD at 13 n.2; Thomas MTD at 22-24; Aivazi MTD at 7-8.[5] Plaintiff responds that he has standing as a "de facto trustee," former trustee, or as a current beneficiary. <u>See, e.g.</u>, Jensen Opp'n at 10-11.

"As a general rule, the trustee is the real party in interest with standing to sue and defend on the trust's behalf," although a trust beneficiary "can bring a proceeding against a trustee for breach of trust." <u>Estate of Bowles</u>, 169 Cal. App. 4th 684, 691 (2008); <u>see also</u> <u>Moeller v. Superior Court</u> (1997) 16 Cal. 4th 1124, 1132 n.3 (1997) (explaining that under California law, the "trust is not an entity separate from the trustees," and "the trustee, rather than the trust, is the real party in interest in litigation involving trust property"). Additionally, a non-attorney has no authority to appear as an attorney on behalf of a trust. <u>See</u> <u>C.E. Pope Equity Trust v. United States</u>, 818 F.2d 696, 967-98 (9th Cir. 1987) ("Although a non-attorney may appear in propria persona in his own behalf, that privilege is personal to him.").

The Court explained in dismissing the FAC that because Plaintiff is no longer a trustee and is proceeding pro se, he is not permitted to sue on behalf of the Trust. <u>See</u> Dkt. 60 at 6-7. He may, however, bring claims on behalf of

---

cannot now reap the rewards of such a motion."); <u>S.B. Beach Props v. Berti</u>, 39 Cal. 4th 374, 381-82 (2006) (holding defendants could not recover attorney's fees under anti-SLAPP law where no special motion to strike was filed).

[5] Citations to page numbers refer to the CM/ECF pagination.

himself. See id. The Court instructed Plaintiff to connect his claims and remedies to his role as a beneficiary and individual, not to his former position as trustee. See id. Plaintiff's SAC has largely taken the Court's advice, although he still alleges that Defendants' conduct harmed the Trust. See, e.g., SAC ¶¶ 239 (alleging that Defendants conspired to "defraud the trust"), 261 (alleging that Judicial Defendants deprived "Plaintiff and the Trust of due process"). Nonetheless, the Court will not dismiss based on standing in light of the SAC's other, more significant deficiencies.

**B.    *Younger* Abstention**

Defendants argue that the Younger abstention doctrine bars the SAC. See, e.g., Judicial MTD at 14-15. The Court agrees.

Under Younger and its progeny, the Supreme Court broadened the abstention doctrine to protect principles of federalism and comity by preventing the federal courts from interfering substantially with certain ongoing state judicial proceedings. See Younger v. Harris, 401 U.S. 37 (1971). Younger abstention "is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." Cook v. Harding, 879 F.3d 1035, 1039 (9th Cir. 2018) (citations omitted).

Here, all four criteria are met. First, the docket in the Probate Action indicates that the matter is ongoing. See Judicial RJN, Ex. 1.[6] Second, this case involves the state's interest in enforcing the orders and judgment issued in the Probate Action and the pending appeal. See Penzoil Co. v. Texaco, Inc., 481 U.S. 1, 12-13 (1987) ("States have important interests in administering certain

---

[6] As the Probate Action is ongoing, Younger abstention would apply rather than the Rooker-Feldman doctrine. See H.C. ex rel. Gordon v. Koppel, 203 F.3d 610, 612-13 (9th Cir. 2000).

aspects of their judicial systems."). Third, the enforcement of orders and judgments, such as those issued in the Probate Action and the pending appeal, constitute important state interests. See id. at 13-14. Fourth and finally, Plaintiff has an adequate opportunity to litigate any federal claims by way of the current appeal of the orders issued in the Probate Action or by writ petition.

Plaintiff asserts that Younger does not apply. First, Plaintiff argues that Younger "applies only to criminal prosecutions." Judicial Opp'n at 12. Younger applies if the federal action involves ongoing: (1) "state criminal prosecutions"; (2) "civil proceedings that are akin to criminal prosecutions"; or (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." Sprint Communications, Inc. v. Jacobs, 571 U.S. 69, 73 (2013).

The Court agrees with Defendants that this action concerns the third category enumerated in Sprint. Abstention is appropriate because the Superior Court has a strong interest in enforcing orders issued by judicial officers in probate actions. See New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 368 (1989) (explaining that federal courts should abstain from passing on "orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions"); Hart v. Bond, No. 14-205, 2014 WL 3532908, *4 (N.D. Ohio Jul. 15, 2014) (invoking Younger in action attacking orders issued in Ohio probate proceedings because "State of Ohio has important interests in the administration of probate law").

Plaintiff's lawsuit challenges judicial decisions made in the Probate Action. See, e.g., SAC ¶¶ 242 ("Thomas and Judge Morgan conspired to and completed the unlawful removal of Plaintiff as Trustee" by, among other things, "entry of a written Order appointing Chevon as Trustee three hours prior to holding a mock court hearing"), 262 (alleging that Commissioner

Nord and Judge Morgan conducted "kangaroo court hearing[s]"), 275 (alleging that Commissioner Nord, acting without jurisdiction, entered a "doctored and fraudulent Order"). These judicial decisions are the sort of core orders involving the administration of the state judicial process. See Holland v. Bouchard, 16-5936, 2017 WL 4180019, at *3 (S.D.N.Y. Sept. 19, 2017) (invoking Younger because "the Delaware Court of Chancery has a strong interest in enforcing its orders relating to the governance and management of Delaware corporations").

Second, Plaintiff argues that that Younger does not apply because the state court cannot be trusted. See Judicial Opp'n at 14-16. Younger abstention is not appropriate in the "extraordinary circumstance that the state tribunal is incompetent by reason of bias." Gibson v. Berryhill, 411 U.S. 564, 577-78 (1973). However, one alleging bias must offer "actual evidence to overcome the presumption of honesty and integrity in those serving as adjudicators." Canatella v. California, 404 F.3d 1106, 1112 (9th Cir. 2005) (citation omitted). Here, Plaintiff's conclusory allegations of bias are insufficient to warrant this exception to the Younger doctrine. The fact that Plaintiff disagrees with decisions made in the Probate Action is not enough to show there is an institutional bias that hinders the presentment or resolution of Plaintiff's claims.

Accordingly, dismissal is warranted under Younger.

## C.    Eleventh Amendment

The Judicial Defendants argue that the Eleventh Amendment bars the SAC. See Judicial MTD at 15-16. The Court agrees.

"The Eleventh Amendment bars individuals from bringing lawsuits against a state for money damages or other retrospective relief." Arizona Students' Ass'n v. Arizona Bd. of Regents, 824 F.3d 858, 864 (9th Cir. 2016) (cleaned up). State officials sued in their official capacities are generally

entitled to Eleventh Amendment immunity. See Flint v. Dennison, 488 F.3d 816, 825 (9th Cir. 2007); see also Brown v. Cal. Dep't of Corr., 554 F.3d 747, 752 (9th Cir. 2009) ("California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court.").

Plaintiff argues that the Eleventh Amendment "does not bar lawsuits against individuals, such as the moving Defendants, who are sued in their official capacity." Judicial Opp'n at 16. That is not correct. The Eleventh Amendment plainly applies to the Judicial Defendants, who serve as judicial officers or employees and are being sued in their official capacity. See Simmons v. Sacramento Cnty. Superior Ct., 318 F.3d 1156, 1161 (9th Cir. 2003) ("Plaintiff cannot state a claim against the Sacramento County Superior Court (or its employees), because such suits are barred by the Eleventh Amendment."); see also Lund v. Cowan, 5 F.4th 964, 969-70 (9th Cir. 2021) (concluding that claim against state court judge was barred by Eleventh Amendment); Greater L.A. Council on Deafness, Inc. v. Zolin, 812 F.2d 1103, 1110 (9th Cir. 1987) (holding that state courts are arms of the state for Eleventh Amendment purposes). Plaintiff's SAC does not seek any sort of prospective injunctive relief, but rather compensatory damages based upon their actions taken in the Probate Action. See SAC Prayer ¶¶ 1-3.

Accordingly, dismissal is warranted under the Eleventh Amendment.

## D.    <u>Judicial Immunity</u>

The Judicial Defendants argue that absolute judicial immunity bars the SAC. See Judicial MTD at 17-19. They are correct.

"[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam). It "is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." Id. (citation omitted). There are two situations in which judges are not

absolutely immune from liability arising out of official conduct: "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. at 11-12 (citations omitted).

Judicial immunity applies only to judicial acts, and not to "the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform." Forrester v. White, 484 U.S. 219, 227 (1988). The Court considers four factors to determine if an act is judicial: whether "(1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity." Lund, 5 F.4th at 971 (citation omitted).

Here, the judicial actions fall within the purview of a judicial act. Plaintiff's SAC challenges court orders issued by Commissioner Nord and Judge Morgan, normal judicial functions that were made in connection with the Probate Action. Plaintiff's assertion that these orders were made with bad intentions do not remove the cloak of immunity, as "a judicial act does not stop being a judicial act even if the judge acted with 'malice or corruption of motive.'" Id. at 972 (citation omitted).

Plaintiff argues that judicial immunity does not apply because the Judicial Defendants acted without subject matter and personal jurisdiction. See Judicial Opp'n at 17-20. Plaintiff offers no credible allegations to support that statement. To the contrary, the allegations in the SAC clearly concern actions taken by the Judicial Defendants in their judicial capacity.

Next, Plaintiff argues that he is suing the Judicial Defendants for their "acts that go beyond their legal jurisdiction," such as the probate court's "deep

involvement" in an illegal RICO enterprise. <u>See</u> <u>id.</u> "However, the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754-55 (9th Cir. 1994) (citations omitted). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).

Accordingly, dismissal is warranted under absolute judicial immunity.

**E.    <u>Failure to State a Claim</u>**

Defendants argue that Plaintiff's SAC fails to state a claim upon which relief can be granted. The Court agrees.

**1.    Civil RICO**

"The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." <u>United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't, AFL-CIO</u>, 770 F.3d 834, 837 (9th Cir. 2014) (citation omitted). To establish a violation of 18 U.S.C. § 1962(d), a plaintiff must prove that the defendants conspired to engage in a RICO violation.

Defendants argue that Plaintiff fails to allege facts demonstrating a pattern of racketeering activity. <u>See, e.g.</u>, Judicial MTD at 23. "A 'pattern of racketeering activity' requires at least two predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1), within a period of ten years." <u>Canyon Cnty. v. Syngenta Seeds, Inc.</u>, 519 F.3d 969, 972 (9th Cir. 2008) (quoting 18 U.S.C. § 1961(5)). Here, Plaintiff identifies the predicate acts of mail fraud and wire fraud. <u>See</u> SAC ¶¶ 221, 227, 246-55.

To state a RICO claim based on the predicate act of mail and wire fraud, a plaintiff must plead "(1) a scheme or artifice devised with (2) the specific intent to defraud and (3) use of the United States mail or interstate telephone wires in furtherance thereof." Orr v. Bank of Am., 285 F.3d 764, 782 (9th Cir. 2002). Rule 9(b) requires a plaintiff to plead mail and wire fraud with particularity; the plaintiff must set forth the time, place, and contents of the alleged false representation. See California Pharmacy Mgmt., LLC v. Zenith Ins. Co., 669 F. Supp. 2d 1152, 1159 (C.D. Cal. 2009).

Here, Plaintiff has alleged no facts related to wire communications or mail communication that would support claims for wire or mail fraud as predicate acts under his RICO claim. See 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud). For example, Plaintiff alleges that the Judicial Defendants engaged in mail fraud by faxing attorney Jensen a copy of Commissioner Nord's "fraudulent March 6, 2019 Order." SAC ¶ 250. But there are no accompanying credible allegations that Commissioner Nord's order was false or otherwise invalid. As another example, Plaintiff asserts that attorneys Jensen and Thomas bribed the Judicial Defendants. See id. ¶ 214. The Court is not required to accept Plaintiff's legal conclusion that are not reasonably drawn from the facts alleged. See Clegg, 18 F.3d at 754-55. Otherwise, the SAC asserts predicate acts but fails to provide any factual basis of the predicate acts. See Comm. to Protect our Agric. Water, 235 F. Supp. 3d at 1178-79 (finding allegations such as "[the defendant] utiliz[ed] mail and wire fraud to deprive Californians of compliance with the [Safe Drinking Water Act]" and "[the defendant] sent fraudulent communications via mail and electronic wires" were insufficient, thus holding "[g]iven the complete absence of supporting factual allegations, plaintiffs cannot be said to have plausibly alleged predicate offenses").

Plaintiff's Opposition does not point to a single paragraph of the SAC that, in detail, sets forth the time, place or contents of a predicate act. Instead, Plaintiff repeats that "the moving Defendants committed acts of mail fraud, wire fraud and obstruction of justice." See Judicial Opp'n at 27. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Plaintiff has failed to plead facts to support the existence of a pattern of racketeering activity constituting a violation of RICO. As Plaintiff has not adequately pled civil RICO, his claim for RICO conspiracy fails as well. See Howard v. Am. Online Inc., 208 F.3d 741, 751 (9th Cir. 2000) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO.").

### 2. Deprivation of Rights

To state a claim under § 1983, a plaintiff must show (1) violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

The Judicial Defendants have been dismissed based on the Eleventh Amendment and absolute judicial immunity, leaving attorneys Jensen and Thomas. Generally, private parties, including court-appointed attorneys such as Jensen and Thomas, are not considered to be acting under color of state law. See Polk County v. Dodson, 454 U.S. 312, 325 (1981). The only exception is when the plaintiff pleads and proves facts which show the court-appointed attorney conspired with state officials. See Tower v. Glover, 467 U.S. 914, 923 (1984). As set forth above, Plaintiff has not alleged any credible facts to establish that Jensen or Thomas conspired with the Judicial Defendants or any other state official.

Accordingly, dismissal of this claim is warranted.

**F.**    **Intentional Infliction of Emotional Distress**

Plaintiff's SAC alleges that the Judicial Defendants caused him emotional distress. See SAC ¶¶ 272-78.

The elements of an infliction of emotional distress ("IIED") claim are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct[.]" Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 1001 (1993). Severe emotional distress "means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." Hughes v. Pair, 46 Cal. 4th 1035, 1051 (2009) (citation and internal quotation marks omitted). "It is for the court to determine whether on the evidence severe emotional distress can be found[.]" Wong v. Jing, 189 Cal. App. 4th 1354, 1376 (2010).

The Court agrees with the Judicial Defendants that Plaintiff has failed to establish the first element, extreme and outrageous conduct. See Judicial MTD at 29. Plaintiff alleges that he was humiliated when removed as trustee. However, courts are authorized to remove a trustee under Probate Code section 1700. Additionally, Plaintiff offers no allegations to support his claim that his removal caused him the sort of "severe emotional distress" required to establish an IIED claim.

Accordingly, dismissal of this claim is warranted.

**G.**    **Leave to Amend**

Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000); Cato v. United States, 70

F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." (citing Noll, 809 F.2d at 1448)).

A claim is futile, and the court may dismiss without leave to amend, "if [the court] determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' or if the [party] had several opportunities to amend its [pleading] and repeatedly failed to cure deficiencies." Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (citations omitted).

Here, the Court recommends that Plaintiff's SAC be dismissed with prejudice because the defects cannot be corrected by amendment and Plaintiff has had prior opportunity to amend. In particular, Plaintiff's claims are barred by the Younger abstention doctrine, the Eleventh Amendment, and absolute judicial immunity.

## V.    RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Judge issue an Order: (1) accepting this Report and Recommendation; (2) granting Defendants' motions to dismiss; and (3) dismissing this case with prejudice.


Date: May 14, 2024

DOUGLAS F. McCORMICK
United States Magistrate Judge